# EXHIBIT B

**KNIGHT FIRST AMENDMENT INSTITUTE**
at Columbia University

Caroline M. DeCell
Staff Attorney

August 7, 2017

Dr. James V.M.L. Holzer
Deputy Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, DC 20528-0655
Email: foia@hq.dhs.gov

FOIA Officer
U.S. Customs and Border Protection
1300 Pennsylvania Avenue NW
Room 3.3D
Washington, DC 20229

FOIA Officer
U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW
STOP-5009
Washington, DC 20536-5009
Email: ice-foia@dhs.gov

FOIA Officer
U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO 64064-8010
Email: uscis.foia@uscis.dhs.gov

Director of Public Affairs
Office of Public Affairs
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue NW
Washington, DC 20530-0001

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Department of Justice
Room 5511, 950 Pennsylvania Avenue NW
Washington, DC 20530-0001

FOIA Officer
U. S. Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, DC 20522-0208

**Re:   Freedom of Information Act Request
Expedited Processing Requested**

To Whom It May Concern:

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations.

### I.  Background

During his 2016 presidential campaign, then-candidate Donald Trump evoked a Cold War era "ideological screening test" for admission into the United States and proclaimed that a "new screening test" involving "extreme, extreme vetting" was overdue.[2] A week after his inauguration,

---

[1] The Knight First Amendment Institute is a New York not for profit organization based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

[2] Karen DeYoung, *Trump Proposes Ideological Test for Muslim Immigrants and Visitors to the U.S.*, Wash. Post (Aug. 15, 2016), https://perma.cc/G9SC EPHT.

2

President Trump issued Executive Order 13,769, declaring that the United States "must ensure that those admitted to this country do not bear hostile attitudes toward it and its founding principles" and "cannot, and should not, admit those who do not support the Constitution." Exec. Order No. 13,769, 82 Fed. Reg. 8,977 (Jan. 27, 2017).

The President issued a revised order on March 6, 2017. It directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for aliens seeking entry into the United States, involving, among other things, "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility." Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017).

The Knight Institute seeks to inform the public about any new vetting policies and about the government's understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. It also seeks to report on the government's use of existing statutory provisions, including the "endorse or espouse provisions"[1] and the "foreign policy provision,"[2] to exclude or remove individuals from the United States on these grounds.

## II. Records Requested

The Knight Institute requests the following records created on or after May 11, 2005:

> 1. All directives, memoranda, guidance, emails, or other communications sent by the White House[3] to any federal agency

---

[1] Any alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(VII), as well as any alien who is a representative of "a political, social, or other group that endorses or espouses terrorist activity," 8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb) (together, the "endorse or espouse provisions") is deemed inadmissible. The endorse or espouse provisions provide a basis for removal as well. *See* 8 U.S.C. § 1225(c) (expedited removal of arriving aliens); 8 U.S.C. § 1227(a)(4)(B) (removal of admitted aliens); *see also* 8 U.S.C. § 1158(b)(2)(A)(v) (removal of refugees otherwise qualified for asylum on similar grounds).

[2] Any "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences" is inadmissible, 8 U.S.C. § 1182(a)(3)(C)(i), even, under certain circumstances, where the determination of inadmissibility is based on "beliefs, statements or associations [that] would be lawful within the United States," 8 U.S.C. § 1182(a)(3)(C)(iii). *See also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

[3] The term "White House" includes, but is not limited to, the Executive Office of the President, the Office of the President, the White House Office, the Office of Counsel to the President, the National Security Council, the Office of the Vice President, the Cabinet, as well as any government officer who directly advises the President or the Vice President as to the legality of, or authority to undertake, any executive action.

3

since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.

2. All memoranda concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

3. All legal or policy memoranda concerning the endorse or espouse provisions, or the foreign policy provision as it relates to "beliefs, statements or associations."

4. All records containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision. Such records would include policies, procedures, or guidance concerning the entry or retrieval of data relevant to the endorse or espouse provisions or the foreign policy provision into or from an electronic or computer database.

5. All Foreign Affairs Manual sections (current and former) relating to the endorse or espouse provisions or the foreign policy provision, as well as records discussing, interpreting, or providing guidance regarding such sections.

6. All records concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions to exclude or remove individuals from the United States, or the application, waiver, or contemplated application or waiver of the foreign policy provision to exclude or remove individuals from the United States based on "beliefs, statements or associations," including:

    a. Statistical data or statistical reports regarding such application, waiver, or contemplated application or waiver;

    b. Records reflecting the application, waiver, or contemplated application or waiver of the endorse or espouse provisions or foreign affairs provision by an immigration officer, a border officer, a Department of Homeland Security official, or a Department of Justice official;

    c. Records concerning any determination made by the Attorney General pursuant to 8 U.S.C. § 1225(c) regarding

---

[1] As used herein, the term "exclude" includes denying a visa, revoking a visa, or otherwise deeming inadmissible for entry into the United States.

