**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY,

                Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. CUSTOMS AND BORDER
PROTECTION, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES, U.S. DEPARTMENT OF
JUSTICE, and U.S. DEPARTMENT OF
STATE,

                Defendants.

No. 1:17-cv-07572-ALC

---

## JOINT STATUS REPORT

### A. Introduction

On August 7, 2017, Plaintiff Knight First Amendment Institute at Columbia University

(the "Knight Institute") submitted a multi-item request (the "Request") under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, to Defendants U.S. Department of Homeland Security

("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs

Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of

Justice ("DOJ"),[1] and U.S. Department of State ("DOS") for records concerning the exclusion or

removal of individuals from the United States based on their speech, beliefs, or associations. ECF

---

[1] Specifically, the Knight Institute submitted the Request to the DOJ Office of Public Affairs
("DOJ-OPA"), Office of Information Policy ("DOJ-OIP"), and Office of Legal Counsel ("DOJ-
OLC").

No. 42-2 at 2-3. Among other relief, the Knight Institute seeks an order in this action requiring Defendants to produce records responsive to the Request. ECF No. 42 ¶ 1; *id.*, Prayer for Relief.

All Defendants except for ICE filed their answer to the complaint on December 28, 2017. ECF No. 27. Subsequently, ICE was voluntarily dismissed from the action without prejudice, ECF No. 31, while the Knight Institute pursued an administrative appeal of ICE's September 29, 2017 response to the Request, *see* ECF No. 42-5 (amended administrative appeal); *see also* ECF No. 42-4 (initial administrative appeal). ICE remanded the administrative appeal for further processing and to conduct new searches. *See* ECF No. 42-6 (remand determination letter); ECF No. 42-7 (letter indicating ICE performed a new search). On March 14, 2018, the Knight Institute filed an amended complaint with ICE's written consent, re-naming ICE as a defendant and supplementing the original allegations. ECF No. 42 (Amended Complaint); ECF No. 41 (written consent pursuant to Fed. R. Civ. P. 15(a)(2)). Defendants filed their answer to the amended complaint on April 3, 2018. ECF No. 47.

On February 23, 2018, while the ICE administrative appeal was pending, the Court held a status conference related to the federal court action. *See* ECF No. 39. During the status conference, the parties informed the Court that CBP would complete its production and that DHS, USCIS, DOJ, and DOS would conduct their initial searches for responsive records by March 30, 2018. The Court ordered the parties to file a joint status report by April 9, 2018. *Id.* This document constitutes the parties' report. The status of each Defendant's search, processing, and production efforts is described below.

The parties have agreed upon production completion dates for DHS, USCIS, DOJ-OIP, DOJ-OPA, and DOJ-OLC. The parties disagree, however, on production completion dates for DOS, and they are still discussing a proposed processing schedule for ICE. The parties jointly and

respectfully propose, as explained below, to submit letter briefs setting forth their respective positions on the appropriate production deadlines for DOS (and potentially ICE) and request a status conference with the Court to address these points of disagreement after the letter briefs have been submitted.

**B. The FOIA Request and Provisional Narrowing**

1. On August 7, 2017, the Knight Institute submitted the Request to the Defendants seeking six categories of records:

   a. **Item 1:** All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.

   b. **Item 2:** All memoranda written since May 11, 2005 concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.

   c. **Item 3:** All legal or policy memoranda written since May 11, 2005 concerning the endorse or espouse provisions[2] or the foreign policy provision of the Immigration and Nationality Act as it relates to "beliefs, statements or associations."[3]

---

[2] 8 U.S.C. §§ 1182(a)(3)(B)(i)(VII), 1182(a)(3)(B)(i)(IV)(bb) (indicating that an alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity" or who is a representative of "a political, social, or other group that endorses or espouses terrorist activity" is inadmissible); *see also* 8 U.S.C. §§ 1225(c), 1227(a)(4)(B), 1158(b)(2)(A)(v) (providing for removal of various classes of aliens on these grounds and refugees otherwise qualified for asylum on similar grounds).

