IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KNIGHT FIRST AMENDMENT )
INSTITUTE AT COLUMBIA )
UNIVERSITY, )
)
            Plaintiff, )
) No. 1:17-cv-07572 (ALC)
            v. )
)
UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY, ET AL. )
)
            Defendants. )

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016.

2. The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the Freedom of Information Act, the Privacy Act, and the mandatory declassification review requirements of Executive Order No. 13526 of December 29, 2009, governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process, such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives

management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3. In my current capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions.

4. Prior to serving in this capacity, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS. As the Director of IPS, I have original classification authority.

5. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject FOIA request, and I am in charge of coordinating the agency's search and recovery efforts with respect to that request.

6. The purpose of this declaration is to provide the Court with information concerning IPS' structure and resources, and its capabilities regarding the processing of Plaintiff's FOIA request.

## Summary of Plaintiff's FOIA Request

7. Plaintiff submitted a FOIA request to the Department dated August 7, 2017, seeking, *inter alia*, records regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations. The Department assigned this request Case Control No. F-201-14346.

8. The Department has so far identified over 1,000 records, not including attachments, that are potentially responsive to this request. At least some of the records are

classified. Due to the long time frame and the lack of defined search terms, the Department believes that many of those records are not in fact responsive, and so the Department is conducting a relevancy review of the records that may substantially limit the number of records to further process.

9. Given its review burdens at this time, as described below, the Department can commit to processing[1] 300 pages of the potentially responsive records per month. This number is based upon the data I have access to regarding the rate of review in past FOIA cases, as well as the Department's existing and anticipated FOIA workload and FOIA processing resources. The Department regrets that it cannot commit to processing documents in response to Plaintiff's request at a faster rate,[2] but to do so would reduce the Department's capacity to comply with production orders issued by courts in existing cases, as well as disproportionately reduce the Department's capacity to process records in response to FOIA requests not currently in litigation.[3]

10. Responding to the multitude of FOIA requests pending before the Department is a multi-step process that requires significant time and resources, and in recent years those resources have become extremely overburdened. The Department's FOIA workload, review process, and processing capabilities are described further below.

---

[1] "Processing" a document encompasses the full review, including assessing its responsiveness, reviewing for applicable FOIA exemptions, consulting as necessary with the appropriate Department offices, other federal agencies, and any other offices or organizations that would need to review the document, incorporating those entities' input, and making a release determination.

[2] The Department is currently exploring options to increase its FOIA processing capabilities and will make every effort to process documents in this case at a faster rate if possible.

[3] Because processing records in response to FOIA requests in litigation takes more resources than processing records in response to FOIA requests outside litigation, shifting review resources from non-litigation to process documents in response to Plaintiff's request at a faster rate would disproportionately reduce the Department's capacity to process records for non-litigation requesters.

## The Department's FOIA Litigation Document Review Process

11.     The FOIA review process for litigation cases is undertaken by IPS, which coordinates searches throughout the Department for potentially responsive documents. The search process involves IPS tasking all Department components that would be reasonably likely to have records responsive to the FOIA request. Those components must search their files and then send any potentially responsive records to IPS for review. Each potentially responsive document must be ingested, either electronically or by scanning printed material, into the IPS document review system, known as FREEDOMS 2 ("F2"). Ingestion into F2 takes considerable time because documents must be virus-scanned, unzipped, and in some cases transferred from an unclassified to a secure network. Each document is then assigned a unique identification number, and an IPS employee manually inputs certain bibliographic data associated with each document, such as the date, to, from, and subject line (if available). IPS then assigns those documents for review to an IPS employee (a "reviewer"), with appropriate clearance and subject matter expertise to handle that set of documents.

12.     The reviewer performs a line-by-line review of the document to determine whether the document is responsive to the request, whether it contains any classified or other sensitive information that must be withheld under one of the nine FOIA exemptions, and whether it contains information belonging to other equity holders, such as other federal agencies and third parties. During this process, the reviewer may consult other Department employees (including, for example, employees in regional bureaus or attorneys) as appropriate. These consultations often occur more than once in the process and are extremely important to inform the Department's decision about the applicability of any FOIA exemption, particularly when the documents being reviewed were created shortly before they were requested under the FOIA.

4

*Knight First Amendment Institute v. DHS et al.*
1:17-cv-07572-ALC
Stein Declaration

The employees being consulted are the most knowledgeable parties concerning the sensitivity of the documents or subject matter at issue. For instance, documents may contain private personally identifiable information about individuals who could suffer reprisals if their identities or opinions are revealed. Documents may also contain confidential information about law enforcement sources, confidential commercial and financial information obtained from private parties, and candid deliberations about proposed U.S. foreign relations policies and activities. Consequently, for documents containing substantive information that were created within the previous five years, IPS's general policy is that such documents must be reviewed by the relevant bureaus or offices within the Department, or the relevant bureaus at least be consulted, prior to finalizing release determinations.

