**KNIGHT
FIRST AMENDMENT
INSTITUTE**

at Columbia University

May 4, 2018

*Via ECF and Email*

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

>    Re:    ***Knight First Amendment Institute v. U.S. Department of
>          Homeland Security, et al.,* Case No. 17-CV-7572 (ALC)**

Dear Judge Carter:

    The Knight First Amendment Institute at Columbia University (the
"Knight Institute" or "Institute") respectfully submits this letter brief in
response to the letter brief filed on behalf of defendants U.S. Immigration
and Customs Enforcement ("ICE") and U.S. Department of State ("DOS")
on April 20, 2018 ("Defs.' Br."), ECF No. 52. As discussed in the two joint
status updates, ECF Nos. 48, 50, the parties have not agreed upon the
timeframe within which ICE and DOS should process and produce records
responsive to the Knight Institute's Freedom of Information Act ("FOIA")
request (the "Request"), ECF No. 42-2, underlying this action. Those
records are necessary to inform the public debate surrounding significant
developments in the Trump Administration's "Extreme Vetting"
program—including policies scheduled to take effect in the coming months.

    Because the Request was filed nearly nine months ago, and in view
of the public's increasingly urgent need to know how the Administration
understands its authority to "vet" non-citizens based on their statements or
associations, the Knight Institute believes that the processing schedules
proposed by DOS and ICE are unreasonable. The Knight Institute
respectfully requests that the Court issue an order requiring DOS to
complete production of responsive records by May 30, 2018, and requiring
ICE to produce responsive records on a rolling basis, to be completed by
August 31, 2018.

## BACKGROUND

    The Knight Institute submitted the Request to DOS and ICE, along
with the other Defendants named in this action, on August 7, 2017. The
Request seeks, among other things, information about any new policies for
vetting individuals seeking to enter or remain in the United States and about
the government's understanding of its authority to base immigration

decisions on individuals' speech, beliefs, or associations. The Knight Institute filed suit on October 4, 2017, to ensure the timely release of the requested records, which are necessary to inform the significant public debate surrounding the Administration's Extreme Vetting program. Since then, DOS and ICE have announced contentious new policies that implicate weighty First Amendment interests, only sharpening the need for the records sought in the Request.

## A.   Procedural History

### 1.   DOS

In its acknowledgement letter dated August 15, 2017, DOS granted the Knight Institute's request for expedited processing and a fee waiver. Am. Compl. ¶ 41, ECF No. 42; Defs.' Answer to First Am. Compl. ("Answer") ¶ 41, ECF No. 47. DOS failed to release any responsive records in the month and a half before the Knight Institute filed suit, however, and it has failed to release any responsive records in the ensuing seven months. During phone calls with Defendants' counsel on January 25, 2018 and February 6, 2018, the Knight Institute agreed provisionally to modify the Request in order to facilitate the processing of records it believed would be most significant to the developing debate over the Administration's vetting policies. Joint Status Report ¶ 2, Apr. 9, 2018 ("Apr. 9 JSR"), ECF No. 48; Decl. of Carrie DeCell, May 4, 2018 ("DeCell Decl."), ¶¶ 9–10. Specifically, the Knight Institute provisionally agreed: for Item 1, that Defendants could limit their search to White House systems alone; to narrow Items 2-5 to final policy memoranda and equivalent records representing final guidance; to narrow the initial search for records responsive to Item 5 to DOS systems alone; to narrow Item 6 to the records sought in subparts 6(a) and 6(e); to narrow Item 6(a) to records created since January 19, 2012; and to narrow the initial search for records responsive to Item 6(e) to DOS and DHS systems alone. Apr. 9 JSR ¶ 2; DeCell Decl. ¶¶ 9–10. The Knight Institute thus agreed, on a provisional basis, to modify the Request as a whole rather than with respect to each defendant agency.

