**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY,

               Plaintiff,

       v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. CUSTOMS AND BORDER
PROTECTION, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES, U.S. DEPARTMENT OF
JUSTICE, and U.S. DEPARTMENT OF
STATE,

               Defendants.

No. 1:17-cv-07572-ALC

**DECLARATION OF CARRIE DECELL IN SUPPORT OF PLAINTIFF'S REQUEST
FOR ORDER SETTING PROCESSING SCHEDULE**

Pursuant to 28 U.S.C. § 1746, I, Carrie DeCell, declare and state as follows:

1.    I am a staff attorney at the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute"). I have served in this role since July 31, 2017.

2.    Along with my colleagues, I submitted identical Freedom of Information Act ("FOIA") Requests (the "Request") to the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), Citizenship and Immigration Services ("USCIS"), the Department of Justice ("DOJ"), and the Department of State ("DOS") (collectively, "Defendants") on August 7, 2017. The Request sought, among other things, agency records concerning the exclusion or removal of individuals from the United States based on their speech, beliefs, or associations, and records concerning any new policies for "vetting"

individuals on these grounds.

3.      The Knight Institute requested expedited processing of the Request on the ground that the records it sought were urgently needed to inform the public about government activity, particularly with respect to the new "extreme vetting" program President Trump has ordered federal agencies to develop.

4.      Seeking the immediate release of all agency records responsive to the Request as required under FOIA, 5 U.S.C. § 552, the Knight Institute filed a complaint in this Court on October 4, 2017. The Knight Institute filed an amended complaint on March 14, 2018.

5.      I represent the Knight Institute in this action and have served as the primary contact for Defendants' counsel since the beginning of the litigation.

6.      The purpose of this declaration is to provide the Court with information regarding the parties' negotiations over the scope of the Request and the processing schedules for DOS and ICE.

7.      DOS granted the Knight Institute's request for expedited processing in its acknowledgment letter dated August 15, 2017. DOS did not release any records responsive to the Request before the Knight Institute filed its original complaint on October 4, 2017, or before the Knight Institute filed its amended complaint on March 14, 2018.

8.      ICE granted the Knight Institute's request for expedited processing by letter dated September 26, 2017, following an administrative appeal of its initial decision to deny expedited processing.

**<u>Communications Relating to Narrowing the Request</u>**

9.      On January 25, 2018, I spoke with Defendants' counsel by phone to discuss provisional modifications to the Request and a processing schedule for Defendants. My co-counsel

Megan Graham and two students of the Samuelson Law, Technology & Public Policy Clinic at U.C. Berkeley School of Law ("Samuelson Clinic") joined the call. During the call, the Knight Institute agreed to narrow the Request on a provisional basis as follows:

- **Item 1:** Defendants' counsel asked whether Defendants could search for responsive records in White House systems alone, rather than searching each Defendants' systems for communications received from the White House. We agreed to this proposal, provided Defendants' counsel could give us assurances that the records produced from the White House systems were comprehensive of all records responsive to Item 1 of the Request.

- **Items 2–5:** We provisionally agreed to narrow these Items of the Request to final policy memoranda and equivalent records. We agreed that Defendants would not have to conduct an email search for records responsive to these Items of the Request.

- **Item 6:** Defendants' counsel had previously explained that USCIS would have to conduct a manual search of individual Alien Files ("A-Files") for records responsive to certain parts of Item 6. We provisionally agreed to narrow this Item to subparts (a) and (e), explaining that we were most interested in obtaining statistical information, not information from individual A-Files. We agreed to limit the Defendants' initial searches for material responsive to Item 6(a) to records created on or after January 19, 2012. We agreed that for Item 6(e), initially only DOS and DHS needed to search for responsive records.

10.     On a February 6, 2018 call with Defendants' counsel, joined by Ms. Graham and the Samuelson Clinic students, I provisionally agreed that Defendants could search for records

3

responsive to Item 5 of the Request in DOS systems alone. We declined to narrow the search for records responsive to Item 6(a) to USCIS systems.

### Communications Relating to DOS Processing

11.     On April 4, 2018, Ms. Graham and I spoke with Defendants' counsel by phone to discuss the results of Defendants' searches, which the Court had ordered them to complete by March 30, 2018. Defendants' counsel informed us that DOS had located approximately 850 emails, 300 pages of PDF records, and 374 pages of other records. Defendants' counsel further informed us that DOS could not determine the number of pages contained in the emails, including any attachments, and that DOS would commit to processing only 300 pages per month.

12.     On April 5, 2018, I sent Defendants' counsel an email explaining that the Knight Institute could not accept DOS's proposal to process potentially responsive records at a rate of 300 pages per month, given that DOS had granted expedited processing and that the Request had been pending since August 2017. I noted that the public interest in the requested records has grown more urgent since then, citing DOS's recent proposal to require visa applicants to provide the government with their social media information. The Knight Institute therefore requested that DOS complete production of responsive records by May 30, 2018.

13.     By the time the parties filed their joint status report on April 9, 2018, we had not reached an agreement over an appropriate processing schedule for DOS.

### Communications Relating to ICE's Response to the Request

14.     On September 29, 2017, ICE sent the Knight Institute a "final response" to its FOIA request "for 1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including

decisions to exclude1 [sic] or remove individuals from the United States (please see request for more details)." Because the letter mentioned no other Item of the Request and contained no other indication that it constituted a response to the entire Request, I understood the letter as a response to Item 1 of the Request alone. Along with the letter, ICE released 1,666 pages of records responsive to the Request but withheld 1,653 of those pages in full, claiming FOIA exemptions.

