**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY,

        Plaintiff,

        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. CUSTOMS AND BORDER
PROTECTION, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES, U.S. DEPARTMENT OF JUSTICE,
and U.S. DEPARTMENT OF STATE et al.

        Defendants.

17 Civ. 7572 (ALC)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AND DEPARTMENT OF JUSTICE OFFICE OF LEGAL COUNSEL FOR PARTIAL SUMMARY JUDGMENT, AND THE MOTION OF THE UNITED STATES DEPARTMENT OF STATE FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Telephone:  (212) 637-2743
Facsimile:  (212) 637-2730

ELLEN BLAIN
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………1

BACKGROUND………………………………………………………………………..2

    A.    The FOIA Request and Subsequent Narrowing………………………………..2

    B.    The Agencies' Responses……………………………………………………4

        1.    ICE……………………………….…………………………………..4

        2.    OLC…………………………………………………………………..6

        3.    The State Department…………………………………………………..8

ARGUMENT - THE GOVERNMENT IS ENTITLED TO SUMMARY JUDGMENT……....9

I.    ICE AND OLC ADEQUATELY SEARCHED FOR RESPONSIVE RECORDS…......9

    A.    The Law of Adequate Search………………………….…………………...…9

    B.    The Agencies Conducted Adequate Searches…………………….…………...10

        1.    ICE………………………………………………….……………10

        2.    OLC……………………………………………………………………11

II.    THE STATE DEPARTMENT PROPERLY WITHHELD RECORDS PURSUANT TO FOIA'S EXEMPTIONS …..…………………………………………………...12

    A.    The State Department Properly Withheld Records Pursuant to Exemption 1…...13

        1.    Legal Standard……………………………………………….……..13

        2.    Application……………………………………………………………15

    B.    The State Department Properly Withheld Records Pursuant to Exemption 3…...19

        1.    Legal Standard……………………………………………...……20

        2.    Application………………………………………….…..…...…..20

    C.    The State Department Properly Withheld Records Pursuant to Exemption 5…...22

        1.    Deliberative Process Privilege…………………………..……23

        2.    Attorney-Client Privilege………………………….……….25

        3.    Work Product Privilege……………………….…………….26

         4.        Presidential Communications Privilege…………………………………28

D.       The State Department Properly Withheld Records
         Pursuant to Exemption 7(E)…………………………………………………..30

E.       State Produced Any Reasonably Segregable Portions of the Challenged
         Records……………………………………………………………………………..32

CONCLUSION………………………………………………………………………………….33

Cases

*A. Michael's Piano, Inc. v. FTC*,
    18 F.3d 138 (2d Cir. 1994) ........................................................................................... 27

*ACLU v. Dep't of Justice*,
    681 F.3d 61 (2d Cir. 2012) ........................................................................................... 14

*ACLU v. DoD*,
    628 F.3d 612 (D.C. Cir. 2011) ..................................................................................... 14

*ACLU v. DoD*,
    901 F.3d 125 (2d Cir. 2018) .................................................................................. 13, 20

*ACLU v. U.S. Dep't of Justice*,
    252 F. Supp. 3d 217 (S.D.N.Y. 2017) ......................................................................... 27

*Adamowicz v. I.R.S.*,
    552 F. Supp. 2d 355 (S.D.N.Y. 2008) ........................................................................... 9

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*,
    626 F.3d 678 (2d Cir. 2010) .................................................................................. 30, 32

*Amnesty Int'l v. CIA*,
    728 F. Supp. 2d ................................................................................................... 19, 28

*Assadi v. U.S. Dep't of State*,
    No. 12 Civ. 1111 (LLS), 2014 WL 4704840 (S.D.N.Y. Sept. 22, 2014) ................................. 13

*Assoc. Press v. U.S. Dep't of Justice*,
    549 F.3d 62 (2d Cir. 2008) ........................................................................................... 13

*Carney v. U.S. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994) .............................................................................. 10, 12, 13

*CIA v. Sims*,
    471 U.S. 159 (1985) ............................................................................................. 15, 21

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ......................................................................................................... 12

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ............................................................................... passim

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991) ....................................................................... 22, 23-24, 25

*In re County of Erie*,
   473 F.3d 413 (2d Cir. 2007) ............................................................................. 25, 26

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ......................................................................... 28, 29

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ................................................................................................ 12

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
   365 F.3d 1108 (D.C. Cir. 2004) ...................................................................... 28, 29

*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993) ......................................................................... 20, 22

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) .................................................................... 14-15, 20

*Lead Industries Ass'n, Inc. v. OSHA*,
   610 F.2d 70 (2d Cir. 1979) ................................................................................... 32

*Long v. Office of Pers. Mgmt.*,
   692 F.3d 185 (2d Cir. 2012) ................................................................................... 9

*Loving v. DOD*,
   496 F. Supp. 2d 101 (D.D.C. 2007) ..................................................................... 23

*Maynard v. C.I.A.*,
   986 F.2d 547 (1st Cir. 1993) ................................................................................ 10

*Medina-Hincapie v. Dep't of State*,
   700 F.2d 737 (D.C. Cir. 1983) .............................................................................. 21

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) ................................................................ 14, 19, 20

*Murphy v. Exec. Office for U.S. Attorneys*,
   789 F.3d 204 (D.C. Cir. 2015) .......................................................... 19, 20, 21, 22

*Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*,
   844 F.3d 246 (D.C. Cir. 2016) .............................................................................. 27

*Nat'l Council of La Raza v. Dep't of Justice*,
   411 F.3d 350 (2d Cir. 2005) ........................................................................... 25

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
   402 F. Supp. 2d 211 (D.D.C. 2005) ............................................................... 32

*New York Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ........................................................ 9, 14

*Nixon v. Adm'r of Gen. Servs.*,
   433 U.S. 425 (1977) ....................................................................................... 28

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ........................................................................... 23, 24, 26

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ........................................................................ 11

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ...................................................................... 10

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ....................................................................................... 22

*Schrecker v. U.S. Dep't of Justice*,
   217 F. Supp. 2d 29 (D.D.C. 2002) ................................................................ 12

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ...................................................................... 25

*Tigue v. DOJ*,
   312 F.3d 70 (2d Cir. 2002) ................................................................. 22, 23, 26

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ........................................................................ 27

*United States v. Nixon*,
   418 U.S. 683 (1974) ....................................................................................... 28

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) ................................................................. 13, 14, 19

Statutes

5 U.S.C. § 552.................................................................................................... passim

8 U.S.C. § 1202(f)................................................................................................ 20, 21

8 U.S.C. §§ 1225(c) ................................................................................................... 2

50 U.S.C. § 3024(i) .............................................................................................. 20, 21

Fed. R. Civ. P. 26(b)(3)(A) ....................................................................................... 27

Fed. R. Civ. P. 56(a) ................................................................................................... 9

## PRELIMINARY STATEMENT

Defendants the United States Immigration and Customs Enforcement ("ICE") and Department of Justice Office of Legal Counsel ("OLC") respectfully submit this memorandum of law in support of their motion for partial summary judgment, and the Department of State ("the State Department" or "State") (collectively, the "agencies" or the "government"), respectfully submits this memorandum of law in support of its motion for summary judgment, in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

In their FOIA request, Plaintiff the Knight First Amendment Institute at Columbia University ("plaintiff") seeks information from a multitude of agencies and components concerning the exclusion or removal of individuals from the United States based on their speech, beliefs or associations.  Specifically, plaintiff seeks records from ICE, OLC, and State, as well as United States Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), Department of Homeland Security ("DHS"), and Department of Justice Office of Public Affairs ("OPA") and Office of Information Policy ("OIP").  With the exception of DHS, which is undertaking a supplemental search, these agencies and components have completed their searches for records responsive to the request, and collectively have produced over three thousand pages of documents to plaintiff, properly withholding certain records in part or in full.[1]

In this motion, the government addresses plaintiff's challenges to the searches conducted by ICE and OLC, and the withholding determinations made by the State Department.[2]  As

---

[1] The government's motion on consent for an enlargement of the page limit, from twenty-five to thirty-five pages, for this memorandum is currently *sub judice*.  Should the Court deny the government's request, the government respectfully requests the opportunity to submit a revised, memorandum forthwith.