4

> the admissibility of arriving aliens under the endorse or espouse provisions or the foreign policy provision;
>
> d. Department of Homeland Security and Department of Justice records concerning consultation between the Secretary of State, the Secretary of Homeland Security, and/or the Attorney General (or their designees) relating to any waiver or contemplated waiver of the endorse or espouse provisions pursuant to 8 U.S.C. §§ 1158(b)(2)(v), 1182(d)(3)(A), or 1182(d)(3)(B)(i); and
>
> e. Notifications or reports from the Secretary of Homeland Security or the Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii).

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We also ask that you provide responsive electronic records in their native file format or a generally accessible electronic format (*e.g.*, for tabular data, XLS or CSV). *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (*e.g.*, PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

### III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the records sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

> *A. The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the

press in the digital age. Research and public education are central to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and the public are among the core activities the Institute was established to perform. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The requested records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). The records sought concern the government's exclusion and removal of individuals from the United States based on their speech, beliefs, or associations. Such activity is ongoing, and the President has promised "strong programs" to ensure that the only individuals allowed in the United States are those who "want to love our country."[2] To this end, the President has mandated more robust vetting standards for all immigration programs, and has directed the Secretary of Homeland Security to report periodically on the development of these standards from now until October 2, 2017. Exec. Order No. 13,780, 82 Fed. Reg. at 13,215.

President Trump's executive orders on immigration have already been the subject of widespread debate,[3] and the development of new vetting policies will ensure continued public interest in the issue. Yet, lack of transparency with respect to current policies and practices stymies

---

[1] Mike McPhate, *Columbia University To Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M LUAD; James Rosen, *New Institute Aspires To Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K FPED.

[2] *Trump Defends Immigration Restrictions, Wants People 'Who Love Our Country,'* Chi. Trib. (Feb. 6, 2017), http://trib.in/2vIQeuw.

[3] *See, e.g.*, Mark Berman, *To Argue for Stricter Vetting of Immigrants, Trump Invokes Attacks Carried Out by U.S. Citizens*, Wash. Post (Feb. 28, 2017), https://perma.cc/PA4P 9KPP; Lauren Gambino & Tom McCarthy, *Trump Pressing Ahead with 'Extreme Vetting' in Spite of Court Battles*, The Guardian (June 6, 2017), https://perma.cc/Q6WT XCRX; Jonathan E. Meyer, *The Consequences of Extreme Vetting*, Politico (May 5, 2017), https://perma.cc/9F5P 65PQ; S.A. Miller & Dave Boyer, *Trump Signs New Extreme Vetting Order*, Wash. Times (Mar. 6, 2017), https://perma.cc/2XME QKFH; Michael Price, *Does the President's Immigration Order Violate the Rule Against Ideological Exclusion?*, Lawfare (Feb. 1, 2017), https://perma.cc/9BKA X86L; Yeganeh Torbati, *State Department Proposes Collecting Immigrants' Social Media Handles in Move Toward 'Extreme Vetting,'* Bus. Insider (May 4, 2017), https://perma.cc/H4Q9 648S; *Trump Administration's Threat To Impose Ideological Test for Immigrants Evokes Dark Chapter in U.S. History, Says PEN America*, PEN America (Jan. 27, 2017), https://perma.cc/BVS8 8AV4.

6

meaningful debate over the form that the new "extreme vetting" policies may take.

The public's interest in the records is even greater because current practices may violate constitutional rights. The First Amendment encompasses the right "to receive suitable access to social, political, esthetic, moral, and other ideas and experiences," *Red Lion Broad. v. FCC*, 395 U.S. 367, 390 (1969), and this "right to receive information" is implicated where the government excludes a non-citizen from the United States based on her speech or beliefs, *Kleindiest v. Mandel*, 408 U.S. 753, 763 65 (1972). At present, the public can neither determine the degree to which its First Amendment rights are being abridged under existing policies, nor assess how proposed policies could further curtail these rights moving forward.

For these reasons, the Knight Institute is entitled to expedited processing of this request.

### IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any disclosed information available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted).

In addition, the Knight Institute requests a waiver of search and review fees on the ground that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms in scholarly publications, in long-form reports, and in short-form essays.

Finally, the Knight Institute requests a waiver of search and review fees on the ground that it is a "representative of the news media" within the

meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute qualifies as a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282, 287 88 (D. Conn. 2012); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations with research and public education missions similar to that of the Knight Institute to be representatives of the news media. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10 15 (D.D.C. 2003) (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

*   *   *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of the request or, where reasonable, to narrow it.

I certify that the foregoing is true and correct.

Sincerely,

/s/ Caroline M. DeCell
Caroline M. DeCell
Knight First Amendment Institute at
  Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
carrie.decell@knightcolumbia.org
(212) 854-9600