[3] 8 U.S.C. § 1182(a)(3)(C)(iii) (indicating that an "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences" is inadmissible, even if the determination of inadmissibility is based on "beliefs, statements or

d. **Item 4:** All records created since May 11, 2005 containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision as it relates to "beliefs, statements or associations."

e. **Item 5:** All Foreign Affairs Manual sections (current and former, created since May 11, 2005) relating to the endorse or espouse provisions or the foreign policy provision as it relates to "beliefs, statements or associations," as well as records discussing, interpreting, or providing guidance regarding such sections.

f. **Item 6:** All records created since May 11, 2005 concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions, or of the foreign policy provision as it relates to "beliefs, statements or associations," to exclude or remove individuals from the United States. This item of the Request enumerated five non-exhaustive categories of information sought, including statistical data or reports on the application, waiver, or contemplated application or waiver of those provisions, and notifications or reports from the Secretary of Homeland Security or Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii).

2.   In subsequent negotiations, the parties provisionally agreed to narrow the Request to prioritize the Defendants' search for responsive records. The Knight Institute agreed that the Defendants could initially:

a. **For Item 1:** Search only White House systems for the records sought, as Counsel for Defendants indicated that searching each recipient agency would be a slower

---

associations [that] would be lawful within the United States"); *see also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

and duplicative process. Counsel for Defendants agreed to provide an explanation of the White House record retention policy so the Knight Institute can assess the comprehensiveness of the response to this Item of the Request.

b. **For Items 2-5:** Limit searches to final policy memoranda and equivalent records that have been created since May 11, 2005, and that represent final guidance.

c. **For Item 5:** Search only DOS systems for the records sought, which have been created since May 11, 2005.

d. **For Item 6:** Limit searches to the records sought in Item 6(a), statistical data and reports on the application, waiver, or contemplated application or waiver of the endorse or espouse and foreign policy provisions that have been created since January 19, 2012; and Item 6(e), notifications or reports from the Secretary of Homeland Security or Secretary of State, created since May 11, 2005, concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii). For Item 6(e), the parties agreed the Defendants could initially search only DHS's and DOS's offices of the Secretary systems for the records sought.

**C. Status of Defendants' Searches and Productions**

    **a. DHS**

3. Per the Court's order, DHS completed its search for records responsive to the Request by March 30, 2018.

4. During a phone call on April 4, 2018, Counsel for Defendants informed the Knight Institute that DHS would process and produce the responsive records by May 15, 2018.

**b. CBP**

5.  By letter dated March 27, 2018, CBP indicated that it had completed it search for responsive records based on the provisionally narrowed Request.

6.  CBP indicated that it had searched for responsive records and found four policy documents that are publicly available[4] and two additional pages, which were released in their entirety.

7.  By email dated March 28, 2018, CBP released eighteen pages of responsive records, which had been referred by USCIS to CBP for processing. Nine of those pages were released with redactions, and nine pages were withheld in their entirety. CBP claims its various withholdings and redactions are proper pursuant to FOIA exemptions (b)(5), (b)(6), and (b)(7)(C).

**c. USCIS**

8.  Per the Court's order, DHS completed its initial search for records responsive to the Request by March 30, 2018. During a phone call on April 4, 2018, Counsel for Defendants indicated that USCIS found approximately 700 pages of potentially responsive records during this search, comprised, in part, of certain training manuals (the "Training Manuals").

9.  Counsel for Plaintiff agreed that, rather than processing every chapter within the Training Manuals, USCIS could initially process (1) the tables of contents and (2) the chapters in

---

[4] CBP, *Visa Waiver Program Improvement and Terrorist Travel Prevention Act Frequently Asked Questions*, https://www.cbp.gov/travel/international-visitors/visa-waiver-program/visa-waiver-program-improvement-and-terrorist-travel-prevention-act-faq (last visited Mar. 28, 2018); CBP, *Q&A for Executive Order: Protecting the Nation from Foreign Terrorist Entry into the United States* (Feb. 2, 2017), https://www.cbp.gov/sites/default/files/assets/documents/2017-Feb/EO-QA-PDF-WEB-02.02.2017.pdf; CBP, *National Standards on Transport, Escort, Detention, and Search* (Oct. 2015), https://www.cbp.gov/sites/default/files/assets/documents/2017-Sep/CBP%20TEDS%20Policy%20Oct2015.pdf; Memorandum from Kevin K. McAleenan, Acting Comm'r, CBP, regarding Anti-Discrimination and Anti-Harassment Policy Statement (Jan. 2, 2013), https://www.cbp.gov/sites/default/files/assets/documents/2018-Feb/Anti-Discrimination%20and%20Anti-Harassment%20Policy%2001-2018.pdf.

the Training Manuals related to Terrorism Related Inadmissibility Grounds, *see* 8 U.S.C. § 1182. The Knight Institute would reserve the right to request additional chapters upon review of the tables of contents.