13.   Additionally, if the reviewer determines that a document originated with the Department, but contains another federal agency's information (or "equities"), an IPS employee will send that document to the relevant federal agency for consultation. If the reviewer determines that a document originated with another federal agency, s/he redacts any Department information that the Department is proposing to withhold under the FOIA, and sends the document to that federal agency for review and direct reply to the requester. The Department will also refer a document to an outside organization whenever the organization's confidential business information may be at issue, in accordance with Executive Order 12600 and 22 C.F.R. § 171.12, to allow that organization the opportunity to object to the disclosure of the information on the basis that the information in the document is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

14.   After completing the internal and external consultation processes, the reviewer redacts any information that must be withheld under the FOIA and marks documents that the

Department will release in full or in part with the required stamps, indicating the release determinations and FOIA exemptions applied. If the reviewer completing this process is relatively inexperienced, then his or her work must undergo second-level review by a senior reviewer to ensure that FOIA exemptions were properly applied to the document and that consultations with relevant Department bureaus and federal agencies occurred. Finally, for cases that are in litigation, documents proposed for release must be reviewed by Attorney-Advisers within the Office of the Legal Adviser, a process that often involves consultations between the Attorney-Advisers and IPS as well as other Department offices.

15. After this process is completed, the Department provides processed documents to the requester with a cover letter indicating that responsive documents were located, which exemptions were applied to documents withheld in full (if any), and whether the requester should expect to receive additional release determinations from the Department. The Department also provides an explanatory letter in the event that no responsive documents were located or all responsive documents were withheld in full.

### The Department's Quantifiable FOIA Processing Capabilities and Concerns

16. Over the past several years, the Department's FOIA caseload has greatly increased, and the Department's FOIA resources have been over-burdened. This over-commitment is evident in the Department's FOIA request volume and in the queue of FOIA litigation cases, both of which have grown significantly over the past four years. In Fiscal Year ("FY") 2008, the Department received fewer than 6,000 new FOIA requests; the number of new FOIA requests annually increased, reaching nearly 28,000 in FY 2016 (an increase of over 350%). By the end of FY 2016, the Department had a backlog of approximately 22,600 FOIA requests pending. As the result of a concerted push to reduce the backlog in the past six months,

the Department currently has approximately 10,600 FOIA requests pending. Despite the dramatic increase in the FOIA caseload during the last five years, it has taken several years for the resources available to process FOIA requests to increase. For instance, the Department spent approximately $17.6 million in FY 2013, $18.3 million in FY 2014, about $33.4 million in FY 2015, about $19.1 million in FY 2016, and about $37.3 million in FY 2017 on FOIA personnel and costs associated with processing FOIA requests.

17. Additionally, the Department has been increasingly required to divert resources to FOIA litigation cases. The Department was a defendant in approximately 50 FOIA litigation cases in early 2014; currently the Department is a defendant in approximately 126 FOIA litigation cases. FOIA requests subject to litigation comprise approximately 1% of all FOIA requests at the Department, but demand a disproportionate share—approximately 70%–80%—of IPS's FOIA review resources.

18. From FY 2014 to FY 2016, the Department's FOIA backlog grew significantly due in part to exceptionally demanding court orders in several FOIA litigation cases. In those years, the Department experienced extraordinary FOIA litigation demands, including court-ordered production of approximately 30,000 emails from former Secretary Clinton in under one year, additional court orders to process tens of thousands of Secretary Clinton's emails provided to the Department by the FBI in the summer of 2016, and an order to complete a *Vaughn* Index for 10,000 pages of records within six weeks, also in the summer of 2016.[4]

19. In all of these and many other situations, the Department strives to meet its litigation obligations; however, it comes at the expense of all other requesters seeking

---

[4] At that time, the Department could usually commit to completing a *Vaughn* index for about 100 documents per month with existing resources.

information from the government. The backlog of FOIA requests increased from 10,045 cases in FY 2014 to 20,626 in FY 2015. The backlog increased again to 22,664 in FY 2016. There is a direct correlation between the Department's FOIA litigation demands and this backlog. Additionally, the increased backlog increases the risk of future litigation and, more importantly, results in long delays between requests for information and the production of that information.