Following the status conference held on February 23, 2018, the Court ordered DOS and other Defendants to complete their searches by March 30, 2018. Order, ECF No. 39. During a call on April 4, 2018, Defendants' counsel informed the Knight Institute that DOS had identified approximately 850 potentially responsive emails and 674 pages of other potentially responsive records, but that DOS could not specify how many pages the emails contained. Apr. 9 JSR ¶ 19; DeCell Decl. ¶ 11; *see also* Defs.' Br. 6 n.2. Defendants' counsel further informed the Institute that DOS proposed to process those records at a rate of 300 pages per month. Apr. 9 JSR ¶ 20; DeCell Decl. ¶ 11. Given the length of time that has already elapsed since the Institute submitted the Request and DOS's grant of expedited processing, the Knight Institute instead requested that DOS

process and produce any responsive records by May 30, 2018. Apr. 9 JSR ¶ 33; DeCell Decl. ¶ 12.[1]

## 2.   ICE

ICE granted the Knight Institute's request for expedited processing on September 26, 2017. Am. Compl. ¶ 25; DeCell Decl. ¶ 8. On September 29, 2017, ICE sent the Knight Institute a response letter quoting only Item 1 of the Request, along with 1,666 pages of responsive records. ECF No. 42-3. ICE withheld 1,653 of those pages in full, claiming various FOIA exemptions. *See id.*; Apr. 9 JSR ¶ 21.

After the Knight Institute filed suit to ensure the prompt release of all records responsive to the Request, Defendants' counsel informed the Knight Institute that ICE believed the Institute had failed to exhaust its administrative remedies. Am. Compl. ¶ 28; DeCell Decl. ¶ 15. In an abundance of caution, the Knight Institute submitted an administrative appeal challenging ICE's response to Item 1 of the Request, believing ICE had not responded to the remainder of the Request. ECF No. 42-4; *see* DeCell Decl. ¶ 15. Following ICE's letter to the Court requesting a pre-motion conference regarding a motion to dismiss, ECF No. 28, Defendants' counsel clarified ICE's position that its September 29, 2017 letter and the accompanying records were responsive to the entire Request. Rather than litigate the issue—to conserve the Court's resources and those of the parties—the Knight Institute amended its administrative appeal, Am. Compl. ¶ 15; ECF No. 42-5; DeCell Decl. ¶ 16, and agreed to dismiss ICE from the action voluntarily and without prejudice, ECF No. 29; DeCell Decl. ¶ 17.[2] The Court dismissed ICE without prejudice on January 16, 2018. ECF No. 31. During the January 25, 2018 call on which the parties negotiated significant modifications to the Request as whole, Defendants' counsel stated that she would confirm whether ICE was processing the Knight Institute's administrative appeal as of the dismissal date, thus indicating that she continued to represent ICE at that point. DeCell Decl. ¶ 18.

ICE responded to the administrative appeal on February 6, 2018, concluding that the withholdings in its September 29, 2017 response were

---

[1] Contrary to Defendants' characterization, Defs.' Br. 2, the Knight Institute has not requested that DOS or ICE process or produce 3,000 pages per month. Rather, the Institute has requested that DOS and ICE complete the production of responsive records by the dates stated above, and it has endeavored to narrow the Request to reduce the volume of records each agency would have to process within those timeframes.

[2] The Knight Institute does not concede, as Defendants suggest, Defs.' Br. 1, that it failed to exhaust administrative remedies with respect to ICE before filing suit.

proper but agreeing to conduct a new search for responsive records. ECF No. 42-6. During a call held on the same day, Defendants' counsel informed the Knight Institute that ICE had already conducted a new search and located 14,068 potentially responsive records. DeCell Decl. ¶ 20. ICE subsequently confirmed in an email to the Knight Institute that it had conducted a new search and located approximately 14,000 pages of potentially responsive documents, of which it would commit to reviewing and processing at least 500 pages per month. ECF No. 42-7; DeCell Decl. ¶ 21. ICE indicated that it would make an initial production on March 7, 2018, and monthly productions thereafter. *Id.* Dissatisfied with ICE's response to its administrative appeal and its proposed processing schedule that would reach far into 2019, the Knight Institute filed an amended complaint, with Defendants' and ICE's written consent, on March 14, 2018. Am. Compl.; ECF No. 42-1 (written consent); DeCell Decl. ¶ 23.