15.     During a call on December 21, 2017, Defendants' counsel informed me of ICE's position that the Knight Institute had failed to exhaust its administrative remedies with respect to ICE's September 29, 2017 response. That same day, out of an abundance of caution, I submitted an administrative appeal requesting review of ICE's response to Item 1 of the Request, on the view that ICE had responded only as to that Item.

16.     In ICE's December 28, 2017 letter to the Court indicating its intent to pursue a motion to dismiss, ICE characterized its September 29, 2017 response as a final response to the entire Request. Based on that characterization, I amended the Knight Institute's administrative appeal by letter dated January 5, 2018, to request review of ICE's response to the entire Request.

17.     Rather than litigate a motion to dismiss ICE from the action, in the interest of conserving the Court's resources and our own, the Knight Institute decided to negotiate a stipulation of voluntary dismissal without prejudice of ICE with Defendants' counsel and to pursue its administrative appeal instead. The parties filed the stipulation of voluntary dismissal on January 11, 2018, and the Court dismissed ICE from the action without prejudice on January 16, 2018.

18.     During the January 25, 2018 call on which the parties negotiated significant modifications to the Request as whole, Defendants' counsel stated that she would confirm whether ICE was processing the Knight Institute's administrative appeal as of the date of dismissal. I therefore understood that Defendants' counsel continued to represent ICE with respect to its

handling of the Request and believed that she would inform ICE of the ways in which we had provisionally agreed to narrow the Request.

19.     On February 6, 2018, I received ICE's response to the Knight Institute's amended administrative appeal, in which ICE denied our challenge to the withholdings in its September 29, 2017 response but agreed to conduct a new or modified search, remanding the Request to ICE's FOIA Office for further processing and retasking.

20.     Also on February 6, 2018, during my call with Ms. Graham, the Samuelson Clinic students, and Defendants' counsel, Defendants' counsel informed us that ICE had already remanded the appeal to the FOIA Office, completed its new search, and located approximately 14,068 pages of potentially responsive records. Defendants' counsel further informed us that ICE had begun to process the records and scheduled an initial production for March 7, 2017, and that ICE proposed to process the records at a rate of 500 pages per month and make productions on the seventh day of each month thereafter. Defendants' counsel explained that 500 pages per month was ICE's standard processing rate for requests in litigation.

21.     On February 13, 2018, I received an email from ICE confirming that it had located approximately 14,000 pages of potentially responsive documents, and that it would commit to processing at least 500 pages per month. ICE indicated that the first production would be made on March 7, 2018, with subsequent productions on the seventh day of each month thereafter.

22.     By letter dated March 7, 2018, ICE informed me that it had processed 560 pages of records and referred 87 of those pages to other agencies. Along with the letter, ICE released 463 pages, redacting certain pages and withholding others in their entirety on the basis of FOIA exemptions 5, 6, 7(C), and 7(E).

23.     With the consent of ICE and the other Defendants, the Knight Institute filed an

amended complaint on March 14, 2018, in which it challenged the timeliness and comprehensiveness of ICE's response to the Request.

24.     On April 11, 2018, Ms. Graham and I spoke with Defendants' counsel to discuss the possibility of modifying the scope of the Request in order to expedite ICE's processing. Defendants' counsel explained that ICE had conducted its new search based on the original Request, not the Request as modified on the January 25, 2018 call. I responded that the Knight Institute would provisionally agree to accept ICE's response to the modified Request, or to narrow the scope of the potentially responsive records it had already located on an Item-by-Item basis. According to Defendants' counsel, however, ICE cannot determine the number of pages that are responsive to each Item of the Request, so it would not be possible to narrow or prioritize the records on those terms. Instead, ICE could narrow or prioritize the records based only on the date they were created or the agency component in which they were located. Defendants' counsel provided the following breakdown of the potentially responsive records by creation date:

- Records created on or after January 1, 2010 totaled 11,713 pages;

- Records created on or after January 1, 2014 totaled 11,334 pages; and

- Records created on or after January 1, 2016, totaled 10,814 pages.

Defendants' counsel also provided the following breakdown of potentially responsive records by component:

- Records located in the Office of the Principal Legal Advisor ("OPLA") totaled 9,576 pages;

- Records located in the Enforcement and Removal Office totaled 182 pages;

- Records located in the Front Office totaled 43 pages; and

- Records located in the Office of Policy totaled 16 pages.

25.    Because the Knight Institute would have sought the most recent records and the records located in OPLA as a matter of priority, there appeared no way to reduce substantially the volume of potentially responsive records ICE would have to process. Furthermore, my co-counsel and I lack the information necessary to determine whether records of particular interest to the Knight Institute and the public as a whole may be located in other agency components. Given ICE's inability to narrow or prioritize the records on a substantive, Item-by-Item basis, and the volume of records ICE would have to process in any event, we did not agree to narrow the scope of potentially responsive records ICE had located through its new search.

26.    By letter dated April 30, 2018, ICE informed me that it had processed an additional 1,124 pages for release and referred 728 of those pages to other agencies. Along with the letter, ICE released 395 pages, redacting certain of those pages and withholding others in their entirety on the basis of FOIA exemptions 5, 6, 7(C) and 7(E).

27.    Based on ICE's March and April release letters, I understand that ICE had processed 1,684 pages by April 30, 2018, and referred 858 of those pages to other unidentified agencies. By my calculation, if ICE were to process the remaining 12,384 pages of potentially responsive records at a rate of 750 pages per month, it would not complete its processing for over sixteen months, or until mid-September 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed: May 4, 2018

Carrie DeCell
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500