[2] In the motion to be submitted on March 15, 2019, the government will address plaintiff's challenges to the withholding determinations made by ICE and USCIS.  Plaintiff does not challenge the adequacy of: (1) the search conducted by CBP (CBP did not withhold any records or information); (2) the search

demonstrated by their respective declarations, ICE and OLC conducted reasonable and diligent

searches, searching multiple offices, components and locations reasonably likely to have records

responsive to plaintiff's FOIA request, entitling these agencies to partial summary judgment.  In

addition, State has logically and plausibly justified its withholding of certain documents in full or

in part pursuant to FOIA Exemptions 1, 3, 5 and/or 7(E), and thus is entitled to summary

judgment dismissing State from this action.

## BACKGROUND

**A.      The FOIA Request and Subsequent Narrowing**

On August 7, 2017, plaintiff submitted identical FOIA requests to each defendant

agency or component, seeking six categories of records:

- **Item 1:**  All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States.
- **Item 2:** All memoranda written since May 11, 2005, concerning the legal implications of excluding or removing individuals from the United States based on their speech, beliefs, or associations.
- **Item 3:**  All legal or policy memoranda written since May 11, 2005, concerning the endorse or espouse provisions[3] or the foreign policy provision of the Immigration and Nationality Act as it relates to "beliefs, statements or associations."[4]

---

conducted by or withholding determinations made by OIP and OPA; (3) the searches conducted by USCIS and State; or (4) the Exemption 6 withholding determinations made by State.

[3] 8 U.S.C. §§ 1182(a)(3)(B)(i)(VII), 1182(a)(3)(B)(i)(IV)(bb) (providing that an alien who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity" or who is a representative of "a political, social, or other group that endorses or espouses terrorist activity" is inadmissible); *see also* 8 U.S.C. §§ 1225(c), 1227(a)(4)(B), 1158(b)(2)(A)(v) (providing for removal of various classes of aliens on these grounds and refugees otherwise qualified for asylum on similar grounds).

[4] 8 U.S.C. § 1182(a)(3)(C)(iii) (providing that an "alien whose entry or proposed activities in the United States . . . would have potentially serious adverse foreign policy consequences" is inadmissible, even if the determination of inadmissibility is based on "beliefs, statements or associations [that] would be lawful within the United States"); *see also* 8 U.S.C. §§ 1225(c)(1), 1227(a)(4)(C) (providing for expedited removal and removal on the same grounds).

- **Item 4:**  All records created since May 11, 2005, containing policies, procedures, or guidance regarding the application or waiver of the endorse or espouse provisions or the foreign policy provision as it relates to "beliefs, statements or associations."
- **Item 5:**  All Foreign Affairs Manual sections (current and former, since May 11, 2005) relating to the endorse or espouse provisions or the foreign policy provision as it relates to "beliefs, statements or associations," as well as records discussing, interpreting, or providing guidance regarding such sections.
- **Item 6:** All records created since May 11, 2005, concerning the application, waiver, or contemplated application or waiver of the endorse or espouse provisions, or of the foreign policy provision as it relates to "beliefs, statements or associations," to exclude or remove individuals from the United States. This item of the Request enumerated five non-exhaustive categories of information sought, including statistical data or reports on the application, waiver, or contemplated application or waiver of those provisions, and notifications or reports from the Secretary of Homeland Security or Secretary of State concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii).

Dkt. No. 1, Exh. A.  After plaintiff commenced this action on October 4, 2017, plaintiff agreed to

narrow the request as follows:

- **For Item 1:** Search only OLC systems for the records sought.
- **For Items 2-5:** Limit searches to final policy memoranda and equivalent records that have been created since May, 11, 2005, and represent final guidance.
- **For Item 5:** Search only State systems for the records created since May 11, 2005.
- **For Item 6:** Limit searches to the records sought in Item 6(a), statistical data and reports on the application, waiver, or contemplated application or waiver of the endorse or espouse and foreign policy provisions that have been created since January 19, 2012; and Item 6(e), notifications or reports from the Secretary of Homeland Security or Secretary of State, created since May 11, 2005, concerning waivers of the endorse or espouse provision pursuant to 8 U.S.C. § 1182(d)(3)(B)(ii). For Item 6(e), the parties agreed the government could initially search only DHS and State systems for the records sought.

*See* Dkt. No. 48 at ¶ 2 (the "Narrowed Request").

B.      **The Agencies' Responses**

1.      **ICE**

As described in the Declaration of Toni Fuentes, Deputy Director of ICE's FOIA Office,
each program office within ICE has a designated point of contact ("POC") who is the primary
person responsible for communications with the ICE FOIA Office.  Declaration of Toni Fuentes,
dated February 26, 2019 ("Fuentes Decl."), ¶ 12.  The POC is a person with detailed knowledge
about the operations of his or her particular program office.  *Id*.  Once the ICE FOIA Office
determines the appropriate program offices for a given request, it provides the POCs within each
of those program offices with a copy of the FOIA request and instructs them to conduct a search
for responsive records.  *Id.*  The POCs then review the FOIA request along with any case-
specific instructions that may have been provided by the ICE FOIA Office, and, based on the
POCs' experience and knowledge of their program offices' practices and activities, forward the
request and instructions to individual employee(s) or component office(s) within the program
office that they believe are reasonably likely to have responsive records, if any.  *Id.*

Here, ICE searched for documents responsive to plaintiff's original, non-narrowed FOIA
request.  *See* Dkt. No. 48 at ¶ C(g).  The ICE FOIA Office determined that searches should be
conducted by ICE's Enforcement and Removal Operations (ERO),[5] Office of the Principal Legal

---

[5] "ERO enforces the nation's immigration laws.  ERO identifies and apprehends removable aliens, detains
these individuals when necessary, and removes illegal aliens from the United States. . . .  ERO comprises
seven headquarters divisions and 24 Field Offices, and more than of 7,600 employees."  Fuentes Decl.
¶ 29.

Advisor (OPLA),[6] Office of Policy (Policy),[7] and Office of the Director.[8]  Fuentes Decl. ¶ 9.

Those components conducted the following searches:

- ERO:  a POC in ERO determined searches for potentially responsive records should be conducted at ERO's Executive Associate Director (EAD) level.  ERO's Deputy EAD received the FOIA request and reviewed its substance, and, based on his experience and knowledge of ERO's practices and activities, determined that his correspondence was likely to contain responsive documents because, during the relevant time frame, he represented ERO leadership in correspondence with other agencies and components.  The Deputy EAD's assistant searched the Deputy's government computer (including personal and shared network drives) and Outlook e-mail account on November 14, 2017, using the following search terms: "Removal policies," "Removal terrorist," "Executive Order," "13780," "WH.gov," "Removal speech," "Removal belief," and "Removal association." The assistant located responsive records, which were provided to ICE FOIA.