10. Counsel for Defendants indicated that USCIS will process and produce those records by May 30, 2018.

11. Counsel for Defendants also informed the Knight Institute that after its initial search, the USCIS FOIA office that receives and processes FOIA search results requested that various program offices run two additional searches. The parties agree that USCIS will complete those searches by May 30, 2018, and will complete production of responsive records by June 30, 2018.

### d.  DOJ-OIP and DOJ-OPA

12. During a phone call on April 4, 2018, Counsel for Defendants indicated that DOJ-OIP, on its own behalf and that of DOJ-OPA, had identified the locations of potentially responsive records but not yet determined the volume of those records. Counsel for Defendants also indicated that DOJ-OIP had begun the process of reviewing the responsiveness of the records that had been identified.

13. Counsel for Defendants indicated that DOJ-OIP would complete its responsiveness review by April 13, 2018.

14. Counsel for Defendants subsequently indicated that DOJ-OIP would commit to processing and producing responsive records by May 30, 2018.

15. During a phone call on April 9, 2018, Counsel for Defendants indicated that DOJ-OIP could not confirm that DOJ-OPA had been searched for responsive records, and that DOJ-OIP would complete an additional search of DOJ-OPA and endeavor to produce responsive documents, if any, by May 30, 2018, but in no event later than June 15, 2018.

### e.  DOJ-OLC

16. Per the Court's order, DOJ-OLC completed its search for records responsive to the Request by March 30, 2018. During a phone call on April 4, 2018, Counsel for Defendants indicated that DOJ-OLC found approximately 150 potentially responsive records during this search.

17. Counsel for Defendants subsequently indicated that DOJ-OLC would commit to completing its responsiveness review by April 30, 2018.

18. Counsel for Defendants further indicated that DOJ-OLC would, by April 30, 2018, provide an initial count of how many pages of responsive documents were found and propose a specific processing rate and/or production deadline. By May 30, 2018, DOJ-OLC will complete an initial production.

### f.  DOS

19. Per the Court's order, DOS completed its search for records responsive to the Request by March 30, 2018. During a phone call on April 4, 2018, Counsel for Defendants indicated that DOS found approximately 850 potentially responsive emails and 674 pages of other potentially responsive records during this search.

20. During a phone call on April 4, 2018, Counsel for Defendants informed the Knight Institute that DOS would process the potentially responsive records at a rate of at least 300 pages per month.

### g.  ICE

21. On September 29, 2017, ICE sent the Knight Institute a "final response" that quoted the language of Item 1. ECF No. 42-3. Along with its letter, ICE released 1,666 pages of records

responsive to the Request. ICE withheld 1,653 of those pages in full, however, claiming FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

22. After ICE was dismissed without prejudice from this action, the agency processed the Knight Institute's administrative complaint, which was submitted on December 21, 2017 and revised by letter dated January 5, 2018. ECF Nos. 42-4, 42-5.

23. By letter dated February 6, 2018, ICE responded to the Knight Institute's revised administrative appeal, concluding that the withholdings in its initial production were "proper in all respects," but determining that "new search(s) or modifications to the existing search(s) . . . could be made," and remanding the Request to ICE's FOIA Office for further processing and retasking. ECF No. 42-6.

24. By email dated February 13, 2018, ICE informed the Knight Institute that ICE had located approximately 14,000 pages of "potentially responsive documents," and that it would "commit to reviewing and processing a minimum of 500 pages per month." ECF No. 42-7. The email indicated that the first production would be made on March 7, 2018, with subsequent productions on the seventh day of each month thereafter.

25. On March 7, 2018, ICE indicated that it had processed 560 pages for release. ECF No. 42-8. Eighty-seven pages were sent to other agencies for referral, and the remaining 463 pages were released with redactions. ICE claims its various withholdings and redactions are proper pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

26. On March 14, 2018, the Knight Institute filed an amended complaint with the Defendants' and ICE's written consent pursuant to Fed. R. Civ. P. 15(a)(2). ECF No. 42. On April 3, 2018, the Defendants, including ICE, filed their answer to the amended complaint. ECF No. 47.