20.     The Department's FOIA litigation demands continue to be considerable. The Department is currently the subject of court orders in 15 different litigations that in total require it to process at least 9,500 pages per month.[5] This total includes a recent order for the Department to process 1,500 pages per month in one case.[6] The Department has had to divert substantial resources to that case in order to comply with the court's order. In addition to the litigations with court ordered monthly minimums, the Department is committed to making productions in 22 litigations, and anticipates beginning monthly productions soon in another 11 current litigations, including this case. (*See* Exhibit 1). In all cases, the Department strives to process at least 300 pages per month. Therefore, the Department is attempting to process at least 16,100 pages per month for litigation currently and anticipates adding another 3,300 pages per month in the near future. FOIA litigation cases that do not have regular production schedules also require resources for various tasks such as drafting and reviewing *Vaughn* indices or conducting searches for, and ingestion of, potentially responsive material. At the same time, the Department must continue to use its resources to process the thousands of requests that are not the subject of litigation.

---

[5] This number is approximate because in one case, *Leopold v. Dep't of State*, No. 14-cv-1771, (D.D.C.), the Department is required to process an average of 700 pages of material per month.
[6] *National Immigration Project of the National Lawyers Guild et al. v. Dep't of Homeland Security et al.*, No. 18-cv-00659, (S.D.N.Y.), ECF No. 55, April 6, 2018.

8

21. In July 2016, the Department quantified its FOIA processing capability to determine how many pages it could process each month. The Department determined that each of its FOIA reviewers could process approximately 300 pages per month after those records were located through the Department's search. *See Citizens United v. State*, No. 16-cv-0108 (D.D.C.), ECF No. 11-1 (discussing how many pages the Department can finalize).

22. There are certain constraints on the Department's ability to precisely analyze and predict its processing capability. IPS's reviewer staff mostly works on a part-time basis because most reviewers are capped at working 1040 hours per calendar year due to their employment status with the Department. Given the cap on many reviewers' time, they typically do not work every pay period of the year in order to ensure that they do not reach their hours limit before the end of the year. As a result, it is difficult for IPS to estimate at any given time how many reviewers it has available to work on FOIA cases, as the number is continuously fluctuating. On average, IPS has had 68 reviewers working on both litigation and non-litigation FOIA cases in FY 2017, and in the most recent pay period, there were approximately 60 FOIA reviewers. There is no set number of reviewer positions for FOIA litigation, but there are 9 unfilled positions in the IPS litigation team that supports the litigation FOIA reviewers. Plaintiff's request to process 3,000 pages per month would require approximately 16% of State's FOIA litigation reviewers to devote their time solely to this case, which is not practicable.

23. Additionally, as part of a recent effort to reduce the FOIA backlog, IPS received authorization to hire up to 200 FOIA reviewers to work on non-litigation FOIA requests. IPS has aggressively recruited for reviewers, and has filled about 80 positions so far; however, about half are not yet working because they are undergoing background checks for clearances. The other half are relatively new to FOIA and do not have experience working on FOIA litigation

cases. While still relatively inexperienced with regard to FOIA, these 40 positions that are currently filled are helping the Department process the 99% of FOIA requests that are not in litigation, reducing the backlog.

24. IPS's ability to increase the number of reviewers is constrained by the need for reviewers to possess the necessary security clearances and subject matter expertise to review materials related to U.S. foreign relations and diplomacy that may be responsive to FOIA requests. IPS cannot determine, based on a request alone, whether any of the responsive material will be classified. Moreover, pursuant to its authority under Executive Order 13526, IPS may determine that information responsive to a FOIA request needs to be classified (for example, IPS may determine that certain unmarked information must be classified at the "CONFIDENTIAL" or "SECRET" level). Finally, F2 operates on a classified network, which requires any reviewers using the system to hold a security clearance of at least the SECRET level. Consequently, IPS reviewers must have clearances because they cannot know from the outset whether they will be handling classified information and because they need the clearances to operate in F2, the document review system.

25. Exceptionally demanding FOIA litigation court orders for monthly productions result in the prioritization of those requests in litigation over all other pending requests, even those for information that the public may consider more compelling than that which is the subject of litigation. In such a situation, the biggest challenges for the Department are: (1) how to use limited resources to accommodate the diverse requests the Department receives, which encompass a broad range of subjects and document types because of the Department's global mission and the broad range of programs and activities in which the Department is involved, and (2) how to cope with the exponentially growing volume of electronic records which need to be

reviewed for sensitive information, such as privacy or classified information, prior to public release. During my tenure in this position, we have made every effort to use available resources to comply with these many, diverse requests while also demonstrating a willingness to work with requesters, including Plaintiff, when there are large volumes of electronic records involved, especially emails.

26.    In sum, the Department currently has the capacity to commit to process 300 pages per month in this case. To process more than this volume at this time given the existing workload and the current state of available FOIA review resources would reduce the Department's capacity to comply with production orders issued by courts in existing cases, to comply with production orders in new FOIA litigation that is filed, and disproportionately to process records in response to FOIA requests not currently in litigation.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of April 2018, Washington, D.C.

Eric F. Stein