Prior to the filing of the parties' April 9, 2018 joint status report, Defendants' counsel informed the Knight Institute that ICE might be willing to negotiate a different processing schedule if the Institute was willing to modify the scope of the Request. Apr. 9 JSR ¶ 28. During a call with Defendants' counsel on April 11, 2018, Defendants' counsel explained that ICE had conducted its new search based on the original Request, not the Request as provisionally modified for the other agencies. DeCell Decl. ¶ 24. The Knight Institute confirmed that it would be willing to narrow the Request on an Item-by-Item basis, as it had done for the other agencies. But Defendants' counsel stated that ICE was not able to determine the number of pages that were responsive to each Item of the Request, so it would not be possible to narrow or prioritize the responsive records on those terms. Rather, the only ways ICE could narrow the scope of responsive records were by date and by agency component, neither of which would have significantly reduced the overall volume of records or assured the Knight Institute that it would be receiving the records it considered most relevant to the Request. *Id.*[3] The parties were therefore unable to reach an agreement

---

[3] For most Items, the Request seeks records created on or after May 11, 2005. ECF No. 42-2, at 3. As mentioned above, ICE found 14,068 pages of potentially responsive materials during its second search. According to Defendants' counsel, records dating on or after January 1, 2010 totaled 11,713 pages; records dating on or after January 1, 2014 totaled 11,334 pages; and records dating on or after January 1, 2016, totaled 10,814 pages. DeCell Decl. ¶ 24. Broken down by component, records located in the Office of the Principal Legal Advisor ("OPLA") totaled 9,576 pages; records located in the Enforcement and Removal Office totaled 182 pages; records located in the Front Office totaled 43 pages; and records located in the Office of Policy totaled 16 pages. *Id.* Thus, even narrowing the Request to the most recent records or the records located in OPLA alone would have hardly reduced the overall volume of pages for ICE to process.

over a processing schedule for ICE. *See* Defs.' Letter, Apr. 13, 2018, ECF No. 50.

**B.   Ongoing Policy Developments**

Both DOS and ICE are currently developing proposed vetting policies that may broadly impact the First Amendment interests of citizens and non-citizens alike. Because these policies will likely take effect in the coming months, the public has a significant and urgent interest in the prompt release of the information sought in the Request.

On March 30, 2018, DOS published notices in the Federal Register proposing to include new questions on the electronic applications for all immigrant and non-immigrant visas that would require applicants to provide any identifiers, such as profile names or handles, they have used on specified social media platforms in the preceding five years.[4] This requirement could burden the anonymous speech and private association of non-citizens, including U.S. residents, and would likely chill the expressive activity of non-citizens and any U.S. citizens with whom they communicate on social media. The initial public comment period ends on May 29, 2018, following which DOS may consider the comments and amend the proposals as it deems appropriate before submitting them to the Office of Management and Budget ("OMB") for review. *See* 44 U.S.C. § 3506(c)(2)(A) (setting forth 60-day public comment period). The public will then have an additional 30 days to comment before OMB decides whether to approve the proposed collection of this social media information or take some other action. *Id.* § 3507(b). The proposed changes could thus take effect as soon as June 30, 2018.

As early as September 2018, ICE may implement the "Extreme Vetting Initiative" it revealed last June, when it solicited bids from independent contractors to develop a "robust, overarching vetting process" of visa applicants involving the "exploit[ation of] publically available information, such as media, blogs, public hearings, conferences, academic

---

[4] Dep't of State, 60-Day Notice of Proposed Information Collection: Application for Immigrant Visa and Alien Registration, 83 Fed. Reg. 13,806, 13,806–07 (Mar. 30, 2018); Dep't of State, 60-Day Notice of Proposed Information Collection: Application for Nonimmigrant Visa, 83 Fed. Reg. 13,807, 13,807–08 (Mar. 30, 2018). These notices expand the previously approved collection of similar information from a "subset of visa applicants" from whom additional information was sought as part of the application process. *See* Dep't of State, 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 82 Fed. Reg. 36,180, at 36,181 (Aug. 3, 2017); Dep't of State, Notice of Information Collection Under OMB Emergency Review: Supplemental Questions for Visa Applicants, 82 Fed. Reg. 20,956, at 20,957 (May 4, 2017).