- OPLA:  a POC in OPLA directed the following components to search for responsive records – (1) Immigration Law and Practice Division (ILPD), (2) National Security Law Section (NSLS) and Enforcement and Removal Operations Law Division (EROLD), (3) Field Legal Operations (FLO), and (4) Deputy Principal Legal Advisor (DPLA).  Within ILPD, the division searched for responsive records; specifically, ILPD attorneys and staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts, using electronic search terms, a manual search, or both.  Some of the searches located potentially responsive records, which were provided to ICE FOIA in November 2017.  Within NSLS, the division also searched for responsive records; specifically, NSLS staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts.  Some located responsive records, which were provided to ICE FOIA.  Within EROLD, the Acting Chief and a deputy chief of EROLD responded to the FOIA office stating that EROLD is not likely to have any documents responsive to the FOIA request.  Within FLO, the Special Counsel searched her government computer (including personal and shared drives) and Outlook e-mail account, using the

---

[6] "OPLA provides a full range of legal counsel and services to all ICE offices and programs.  OPLA's primary responsibilities include, inter alia, representing the Department in all exclusion, deportation, and removal proceedings[.]"  *Id.* ¶ 18.

[7] "The ICE Office of Policy executes strategic policy initiatives on behalf of ICE leadership that advance ICE's priorities, including projects that require coordination with DHS headquarters and interagency partners; identifies, develops, drafts, and communicates agency priorities and policies; and oversees the ICE regulatory process."  *Id.* ¶ 25.

[8] "The Office of the Director is in charge of managing ICE's day-to-day operations, approximately 20,000 personnel assigned to more than 400 domestic and international offices, and a budget of almost $6 billion."  *Id.* ¶ 27.

following search terms: "Association," Foreign Affairs Manual," "Gang Association," "Foreign Policy Provision," "Beliefs," "Speech," "Memorandum," "waiver," "White House," and "ICE Policy." The documents found to be responsive were provided to ICE FOIA on December 6, 2017. Finally, within DPLA, Special Counsel to the DPLA searched the DPLA's government computer (including personal and shared drives) and Outlook e-mail account, using the following search terms: "endorse," espouse," and "eop.gov." The documents found to be responsive were provided to ICE FOIA on January 5, 2018.

- Policy: a POC directed a Policy Analyst to search for potentially responsive documents. The Policy analyst conducted a search on the ICE Policy Manual Database, as well as her government computer (including personal and shared drives), using the following search terms: "speech," "beliefs," "determinations," "endorse," "espouse," "exclude," and "remove." The Policy Analyst also searched Outlook as well as the shared network drive using the search terms "speech," "beliefs," and "White House." The Policy Analyst did not locate any responsive records.

- ICE Office of the Director: a Policy Analyst searched the ICE Director's government computer, including the Director's personal and shared drives, and Outlook e-mail account, using the following search terms: "Exclude," "Remove," "Speech," "Beliefs," "Associations," "Endorse Provision," "Espouse Provision," "Foreign Policy Provision," "Waiver," and "Application." The documents found to be responsive were provided to ICE FOIA on November 30, 2017.

*Id.* ¶¶ 17-30.

After ICE began producing records on a rolling basis that were responsive to plaintiff's original FOIA request, *see* Dkt. No. 48 at ¶ C(g), ICE re-reviewed the collected documents to identify materials responsive to the Narrowed Request, *see* Dkt. No. 64. As a result of that re-review, ICE determined that 99 pages of documents were responsive to the Narrowed Request; ICE released 50 pages in whole or in part on July 3, 2018, and referred 49 pages to other agencies, which were released on whole or in part on August 3, 2018. *See* Dkt. No. 77; *see also* Fuentes Decl. ¶¶ 9-11.

### 2.   OLC

As described in the Declaration of Paul P. Colborn, Special Counsel in OLC, OLC searched for records responsive to the Narrowed Request. *See* Declaration of Paul P. Colborn,

dated February 26, 2019 ("Colborn Decl.").  Specifically, OLC maintains records in paper files

of individual OLC employees; in an electronic central storage system containing all final,

unclassified work product; and in computer accounts of individual employees.  Colborn Decl.

¶ 8.  Here, OLC searched for responsive records, first, in the electronic central storage system by

using a search engine entitled Perceptive Workgroup Search ("Perceptive"), which performs key

word searches of final work product files.  *Id.*  ¶¶ 9-10.  Perceptive searches the full text of

documents (rather than just headings or subject lines) and captures simple variations on search

terms without the need for wildcards or expanders.  *Id.* ¶ 8.  OLC used the following search

terms in Perceptive: Endorse w/3 espouse; "potentially serious adverse foreign policy"; (beliefs

OR statements OR associations) w/5 "would be lawful"; 8 w/3 1182; 8 w/3 1158; 8 w/3 1225;

and ("first amendment" OR speech OR belief OR association) w/10 (immigrat* OR exclu* OR

remov*).  OLC reviewed the results of those searches for responsiveness.  *Id.* ¶ 10.   In addition,

OLC's FOIA staff "consulted with subject matter experts to determine whether any responsive

classified documents existed, and determined that none did."  *Id.*

     In response to Item 1 of the Narrowed Request, OLC also consulted with subject matter

experts to identify possible custodians of email communications, and determined that one

custodian was the most likely contact for potentially responsive documents.  *Id*. ¶ 11.   OLC

FOIA staff searched that custodian's email account and electronic files with variations of the

same terms above, plus other potentially relevant terms, and reviewed the results for

responsiveness.  *Id.*  Moreover, after receiving the one document referred from the Department

of State, OLC FOIA staff "revisited the search of Perceptive to ensure that nothing had been

missed."  *Id.* ¶ 12.

On May 30, 2018, and July 16, 2018, OLC notified plaintiff that it had identified 128 pages of responsive records, plus one record that was referred to OLC from State, and OLC determined to withhold all of those records in full pursuant to FOIA Exemption 5.  *Id.* ¶¶ 6-7.

### 3.    The State Department

As described in the Declaration of Eric F. Stein, Director of the Office of Information and Services ("IPS") at the State Department, IPS determined that the following offices or records systems were reasonably likely to have documents responsive to plaintiff's request: the Bureau of Consular Affairs, the Office of the Legal Adviser, the Executive Secretariat, and the Bureau of Administration.  Declaration of Eric F. Stein, dated February 26, 2019 ("Stein Decl.") at ¶¶ 8-10. Each of those offices, and multiple components within those offices, then searched for responsive records within electronic files, classified file share sites, unclassified shared drives, email records, and paper files.  *Id.* at ¶¶ 11-28.  Plaintiff does not challenge the adequacy of State's search.

As a result of the search, State determined that 243 documents, totaling 1,719 pages, were responsive to the Narrowed Request.  *Id*.  On June 28, 2018, State released 90 documents in full and 126 documents in part; withheld 16 documents in full; and referred 11 documents to other agencies.  *Id*.  Of the 232 non-referred documents, State determined that 142 documents are exempt from disclosure in whole or in part pursuant to Exemptions 1, 3, 5, 6 and/or 7(E).  *Id.*, Exhibits 1 ("Vaughn Index") and 4.  Of the 11 referred documents, DHS determined that seven documents are exempt from disclosure pursuant to Exemption 5; DOJ determined that one document could be released in full and two are exempt from disclosure pursuant to Exemption 5; and the State Department withheld one document in full on behalf of another agency pursuant to Exemptions 1 and 3.  *Id.*, Exhibit 7.

## ARGUMENT

## THE AGENCIES ARE ENTITLED TO SUMMARY JUDGMENT

FOIA disputes are generally resolved by summary judgment. *See, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden."  *Carney*, 19 F.3d at 812 (footnote omitted).[9]  In this case, ICE and OLC have met their burden of establishing the reasonableness of their searches, and State has met its burden of establishing the propriety of its claimed exemptions.