27. During a phone call on April 4, 2018, Counsel for Defendants informed the Knight Institute that ICE would continue to process the remaining potentially responsive records at a rate of at least 500 pages per month.

28. Subsequently, the parties have continued to discuss whether they can reach agreement regarding ICE's processing schedule, and respectfully request that they update the Court by April 13, 2018. If the parties cannot agree on a processing schedule for ICE, the parties respectfully request that this issue be briefed according to the proposed briefing schedule, below.

**D. The Parties' Proposed Schedule**

   **a. Points of Agreement**

29. The parties agree that DHS will complete production by May 15, 2018.

30. The parties agree that USCIS will complete production of responsive records found during the initial search by May 30, 2018. Additionally, USCIS will complete its subsequent searches by May 30, 2018, and will produce the responsive records found during the subsequent searches by June 30, 2018.

31. The parties agree that DOJ-OIP will complete its responsiveness review by April 13, 2018, and complete production by May 30, 2018. The parties further agree that DOJ-OIP will complete an additional search of DOJ-OPA and endeavor to produce responsive documents, if any, by May 30, 2018, but in no event later than June 15, 2018.

32. The parties agree that DOJ-OLC will provide an initial count of how many pages of responsive documents were found, and propose a specific processing rate and/or production deadline, by April 30, 2018. In addition, DOJ-OLC will complete an initial production by May 30, 2018.

### b.  Points of Disagreement & Proposed Next Steps

33. **DOS:** The parties do not agree on DOS's proposed processing rate. Given that DOS granted expedited review of the Request, which has been pending since August 2017, and given that the public interest in these records has grown only more urgent since then, the Knight Institute believes DOS should complete the processing and production of responsive records by May 30, 2018. Courts have "expressed concern" over production delays of similar length, *Brennan Ctr. for Justice at NYU School of Law v. U.S. Dep't of State*, No. 17 Civ. 7520 (PGG), 2018 WL 369783, at *3 (S.D.N.Y. Jan. 10, 2018) (slip), and accordingly ordered defendant agencies to identify or produce responsive documents within one month, *id.* at *7; *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004). The Knight Institute's requested production completion date would result in a processing rate similar to rates ordered in other recent cases. *See, e.g.*, *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241 (D.D.C. 2017). DOS maintains that 300 pages per month is a reasonable rate that courts have agreed to in the past, *see, e.g., Citizens United v. U.S. Dep't of State*, No. 16 Civ. 67 (D.D.C.), Dkt. No. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page commitment")). As will be described in the parties' proposed briefing on this issue (see below), DOS is currently a defendant in over 120 FOIA litigation cases, more than a 100% increase since 2014. Court orders in 16 of those litigation cases require State to process at least 9,800 pages per month. Given the current court-ordered deadlines and FOIA staffing levels, it is simply not possible for State to undertake Plaintiff's proposed processing rate of 2,500–3,000 pages per month on one case—which would require around 16% of State's FOIA litigation reviewers be devoted to reviewing documents in this one case.

34. **ICE:** The parties are still discussing whether it is possible to reach an agreement regarding ICE's proposed processing rate. If the parties cannot reach agreement, the parties respectfully request that they submit briefing on the issue, as outlined below.

35. To resolve these disagreements, the parties jointly and respectfully propose the following: (1) DOS (and potentially ICE) will file a letter brief and relevant declarations setting for their positions by April 20, 2018. The Knight Institute will fill a responsive letter brief by May 4, 2018. The parties request a status conference with the Court to discuss these matters after the letter briefs have been submitted.

Dated: April 9, 2018

GEOFFREY S. BERMAN
United States Attorney

By: */s/ Ellen Blain*

    Ellen Blain
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, NY 10007
    ellen.blain@usdoj.gov
    (212) 637-2643

    *Counsel for Defendants*

Sincerely,

  */s/ Carrie DeCell*

Carrie DeCell (CD-0731)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Knight First Amendment Institute at Columbia
    University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

*Counsel for Plaintiff*

 */s/ Catherine Crump*

Catherine Crump (CC-4067)
Megan Graham (*pro hac vice*)
Samuelson Law, Technology & Public Policy
   Clinic
University of California, Berkeley, School of
   Law
433 Boalt Hall, North Addition
Berkeley, CA 94720-7200
ccrump@clinical.law.berkeley.edu
(510) 642-5049

*Counsel for Plaintiff*