websites, social media websites . . . [and] internet sites."[5] According to ICE's solicitation documents, successful bidders will monitor publicly available social media and other online information about visa applicants and visa holders to identify possible grounds for inadmissibility, generating 10,000 "investigative leads" per year.[6] In other words, the social media and other online activities of visa holders and applicants, and those with whom they communicate or associate, may trigger removal proceedings against non-citizens. The Extreme Vetting Initiative thus threatens to chill the expressive and associative online activities of non-citizens, including U.S. residents, and of members of their families and communities. The initiative is scheduled to take effect before the end of September 2018.[7]

These proposed policies lend new urgency to the Request. The records sought from DOS are necessary to inform the public's views on DOS's proposed changes to visa applications, which they will be able to convey to the government during a limited timeframe starting as early as May 30, 2018. And the records sought from ICE are necessary to inform the public's evaluation of ICE's Extreme Vetting Initiative, particularly surrounding the projected implementation of that initiative before the end of September 2018.

## ARGUMENT

The Knight Institute requests a processing schedule that will ensure that the public has access to information necessary to evaluate these new vetting policies, and government's authority to adopt them, before they take effect. To afford DOS and ICE some flexibility in processing the records responsive to the Request, the Knight Institute seeks a completion date for each agency's review and production, rather than a strict processing rate. Given that the Request has been pending for nearly nine months—and this litigation has been ongoing for more than seven—the Knight Institute believes it is reasonable for DOS to complete production by May, 30, 2018, and for ICE to complete production by August 31, 2018. Defendants have failed to establish "exceptional circumstances" that would warrant any additional time to produce the responsive records.

---

[5] ICE, *Background* 2–3 (June 12, 2017), https://www.fbo.gov/utils/view?id=3a1078ca9739319d84f05424dd05ef6a; *see also* ICE, *Extreme Vetting Initiative: Statement of Objectives* (June 12, 2017) (summary of project goals), https://www.fbo.gov/utils/view?id=533b20bf028d2289633d786dc45822f1.

[6] ICE, *Background, supra* note 5, at 2.

[7] *See* U.S. Dep't of Homeland Sec., Acquisition Forecast (indicating anticipated award of Extreme Vetting program, also known as the "Visa Lifecycle Vetting Initiative," contract during Q4 of Fiscal Year 2018), https://perma.cc/V48U-Q9QN (webpage archived May 2, 2018).

**A.      DOS and ICE Must Process the Requested Records "as Soon as Practicable."**

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 212, 242 (1978); 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i). The prompt release of records in response to a FOIA request is key to accomplishing that purpose. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("As to actual production, FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years."). In cases where a requester "demonstrates a compelling need," she can seek expedited processing of her FOIA request. 5 U.S.C. § 552(a)(6)(E)(i). When an agency grants a request for expedited processing, the statute requires that the agency process responsive records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

While Congress has not imposed specific deadlines for processing expedited requests, the "legislative history of the amendments to FOIA makes clear that . . . its intent was to 'give the request priority for processing *more quickly than otherwise would occur*.'" *Brennan Ctr. for Justice v. U.S. Dep't of State*, No. 17-cv-7520-PGG, 2018 WL 369783, at *6 (S.D.N.Y. Jan. 10, 2018) (emphasis in original) (quoting *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006)). In this context, courts have indicated that "the phrase 'as soon as practicable,' . . . cannot be interpreted to impose a lower burden on the agency than the twenty day statutory period that would otherwise be required for standard FOIA requests." *Id.* at *6 (internal quotation marks omitted). Where an agency fails to process an expedited request within the statutorily defined time limit, the burden is on the agency to establish, by "credible evidence[,] that disclosure within such time period is truly not practicable." *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 39.