## I.      ICE AND OLC ADEQUATELY SEARCHED FOR RESPONSIVE RECORDS

### A.      The Law of Adequate Search

The government does not have a heavy burden in defending the searches it performed; it need only show "'that its search was adequate.'"  *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812).  A search is judged by the efforts the government undertook, not by its results: the agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant."  *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).  The search "need not be perfect, but rather need only be reasonable."  *Grand Cent. P'ship*, 166 F.3d at 489.

---

[9] The government has not submitted a Local Rule 56.1 statement because "[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required."  *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

The government's declarations are accorded a presumption of good faith, and the court may award summary judgment on the declarations alone.  *Carney*, 19 F.3d at 812; *see also Grand Cent. P'ship*, 166 F.3d at 489.  The declaration need not "set forth with meticulous documentation the details of an epic search."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith."  *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812-13 ("purely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption).

**B.      ICE and OLC Conducted Adequate Searches**

**1.      ICE**

As detailed in the Fuentes Declaration, ICE's search easily meets this standard.  ICE reasonably identified four components within the agency that were likely to have records responsive to plaintiff's FOIA request – ERO, OPLA, Policy and the Office of the Director – because those components, *inter alia*, provide legal counsel, execute strategy, and oversee operations concerning the exclusion or removal of individuals, the heart of plaintiff's FOIA request.  *See* Fuentes Decl. ¶¶ 16-30.   OPLA, in turn, directed five additional offices or divisions to search for responsive records:  ILPD, NSLS, EROLD, FLO and DPLA.  *See id.* ¶¶ 18-24.  In each of offices or divisions, a POC determined the locations likely to contain responsive documents; attorneys (ILPD, NSLS, EROLD), senior staff members (EROLD, FLO, DPLA, ERO), and in some cases the entire division (ILPD and NSLS) then conducted the searches.  *See id.*  The searches included government computers, such as personal and shared drives, and/or Outlook emails, and were performed either manually or by using search terms reflecting the

"endorse or espouse" or "foreign policy provisions" of the INA identified by plaintiff, or both. *See id.*; *see also supra* Background A.  Six of the nine components located responsive documents.  *See* Fuentes Decl. ¶¶ 21-26.

These facts demonstrate that ICE reasonably identified multiple offices within the agency likely to possess responsive records, conducted searches of those offices' electronic files in a manner that was reasonably calculated to discover responsive records, and located 99 pages of records responsive to the Narrowed Request.  ICE therefore conducted an adequate search.  *See Grand Cent. P'ship*, 166 F.3d at 489; *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

### 2.   OLC

As detailed in the Colborn Declaration, OLC conducted a careful, thorough search that was designed to return records responsive to the Narrowed Request.  OLC began by searching the central storage system containing "all final unclassified written legal advice," which, in light of the fact that "OLC attorneys use this database to perform internal research," is kept "as complete as possible."  Colborn Decl. ¶¶ 8, 10.  OLC performed this search by employing key words in the Perceptive search engine, which searches not only file names and headings but also text internal to the documents.  *See id.*  The keywords were reasonably formulated to return responsive documents because they reflect the "endorse or espouse" or "foreign policy provisions" of the INA identified by plaintiff.  *See id.*  Further, because "part 1 of the request also sought email communications, limited to communications after January 19, 2017, OLC's FOIA staff also spoke with subject matter experts within OLC to identify possible custodians" and determined one custodian was "the point of contact for potentially responsive

communications over that short time period." *Id.* ¶ 11.   OLC FOIA staff then searched that

custodian's email account and electronic files.  *See id.*

  Not only did OLC conduct a search of the database reasonably likely to contain

documents responsive to requests numbers 2-4, as well as the emails reasonably likely to contain

documents responsive to request number 1, but also, after receiving one document from the State

Department, OLC staff "revisited the search of Perceptive to ensure that nothing had been

missed," *id.* ¶ 12 – thus further ensuring that its search was adequate.  And finally, OLC

examined whether classified information existed and determined that none did.  *Id.* ¶ 10.

  These facts demonstrate that OLC's search was "reasonably calculated to discover"

responsive documents.  *Grand Cent. P'ship*, 166 F.3d at 489; *see Schrecker v. U.S. Dep't of

Justice*, 217 F. Supp. 2d 29, 34-35 (D.D.C. 2002) (upholding search as reasonable where "the

agency reasonably chose to search the most likely place responsive documents would be

located"), *aff'd,* 349 F.3d 657 (D.C. Cir. 2003).  OLC therefore conducted an adequate search.

## II.   THE STATE DEPARTMENT PROPERLY WITHHELD RECORDS PURSUANT TO FOIA'S EXEMPTIONS

  The State Department's declaration and accompanying Vaughn index logically and

plausibly justify the claimed exemptions—specifically, Exemptions 1, 3, 5 and 7(E).[10]

  "Upon request, FOIA mandates disclosure of records held by a federal agency, unless the

documents fall within enumerated exemptions."  *Dep't of the Interior v. Klamath Water Users*

*Protective Ass'n*, 532 U.S. 1, 7 (2001) (citations omitted).  While FOIA is intended to promote

government transparency, the FOIA exemptions are "intended to have meaningful reach and

application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  FOIA thus

---

[10] Because Plaintiff does not challenge the withholdings pursuant to Exemption 6, this memorandum will
address only Exemptions 1, 3, 5 and 7(E).

balances "the public's right to know and the government's legitimate interest in keeping certain information confidential." *Id.*; *see also Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008).

As with an agency's search for records, the factual basis for an agency's withholdings is typically put forward in declarations by agency personnel, and the court will decide questions about exemptions on motions for summary judgment. *See, e.g.*, *Carney*, 19 F.3d at 812; *Assadi v. U.S. Dep't of State*, No. 12 Civ. 1111 (LLS), 2014 WL 4704840, at *2 (S.D.N.Y. Sept. 22, 2014). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (footnote omitted). An agency's declaration in support of its withholding determinations is "accorded a presumption of good faith." *Id.* (quotation marks omitted), and the agency's justification for invoking a FOIA exemption is sufficient if it appears logical and plausible, *ACLU v. DoD*, 901 F.3d 125, 133 (2d Cir. 2018), as amended (Aug. 22, 2018); *see also Wilner v. NSA*, 592 F.3d 60, 69-73 (2d Cir. 2009) (citation and internal quotation marks omitted).

### A.    The State Department Properly Withheld Records Pursuant to Exemption 1

The State Department's declaration and Vaughn index logically and plausibly justify the withholding in full or in part of 87 documents, identified below, pursuant FOIA Exemption 1.

### 1.    Legal Standard

Exemption 1 protects from public disclosure matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current standard for classification is set forth in

Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).  Section 1.1 of the Executive Order

lists four requirements for the classification of national security information: (1) an "original

classification authority" must classify the information; (2) the information must be "owned by,

produced by or for, or [ ] under the control of the United States Government;" (3) the

information must fall within one or more of the eight protected categories of information listed

in section 1.4 of the E.O.; and (4) an original classification authority must "determine[] that

the unauthorized disclosure of the information reasonably could be expected to result in

damage to the national security" and be "able to identify or describe the damage."  E.O. 13526

§ 1.1(a)(1)-(4).