As discussed above, both DOS and ICE granted the Knight Institute's request for expedited processing. Am. Compl. ¶¶ 25, 41; Answer ¶ 41; DeCell Decl. ¶¶ 7–8. Both agencies are therefore bound to process and produce responsive records as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii). Yet DOS proposes to process potentially responsive records at its standard rate of 300 pages per month, *see* Decl. of Eric F. Stein ¶ 20 ("Stein Decl."), ECF No. 53 ("In all cases, [DOS] is attempting to process at least 300 pages per month."), and ICE proposes a production rate that would likely result in a final release of responsive records well over a year from now—and possibly over two years from the submission of the Request, DeCell Decl. ¶ 27.

Additionally, in granting expedited review, both agencies have conceded that the records sought by the Knight Institute are urgently needed to inform the public about actual or alleged government activity—here, the Administration's policies for excluding or removing individuals from the United States based on their speech, beliefs, or associations. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); ECF No. 42-2, at 6. As discussed below, these policies have been a matter of hot debate and significant public interest. DOS and ICE should therefore be required to produce the responsive documents at a rate that reflects the urgency of the need for these documents, consistent with the expedited processing each agency granted.

## B. DOS and ICE Have Failed to Demonstrate "Exceptional Circumstances" that Warrant Additional Time.

Despite their grants of expedited processing, DOS and ICE request "additional time" to process the Request because they face "exceptional circumstances." Defs.' Br. 4. The Court may afford an agency additional time to process a FOIA request where it is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of [FOIA], and when the agency can show that it is 'exercising due diligence' in processing the requests." *Elec. Privacy Info. Ctr. v. FBI* (*EPIC v. FBI*), 933 F. Supp. 2d 42, 46 (D.D.C. 2013) (quoting *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). Courts also consider several other factors, including "an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency," *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007), and a requester's refusal to "reasonably modify the scope of a request or arrange an alternative time frame for processing," 5 U.S.C. § 552(a)(6)(C)(iii). Congress has made clear, however, that "exceptional circumstances" do not include delays "result[ing] from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

Defendants have not established that they are "deluged" with a volume of FOIA requests "vastly in excess of that anticipated by Congress." *EPIC v. FBI*, 933 F. Supp. 2d at 46; *see* H.R. Rep. 104-795, at 24 (1996) ("clarify[ing] that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances"). Rather, any delays the agencies currently face result entirely from their predictable FOIA workloads. Indeed, those workloads actually *decreased* in the "*relevant* fiscal year"—the year in which the Request was submitted. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 12 (D.D.C. 2015) (focusing on "period during which the plaintiff's own requests were filed" in determining whether "exceptional circumstances" exist). Defendants point to increases

in the number of FOIA requests DOS and ICE have received in recent years, *see* Defs.' Br. 3, but fail to acknowledge the substantial drop in new requests received in FY 2017: for DOS, a drop from 27,961 requests in FY 2016 to 7,688 requests in FY 2017;[8] and for ICE, a drop from 63,385 requests in FY 2016 to 47,839 requests in FY 2017. Decl. of Catrina Pavlik-Keenan ¶ 20 ("Pavlik-Keenan Decl."), ECF No. 54.

Moreover, ICE has acknowledged that any recent increase in its FOIA workload is "mainly due to an increase in the number of referrals received from USCIS" following a change in the agreement between ICE and USCIS regarding the processing of certain Alien File or "A-File" records. Pavlik-Keenan Decl. ¶ 21. ICE does not explain how or why changes in its own policies are anything other than part of the agency's "predictable workload." *Clemente v. FBI*, 71 F. Supp. 3d 262, 267 (D.D.C. 2014) (indicating changes in FBI policy did not support a finding of exceptional circumstances and were instead part of the agency's "predictable workload") (quoting *EPIC v. FBI*, 933 F. Supp. 2d at 48)). Further, though ICE points to an increase in requests during the first several months of FY 2018, Pavlik-Keenan Decl. ¶ 20, there is no indication that this increase was anything but predictable. President Trump and the Trump Administration have publicly contemplated pursuing hotly contested immigration policies since the earliest days of the 2016 presidential campaign.[9] It cannot be said that an increase in FOIA requests related to immigration policies during this Administration was unpredictable.