          The government's burden under Exemption 1 "is a light one."  *ACLU v. DoD*, 628 F.3d

612, 624 (D.C. Cir. 2011); *accord Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("little

proof or explanation is required beyond a plausible assertion that information is properly

classified"); *N.Y. Times*, 872 F. Supp. 2d at 315.  Decades of precedent firmly establish that

the judiciary must defer to the Executive's predictions of national security harm that may

attend public disclosure of classified records so long as such predictions appear logical and

plausible.  Deference is mandated because, as the courts have recognized, predictions of

national security harm are inherently speculative, and only the agencies with expertise in the

area are in a position to make such judgments.  *See, e.g.*, *Wilner*, 592 F.3d at 76 ("it is bad law

and bad policy to second-guess the predictive judgments made by the government's

intelligence agencies" regarding whether disclosure of information "would pose a threat to

national security" (quotation marks omitted)); *ACLU v. Dep't of Justice*, 681 F.3d 61, 71 (2d

Cir. 2012) ("[W]e have consistently deferred to executive affidavits predicting harm to the

national security, and have found it unwise to undertake searching judicial review."); *Larson*

*v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("[t]he judiciary is in an extremely poor

position to second-guess the predictive judgments made by the government's intelligence

agencies" (quotation marks omitted)); *see also CIA v. Sims*, 471 U.S. 159, 179 (1985)

(intelligence officials must "be familiar with 'the whole picture' as judges are not," and their

decisions "are worthy of great deference given the magnitude of the national security interests

and potential risks at stake").

### 2.      Application

The State Department's declaration and Vaughn index amply demonstrate that its

assertions of Exemption 1 are logical and plausible.   At the threshold, the declaration and

Vaughn index establish that (1) an original classification authority has determined that the

information at issue is currently and properly classified at the Secret or Confidential level, *see*

Stein Decl. ¶¶ 1, 31; (2) the information is under the control of the government, *see id.* ¶ 33; and

(3) the withheld information falls within one or more of the categories described in E.O.

13526 section 1.4, *see id*. ¶¶ 29-40.  Specifically, State withheld 17 documents pursuant to

Section 1.4(b) because they pertain to foreign government information,[11] 6 documents

pursuant to Section 1.4(c) because they pertain to intelligence activities, sources or methods,[12]

50 documents pursuant to Section 1.4(d) because they pertain to foreign relations or foreign

activities of the United States,[13] and 3 documents pursuant to Section 1.4(e) because they

---

[11] Documents C06567882, C06568896, C06569424, C06595510, C06595525, C06569247, C06567810,
C06567867, C06567859, C06567793, C06569118, C06569125, C06569320, C06569414, C06569321,
C06568890, and C06595539.

[12] Documents C06569277, C06595564, C06595542, C06595547, C06569125, and C06569414.

[13] Documents C06567737, C06567796, C06567882, C06568375, C06568456, C06568890, C06568896,
C06569459, C06567771, C06569424, C06595510, C06569455, C06569419, C06568355, C06595528,
C06595505, C06569415, C06595525, C06569231, C06569243, C06569247, C06569279, C06569281,
C06569277, C06595500, C06567810, C06595498, C06567867, C06567859, C06567793, C06595539,
C06595501, C06595494, C06568895, C06595564, C06595542, C06595547, C06569118, C06569125,
C06595502, C06569320, C06569414, C06569321, C06569318, C06568365, C06568948, C06569423,

15

pertain to scientific, technological or economic matters.[14]  *See generally* Vaughn Index.  For each of these categories, an Original Classification Authority has identified and described the damage to national security that could reasonably be expected to flow from disclosure.

**Section 1.4(b):**  The government has properly withheld foreign government information.  *See* E.O. 13526 § 1.4(b); Stein Decl. ¶¶ 34-36; Vaughn Index; *see also* E.O. 13526 § 6.1(s) ("foreign government information" includes "information provided to the United States Government by a foreign government or governments . . . with the expectation that the information, the source of the information, or both, are to be held in confidence").  These records consist of, *inter alia*, Implementation Guidelines for Visa Restrictions, a List of Names Proposed for Visa Restrictions, Action Memoranda Imposing or Lifting Visa Restrictions on Various Countries, and an Action Memorandum concerning the Kosovo Liberation Army.

These documents contain, for example, "foreign government information about the reason for the proposed visa restrictions that was provided to the United States in the expectation of confidence."  Vaughn Index pp. 6-7 (Implementation Guidelines for Visa Restrictions (C06567882, C06568890, C06568896)).  Similarly, in an Action Memorandum concerning Syria, which "approved the Department's support for DHS granting an exemption to the Kosovo Liberation Army from the Immigration and Nationality Act's terrorism-related provisions," State withheld in full the second attachment (C06569118), entitled "Policy Justification for Exemption of Certain Aliens Affiliated with the Kosovo Liberation Army (KLA)," because it "contains foreign government information that was provided to the United States in the expectation of confidence," as well as "a frank assessment of the policies of this

---

C06569454, C06567734, and C06569453.
[14] Documents C06595564, C06595542, and C06595547.

organization which, if revealed, would damage or impair foreign relations and national security." Vaughn Index pp. 17-18. The "fact that certain actions were being considered could negatively affect the foreign policy environment, not only in the countries most involved, but also in others that consider themselves similarly placed." *Id.* It is thus logical to predict that disclosure of such information could damage the United States' relations with foreign entities, who may discount future assurances that information will be kept confidential—thus adversely affecting the United States' information-sharing capabilities. *See* Stein Decl. ¶ 36; *see also* E.O. 13526 § 1.1(d) ("The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.").

**Section 1.4(c):** The State Department has also properly withheld information pertaining to intelligence activities, sources or methods. *See* E.O. 13526 § 1.4(c); Stein Decl. ¶ 37. The six documents withheld in part or in full pursuant to Section 1.4(c) consist of three Action Memoranda concerning an Inadmissibility Determination for Venezuelan Nationals, a Waiver of Possible Visa Ineligibility of [Redacted], and an Action Memorandum concerning the Kosovo Liberation Army. For example, in the Action Memoranda concerning "inadmissibility determinations for three Venezuelan nationals" (C06595564, C06595542, C06595547), State withheld information that "involve[s] a discussion of the acts of corruption allegedly committed by the individuals in question." Vaughn Index pp. 16-17. Because "[r]eleasing this information would reveal the sources and methods by which the United States collects intelligence," it is logical and plausible that "[d]isclosure of this information could enable foreign governments or persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources or methods and to undertake countermeasures that could frustrate the ability of the U.S. Government to acquire information necessary to the formulation and

implementation of U.S. foreign policy."  Stein Decl. ¶ 37.  Accordingly, it is logical and plausible that such disclosure "reasonably could be expected to result in damage to the national security."  *Id.*

**Section 1.4(d):**  The State Department has also properly withheld information pertaining to the foreign relations or foreign activities of the United States.  E.O. 13526 § 1.4(d); Stein Decl. ¶¶ 38-39.  The documents in this category include, for example, an Action Memorandum Making Visa Policy concerning Syria, a Syria Information Memorandum, a Fiji Action Memorandum, and a Waiver of Possible Visa Ineligibility of [Redacted].  Twelve documents[15] provide "implementation guidelines for the visa restrictions approved in the Action Memoranda," and the withheld information would reveal the "fact that these specific individuals or countries were considered for sanctions, and the reason for those sanctions." Vaughn Index pp. 6-7.  Similarly, State withheld information from a package of materials addressing "an interagency proposal to exempt (from the INA's terrorism-related inadmissibility grounds) some groups that were and/or are considered Tier III undesignated terrorist organizations," because it contains a "frank discussion of the foreign policy considerations of these proposed exemptions to Tier III status."  Vaughn Index p. 14.[16]  The information at issue here "concerns both confidential sources and sensitive aspects of U.S. foreign relations, including, in particular, issues relating to identifying potential threats to U.S. national security."  Stein Decl. ¶ 39.  Again, it is logical and plausible to conclude that release of such information would "inject friction into, or cause damage to, a number of our bilateral

---

[15] Documents C06567882, C06568890, C06568896, C06567737, C06567796, C06568365, C06568375, C06568456, C06568948, C06569423, C06569454, and C06569459.
[16] The Immigration and Nationality Act defines Tier III terrorist organizations as "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in," terrorist activity.  8 U.S.C. § 1182(a)(3)(B)(vi)(III).

relationships with countries whose cooperation is important to U.S. national security." *Id.*

**Section 1.4(e):**  The State Department also properly withheld information pertaining to scientific, technological or economic matters.  *See* E.O. 13526 § 1.4(e); Stein Decl. ¶ 40.  The three documents withheld in part pursuant to Section 1.4(e) are three Memoranda concerning the Inadmissibility Determinations for Venezuelan Nationals.[17]  The Memoranda "involve a discussion of the acts of corruption allegedly committed by the individuals in question," and "the withheld description of corruption shows the methods by which certain types of sanctions are decided, which is an economic matter related to national security."  Vaughn Index p. 17.  It is in the "interest of national defense or foreign policy" not to disclose such information.  Stein Decl. ¶ 40.