Nor has ICE demonstrated reasonable progress in reducing its backlog of pending requests. Notwithstanding the significant reduction in requests received in 2017, ICE carried over a backlog of 535 requests, down only slightly from the backlog of 621 requests it carried over from 2016. *Id.* ¶ 20. This evidence counters, rather than supports, the presence of exceptional circumstances here. *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't*, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017) (holding ICE and other agency defendants to their burden to justify

---

[8] U.S. Dep't of State, Freedom of Information Act Report, Fiscal Year 2017, at 13, https://foia.state.gov/Learn/Reports/Annual/2017.pdf; U.S. Dep't of State, Freedom of Information Act Report, Fiscal Year 2016, at 11, https://foia.state.gov/Learn/Reports/Annual/2016.pdf.

[9] This includes, but is far from limited to, the Extreme Vetting policies at the heart of the Request. *See, e.g.*, Yeganeh Torbati, *Trump Administration Approves Tougher Visa Vetting, Including Social Media Checks*, Reuters (May 31, 2017), http://reut.rs/2rlVhvU; *Trump Defends Immigration Restrictions, Wants People "Who Love Our Country,"* Chi. Trib. (Feb. 6, 2017), http://trib.in/2vIQeuw; Karen DeYoung, *Trump Proposes Ideological Test for Muslim Immigrants and Visitors to the U.S.*, Wash. Post (Aug. 15, 2016), http://wapo.st/2byUG6o; Suzanne Gamboa, *Donald Trump Announces Presidential Bid by Trashing Mexico, Mexicans*, NBC News (June 16, 2015), https://nbcnews.to/2rk622b.

"exceptional circumstances," including by evidence of progress in reducing their FOIA request backlogs); *Bloomberg, L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007).

Finally, the Knight Institute has readily modified the scope of the Request to facilitate the agencies' processing of potentially responsive records. As discussed above, the Institute significantly modified the Request with respect to all agencies on January 25, 2018—long before they completed their searches for responsive records, and before the Institute received ICE's response to its administrative appeal and notice that ICE had conducted a new search. The Institute is not responsible for ICE's decision to conduct a new search for records responsive to the original Request, even after the Knight Institute agreed to modify the Request as a whole. And the parties' subsequent inability to narrow the scope of those records on mutually agreeable terms does not undermine the Institute's willingness to modify the Request overall. *Cf. Elec. Frontier Found.*, 517 F. Supp. 2d at 117–18 (indicating that when a plaintiff is willing to modify a request and an agency has failed to provide "sufficient information to allow an informed decision" on what modification is appropriate, a failure to modify does not, in and of itself, justify a finding of "exceptional circumstances").

## C.    The Knight Institute's Proposed Processing Schedule Is Reasonable.

As explained above, the Knight Institute requests a processing schedule with specified production completion dates, rather than specified processing rates. *Cf. Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.* (*EPIC v. DHS*), 218 F. Supp. 3d 27, 36 (D.D.C. 2016) (summarizing order adopting plaintiff's proposed schedule consisting of "concrete deadlines"). Regardless of how the Court evaluates the Knight Institute's requested schedule, it is reasonable in view of the pending implementation of the significant policy changes discussed above and the processing rates courts have ordered in similar FOIA cases. *See Clemente*, 71 F. Supp. 3d at 269 (concluding that plaintiff's "proposed processing rate" of 5,000 pages per month "is reasonable in light of the importance of her work and the possibility that she may have only a limited time in which to do it").

To date, the Knight Institute does not know how many pages of potentially responsive documents were found in DOS's searches. While the Knight Institute has been informed that there are approximately 850 emails and 674 other pages of potentially responsive documents, DOS has not revealed the total number of pages contained in the emails. Defs.' Br. 6 n.2. The Knight Institute therefore cannot determine how many pages per month DOS would have to process in order to complete production of responsive records by May 30, 2018. Given DOS's belief that "many of those records are not in fact responsive," however, it seems unlikely that DOS will have to examine as many as 3,000 pages of records for applicable FOIA