 For each of the classified records withheld in full or in part under Exemption 1, the State Department makes "plausible assertion[s] that information" in these records "is properly classified," *Morley*, 508 F.3d at 1124, and thus the information is properly withheld under Exemption 1, particularly given the "substantial weight" owed to agency affidavits regarding national security matters.  *See, e.g., Wilner*, 592 F.3d at 73; *Amnesty Int'l v. CIA*, 728 F. Supp. 2d at 508 ("defering to [] executive declarations predicting harm to the national security").

### B.    The State Department Properly Withheld Records Pursuant to Exemption 3

The State Department also properly withheld in full or in part 15 documents, identified below, pursuant to FOIA Exemption 3, which "permits an agency to withhold records that are 'specifically exempted from disclosure by statute.'"  *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)).  Here, the relevant exemption

---

[17] Documents C06595564, C06595542, and C06595547.

statutes are Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f), and the National Security Act of 1947, 50 U.S.C. § 3024(i)(A).

### 1.   Legal Standard

The government's "basis for invoking Exemption 3 need only be 'logical [and] plausible.'" *Murphy*, 789 F.3d at 211 (quoting *Larson*, 565 F.3d at 862); *see also ACLU*, 901 F.3d at 133.  In contrast to other exemptions, the applicability of Exemption 3 depends "less on the detailed factual contents of specific documents" than on "the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (internal quotation marks omitted).  Thus, a court should "not closely scrutinize the contents of a withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute." *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).  Moreover, the government need not show that disclosure would cause any harm to national security or foreign relations, only that the withheld information falls within the purview of the exemption statute.  *See Larson*, 565 F.3d at 868.

### 2.   Application

**Section 222(f):**  State withheld 14 documents in full or in part pursuant to Section 222(f) of the INA.[18]  Section 222(f) states in pertinent part:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that - (1) in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court[.]

---

[18] Documents C06569424, C06595510, C06568355, C06569453, C06595528, C06595505, C06567730, C06595500, C06595564, C06595542, C06595547, C06569320, C06569414, and C06567771.

8 U.S.C. § 1202(f).  "Every court which has considered the issue has concluded that section 222(f) qualifies as an Exemption 3 statute." *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983) (citing cases).

As explained in the Stein Declaration and accompanying Vaughn index, the 14 documents withheld in full or in part pursuant to Section 222(f) consist of, *inter alia*, a List of Names Proposed for Visa Restrictions, Action Memoranda regarding Imposing or Lifting Visa Restrictions on Various Countries, an Inadmissibility Determination for Venezuelan Nationals, and a Waiver of Possible Visa Ineligibility of [Redacted].  *See generally* Vaughn Index.  This information self-evidently "pertain[s] to the issuance or refusal of visas or permits to the United States."  8 U.S.C. § 1202(f).  For example, "[i]n the tabs that list individuals" within the List of Names Proposed for Visa Restrictions" (C06567771), State withheld information about "individuals holding valid or expired U.S. visas" because such information includes "indications that individuals currently hold a visa, information about the type of visa, the visa number, and the visa's expiration date."  Vaughn Index p. 23.  Accordingly, this information "falls within [the relevant] statute," *Krikorian*, 984 F.2d at 465, and State's "basis for invoking exemption 3 [is] 'logical [and] plausible,'" *Murphy*, 789 F.3d at 211 (citation omitted).

**National Security Act:**  State withheld one document in full, a letter from another agency head to then-Secretary of State Hillary Clinton (C06569277), pursuant to the National Security Act of 1947, 50 U.S.C. § 3024(i)(1).  Section 3024(i)(1) provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  Like Section 222(f) of the INA, this also "qualifies as a withholding statute under Exemption 3."  *Sims*, 471 U.S. at 167 (examining precursor statute, 50 U.S.C. § 403(d)(3)).

State withheld this document in full in order "to protect intelligence sources and methods, including locations of sensitive facilities, intelligence targets and interests, and dissemination controls."  Vaughn Index pp. 14-15.  Accordingly, this information "falls within [the relevant] statute," *Krikorian*, 984 F.2d at 465, and State's "basis for invoking exemption 3 [is] 'logical [and] plausible,'" *Murphy*, 789 F.3d at 211 (citation omitted); *see also* Stein Decl. ¶ 43 (noting that this document contains "classified information pertaining to intelligence activities, sources and methods").

### C.    The State Department Properly Withheld Records Pursuant to Exemption 5

State has also withheld in full or in part 26 documents, identified below, pursuant to FOIA exemption 5, which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 "incorporate[s] into the FOIA all the normal civil discovery privileges," *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991), thus exempting from disclosure agency documents "which would not be obtainable by a private litigant in an action against the agency under normal discovery rules," *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (quotation marks omitted).  Here, the applicable privileges are deliberative process privilege ("DPP"), attorney-client privilege ("ACP"), attorney work product privilege ("WPP"), and presidential communications privilege ("PCP").[19]  All of the documents

---

[19] State withheld information in the following documents pursuant to the DPP: C06534021, C06567845. C06568577, C06569081, C06569136, C06569151, C06569164, C06569179, C06569199, C06569216, C06569220, C06569223, C06569226, C06569231, C06569243, C06569247, C06569277, C06569279, C06569281, C06569343, C06569347, C06569347, C06569349, C06569352, C06569415, C06570336, C06595525; pursuant to the ACP: C06534021, C06568577, C06569247, C06569281, C06569349, C06569352, C06570336; pursuant to the WPP: C06534021; and pursuant to the PCP: CO6534021, C06568577, C06569343, C06569347, C06569349, C06569352.  Certain documents are protected from disclosure pursuant to multiple privileges.

22

withheld under Exemption 5 are inter- or intra-agency documents that have not been disseminated outside of the executive branch.  Stein Decl. ¶¶ 44-49.

### 1.    Deliberative Process Privilege

In enacting Exemption 5, "[o]ne privilege that Congress specifically had in mind was the 'deliberative process' or 'executive' privilege, which protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins*, 929 F.2d at 84.  An agency record must satisfy two criteria to qualify for the deliberative process privilege:  it "must be both 'predecisional' and 'deliberative.'"  *Grand Central P'ship*, 166 F.3d at 482 (citations omitted).

A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision."  *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (*quoted in Tigue*, 312 F.3d at 80).  While a document is pre-decisional if it "precedes, in temporal sequence, the 'decision' to which it relates," *Grand Central*, 166 F.3d at 482, the government need not "identify a specific decision" made by the agency to establish the pre-decisional nature of a particular record, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975).  Rather, so long as the document "was prepared to assist [agency] decisionmaking on a specific issue," it is pre-decisional.  *Tigue*, 312 F.3d at 80.