exemptions or need to consult with other agencies on that volume of records. Stein Decl. ¶ 8; *see id.* ¶ 9 n.1. The rate at which DOS would have to process responsive records in order to meet the Knight Institute's requested production deadline is likely consistent with rates courts have imposed on DOS in recent cases. *See, e.g.*, *Leopold v. Dep't of Justice*, No. 15-cv-02117 (D.D.C.), ECF No. 26 (ordering DOS to process 1,850 pages per month); *Nat'l Immigration Project of the Nat'l Lawyers Guild v. Dep't of Homeland Sec.*, No. 18-cv-00659 (S.D.N.Y.), ECF No. 55 (ordering DOS and DHS to process 1,500 pages per month); *cf. EPIC v. FBI*, 933 Supp. 2d at 48 (concluding that order requiring FBI to process "approximately 5,000 pages per month in another case demonstrates that the FBI is not facing such exceptional circumstances that it can only review 1,500 pages per month in response to EPIC's request"). Moreover, had DOS completed its search and begun processing responsive records in a timely manner, consistent with its grant of expedited processing in August 2017, DOS likely would have completed production by now.

Defendants similarly concede that "most, if not all, of the material ICE must process and produce does not appear to be classified," Defs.' Br. at 4, but suggest that the volume of records ICE identified in its new search render the Institute's requested processing schedule not practicable. Had ICE conducted its search for responsive documents based on the Institute's modified Request, it likely would have to process far fewer pages overall. And Defendants now ignore the Knight Institute's recent attempt to modify the Request on an Item-by-Item basis in order to reduce the volume of records ICE would have to process while assuring that it would release the records most relevant to the Request. Based on conversations with Defendants' counsel, it is clear that ICE cannot identify which of the potentially responsive records it has already located are responsive to which Item of the Request. But as outlined above, ICE's alternative suggestion to narrow those records by date or component would not significantly alter the volume of records ICE would have to process pursuant to its obligations under FOIA, either.

Given the parties' inability to narrow the scope of potentially responsive records at this stage, ICE proposes a roughly eighteen-month production schedule. Defs.' Br. 6. Courts have rejected similarly long production schedules as "far too far away." *EPIC v. DHS*, 218 F. Supp. 3d at 37 (describing a 16-month processing). The processing rate suggested by the Knight Institute's requested production schedule, in contrast, is consistent with processing rates courts have ordered in other cases. *Nat'l Immigration Project*, No. 18-cv-00659 (S.D.N.Y.), ECF No. 55 (ordering DOS and DHS to process 1,500 pages per month); *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241 (D.D.C. 2017) (ordering FBI to process 2,850 pages per month); *EPIC v. DHS*, 218 F. Supp. 3d at 37 (summarizing initial order requiring DHS to process at least 2,000 pages per month); *Clemente*, 71 F. Supp. 3d at 264 (ordering FBI to process 5,000 pages per month).

*      *      *

In granting the Knight Institute's request for expedited processing, DOS and ICE acknowledged the "compelling need" for the records it seeks. That need would not be met by the processing schedules they have proposed. As Congress recognized in amending FOIA, "information is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial." H.R. Rep. No. 93–876, at 6267 (1974). That is particularly true where the requested information bears on significant policy changes with impending effective dates, which, once adopted, may burden the freedoms of speech and association of millions of individuals within and beyond the U.S. borders.

## CONCLUSION

For the foregoing reasons, the Knight Institute respectfully requests that the Court order DOS to complete its processing and produce all responsive documents by May 30, 2018, and order ICE to process and produce responsive records on a rolling basis, to be completed by August 31, 2018.

Respectfully,

/s/ Carrie DeCell          | /s/ Megan Graham

Carrie DeCell (CD-0731)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

Megan Graham (*pro hac vice*)
Catherine Crump (CC-4067)
Samuelson Law, Technology &
    Public Policy Clinic
U.C. Berkeley School of Law
354 Boalt Hall
Berkeley, CA 94720-7200
mgraham@clinical.law.berkeley.edu
(510) 664-4381

*Counsel for Plaintiff*          *Counsel for Plaintiff*

cc: Ellen Blain, Esq. (via Email)