"A document is 'deliberative' when it is actually . . . related to the process by which policies are formulated."  *Grand Central*, 166 F.3d at 482 (citation omitted).  Courts inquire as to whether it "formed an important, if not essential, link in [the agency's] consultative process," whether it reflects the opinions of the author rather than the policy of the agency, and whether it might "reflect inaccurately upon or prematurely disclose the views of [the agency]."  *Id.* at 483.  Pre-decisional, deliberative documents include "documents 'reflecting advisory opinions,

23

recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Hopkins*, 929 F.2d at 84–85 (quoting *Sears*, 421 U.S. at 150).

Here, State properly withheld 26 documents pursuant to deliberative process privilege.[20] For example, State withheld in part an Action Memorandum, dated February 22, 2011 (C06569352), concerning "Travel Sanctions against Persons Who Participate in Serious Human Rights Violations and other Abuses."  "Senior presidential advisors solicited this memorandum to advise the President on whether to exercise authority to bar entry into the United States to aliens who participate in serious human rights violations."  Vaughn Index pp. 9-10.  The Action Memorandum is pre-decisional and deliberative because it contains "the authors' preliminary thoughts and ideas regarding what policy to pursue with respect to barring entry to the United States[.]"  *Id.*  Similarly, State withheld information in a "Syria Information Memorandum" and cover page, dated July 22, 2013 (CO6569415, C06595525), concerning "a policy that was considered with respect to Syria that relates to visa restrictions."  Vaughn Index p. 13.  The withheld information is pre-decisional and deliberative because it concerns a "proposed course of action" (though ultimately not adopted) and contains "the authors' preliminary thoughts and ideas regarding what to do and why[.]"  *Id.*

Disclosure of such "material containing the details of internal discussions held in the course of formulating a policy could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between Department officials," and "severely hamper the ability of responsible Department officials to formulate and carry out executive branch programs."  Stein Decl. ¶ 46.  This information reflects "advisory opinions, recommendations

---

[20] *See supra* n.19.

and deliberations comprising part of a process by which governmental decisions and policies are

formulated," and accordingly was properly withheld pursuant to Exemption 5 and the

deliberative process privilege. *Hopkins*, 929 F.2d at 84–85 (internal quotation marks and citation

omitted).

### 2.   Attorney-Client Privilege

Exemption 5 also encompasses the attorney-client privilege. *See, e.g.*, *Nat'l Council of

La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). The purpose of the attorney-client

privilege "is to encourage attorneys and their clients to communicate fully and frankly and

thereby to promote broader public interests in the observance of law and administration of

justice." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (internal quotation marks

omitted). "In the governmental context, the 'client' may be the agency and the attorney may be

an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). Indeed, "the

traditional rationale for the [attorney-client] privilege applies with special force in the

government context. It is crucial that government officials, who are expected to uphold and

execute the law . . . be encouraged to seek out and receive fully informed legal advice." *County

of Erie*, 473 F.3d at 419 (first alteration in original). To invoke the attorney-client privilege, a

party must demonstrate that there was: "(1) a communication between client and counsel that (2)

was intended to be and was in fact kept confidential, and (3) was made for the purpose of

obtaining or providing legal advice." *Id.*

Here, State properly withheld portions of seven documents pursuant to the attorney-client

privilege.[21] For example, State withheld in full a legal memorandum (C06569349) assessing

legally available options relating to barring "entry to the United States to aliens who participate

---

[21] *See supra* n.19.

in serious human rights violations." Vaughn Index pp. 9-10. The "withheld portions reflect confidential communications between an attorney and a client relating to a legal matter for which the client had sought professional advice," and the communications "reflect facts provided by the client in the expectation of confidence and for the purpose of receiving legal advice. Releasing the legal advice that reflects facts provided by a client undermines the attorney-client relationship." *Id.* Similarly, State withheld portions of a memorandum providing "Legislative Options" (C06569281) concerning "an interagency proposal to exempt (from the INA's terrorism-related inadmissibility grounds) some groups that were and/or are considered Tier III undesignated terrorist organizations." Vaughn Index pp. 14-15. The withheld "communication is a confidential memorandum containing legal advice written by attorneys for their client, the Secretary of State," and the "advice reflects the facts provided to those attorneys and disclosure would chill the attorney-client relationship, making clients less likely to provide full and detailed information to their counsel." *Id.* p. 15.

The Stein Declaration and Vaughn Index logically and plausibly demonstrate that all of the information withheld pursuant to the ACP constitutes "communications between client[s] and counsel" that were "intended to be and [were] in fact kept confidential," and were "made for the purpose of obtaining or providing legal advice." *County of Erie*, 473 F.3d at 419. State thus properly withheld such information pursuant to Exemption 5.

### 3. Work Product Privilege

Exemption 5 also incorporates the work product doctrine. *See Sears,* 421 U.S. at 154-55; *Tigue*, 312 F.3d at 76. That doctrine protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative," as well as "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation." Fed. R. Civ. P. 26(b)(3)(A), (B); *accord A. Michael's Piano, Inc. v. FTC*, 18 F.3d

138, 146 (2d Cir. 1994).  Without such protection, an entity would have to choose between

"scrimp[ing] on candor and completeness" or disclosing its "assessment of its strengths and

weaknesses . . . to litigation adversaries." *United States v. Adlman*, 134 F.3d 1194, 1200 (2d Cir.

1998).

Here, State properly withheld portions of one document (C06534021) pursuant to the

work product privilege.[22]  The document is a Legal Memorandum entitled "Inadmissibility

Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns," that was

"solicited by senior presidential advisors to use in the context of a high-level, inter-agency

meeting involving lawyers, discussing visa policy," and "contains a legal analysis of the First

Amendment and some proposed courses of actions."  Vaughn Index pp. 8-9.  The withheld

information contains "legal advice written by attorneys for their client, the U.S. executive

branch," and was "prepared by those attorneys in anticipation of litigation," as it "discusses both

ongoing litigation and the likelihood of future litigation."  *Id.*  Accordingly, this memorandum

was prepared by an attorney for a client in anticipation of litigation, and thus State properly

applied the work product privilege to withhold the information under Exemption 5.  *See, e.g.*,

*ACLU v. U.S. Dep't of Justice*, 252 F. Supp. 3d 217, 226 (S.D.N.Y. 2017) (finding that

memoranda and emails prepared by government attorneys discussing Foreign Sovereign

Immunities Act notice provisions in anticipation of litigation qualified as work product); *see also*

*Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*,

844 F.3d 246, 254 (D.C. Cir. 2016).

---

[22] The document was withheld in full also pursuant to the deliberative process, attorney-client, and presidential communications privileges.  *See* Vaughn Index at 18.

### 4.    Presidential Communications Privilege

Exemption 5 further exempts from disclosure information protected by the presidential

communications privilege.  *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108,

1113 (D.C. Cir. 2004).  The Supreme Court has recognized a "presumptive privilege for

Presidential communications" that is "fundamental to the operation of Government and

inextricably rooted in the separation of powers under the Constitution."  *United States v. Nixon*,

418 U.S. 683, 708 (1974) ("*Nixon I*").  The presidential communications privilege protects

"communications in performance of a President's responsibilities, . . . of his office, . . . and made

in the process of shaping policies and making decisions."  *Nixon v. Adm'r of Gen. Servs.*, 433

U.S. 425, 449 (1977) (citation and quotation marks omitted) ("*Nixon II*").  "A President and

those who assist him must be free to explore alternatives in the process of shaping policies and

making decisions and to do so in a way many would be unwilling to express except

privately."  *Nixon I*, 418 U.S. at 708.

The presidential communications privilege provides broad protection for communications

with the President and communications involving senior presidential advisors.  It "applies to

documents in their entirety, and covers final and post-decisional materials as well as pre-

deliberative ones."  *Judicial Watch*, 365 F.3d at 1114 (citation and quotation marks omitted); *see

also In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) ("Even though the presidential

privilege is based on the need to preserve the President's access to candid advice, none of the

cases suggest that it encompasses only the deliberative or advice portions of documents.").  This

includes closely-held presidential directives and decisional documents.  *In re Sealed Case*, 121

F.3d at 745-46; *Amnesty*, 728 F. Supp. 2d at 522.  Further, in addition to protecting

communications directly with the President, the privilege protects communications involving

senior presidential advisors, including "both [] communications which these advisors solicited and received from others as well as those they authored themselves," in order to ensure that such advisors investigate issues and provide appropriate advice to the President.  *In re Sealed Case*, 121 F.3d at 752.[23]

Here, State properly withheld in full or in part six documents pursuant to the presidential communications privilege.[24]  For example, State withheld in full a draft of Presidential Proclamation 8697 (C06569343) "that was attached to an Action Memorandum about a waiver of possible visa ineligibility."[25]  Vaughn Index pp. 7-8.  The "withheld communication was authored by the White House and circulated to senior agency officials for their advice," and its disclosure "would reveal the process by which the President receives national security advice from close advisors, and would reveal information about the advice itself."  *Id.*  Similarly, State withheld in full a Legal Memorandum (C06569349) and Draft Procedures for Implementation (C06569347) concerning "Travel Sanctions against Persons Who Participate in Serious Human Rights Violations and other Abuses."  *Id.* pp. 9-10.  "Senior Presidential advisors solicited this memorandum to advise the President on whether to exercise authority to bar entry into the United States to aliens who participate in serious human rights violations."  *Id.*; *see also* Stein Decl. ¶ 49.  Accordingly, State properly withheld such information pursuant to Exemption 5 and the presidential communications privilege.  *See Judicial Watch*, 365 F.3d at 1114; *In re Sealed Case*, 121 F.3d at 745-46.

---

[23] In the FOIA context, the presidential communications privilege need not be invoked by the President himself, but may be asserted by the agency withholding the records in question.  *See, e.g., Loving v. DOD*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007), *aff'd*, 550 F.3d 32 (D.C. Cir. 2008).

[24] *See supra* n.18.

[25] Presidential Proclamation 8697, issued by then-President Barack Obama on August 4, 2011, concerns "Suspension of Entry as Immigrants and Nonimmigrants of Persons Who Participate in Serious Human Rights and Humanitarian Law Violations and Other Abuses." https://www.govinfo.gov/content/pkg/STATUTE-125/pdf/STATUTE-125-Pg2056.pdf.

## D.     The State Department Properly Withheld Records Pursuant to Exemption 7(E)

Finally, the State Department properly withheld information pursuant to Exemption 7, which exempts from disclosure "records or information compiled for law enforcement purposes" that fall within one or more of the exemption's withholding categories.  5 U.S.C. § 552(b)(7). Specifically, Exemption 7(E) protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations[.]"  5 U.S.C. § 552(b)(7)(E).  Such techniques and procedures are categorically exempt from disclosure, without any need for inquiry into the harm that would result from their disclosure.  *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010).

Here, the State Department properly withheld information contained in 39 documents pursuant to Exemption 7(E):  versions of the relevant sections of the Foreign Affairs Manual, Volume 9,[26] a diplomatic cable regarding the African National Congress,[27] Implementation Guidelines for Visa Restrictions,[28] Draft Procedures for Implementing Travel Sanctions[29], Action Memoranda regarding Making Visa Policy concerning Syria,[30] and Action Memoranda approving imposing or lifting of visa restrictions on certain individuals.[31]  This information was compiled for law enforcement purposes, *see, e.g.,* Stein Decl. ¶¶ 51-52 (noting, *inter alia*,

---

[26] Documents C06533909, C06533920, C06533941, C06533947, C06533951, C06533970, C06534007, C06571131, C06533937, C06567707, C06567710, and C06571135.
[27] Document C06568888.
[28] Documents C06567720, C06567737, C06567766, C06567796, C06567882. C06567904, C06567915, C06568365, C06568375, C06568456, C06568890, C06568896, C06568902, C06568905, C06568918, C06568937, C06568940, C06568948, C06569423, C06569454, C06569459, C06569478, C06570384, and C06570543.
[29] Document C06569347.
[30] Documents C06567735, C06568882, C06569457, and C06569422.
[31] Document C06567810 and C06568895.

that it would "reveal[] sensitive law enforcement techniques and procedures related to

enforcement of the Immigration and Nationality Act," as the State "routinely uses non-public

law enforcement databases to support its core duties of enforcing the U.S. immigration laws"),

and would disclose law enforcement investigation techniques, procedures, and guidelines.  For

example, the Foreign Affairs Manual documents "establish[] procedures for providing visa

services to foreign nationals who wish to enter the United States.  These processes involve

interpretation and application of immigration laws and regulations, including the Immigration

and Naturalization Act, and also involve cooperation with other law enforcement agencies

such as the Department of Homeland Security."  Vaughn Index p. 1.  Among other things, the

Foreign Affairs Manuals "identify the situations that trigger the process of checking for

terrorism-related ineligibilities and techniques used during that process to determine whether

an individual is ineligible to receive visas because of their involvement with terrorist

activities," *id.*; "provide[] information about how to assess whether to exempt an applicant

associated with the Kosovo Liberation Army," *id.* p. 2; "list[] credible sources of evidence that

may be used in recommending a finding, including sources that are not public knowledge," *id.*;

and provide "guidelines for when a certain type of investigation is required," *id.* p. 2.

Likewise, information contained in the Implementation Guidelines for Visa Restrictions

"detail[] how to process visa restrictions," and "contain techniques used to identify individuals

whose names need to be added to the lookout system, procedures for adding those individuals

to the system, procedures for performing security investigations into those individuals, and

guidelines for how to apply the restrictions to a particular type of visa."  *Id.* p. 6; *see also* Stein

Decl. ¶¶ 50-55.

       Furthermore, although not necessary for purposes of establishing the applicability of the

exemption to law enforcement techniques and procedures, *see Allard K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 681, disclosure of this information "could reasonably be expected to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States," Vaughn Index pp. 3-6, 10, 13, 16.  Accordingly, State properly withheld this information pursuant to Exemption 7(E).

### E.     State Produced Any Reasonably Segregable Portions of the Challenged Records

Finally, the Stein Declaration establishes that State complied with FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  This provision does not require disclosure of records in which the non-exempt information that remains is without value or would be meaningless.  *See, e.g.*, *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words"); *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979) (Friendly, J.) (disclosure not required where all that remains is "a few nuggets of non-intertwined, 'reasonably segregable'" information).  Here, State reviewed the withheld material and disclosed all non-exempt information that reasonably could be segregated and disclosed.  *See* Stein Decl. ¶ 56.

**CONCLUSION**

For the reasons given above, ICE and OLC's motion for partial summary judgment, and

the State Department's motion for summary judgment, should be granted.

Dated: February 26, 2019
       New York, New York

                      Respectfully submitted,

                      GEOFFREY S. BERMAN
                      United States Attorney

        By:    */s/ Ellen Blain*
                ELLEN BLAIN
                Assistant United States Attorney
                86 Chambers Street, Third Floor
                New York, New York 10007
                Telephone: (212) 637-2743
                Facsimile: (212) 637-2730
                E-mail: ellen.blain@usdoj.gov