IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Defendants. | Civil Action No. 1:17-CV-07572-ALC |

**SUPPLEMENTAL DECLARATION OF TONI FUENTES
IN SUPPORT OF THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   INTRODUCTION**

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.   I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018, and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA positions over the past 20 years, including: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department

of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

2. The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. The ICE FOIA Office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

3. My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. The ICE FOIA Office is responsible for the receipt, processing, and response to all FOIA and Privacy Act requests received at ICE. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA request dated August 7, 2017, that the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Plaintiff") submitted to ICE, which is the subject of this litigation.

4. I make this declaration in my official capacity in support of ICE's motion for partial summary judgment in the above-captioned action. The statements contained in this declaration

are based upon my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5. I submit this supplemental declaration to further explain the searches that certain offices within ICE conducted: specifically, ILPD, NSLS, EROLD, the Office of Policy, and ERO. The abbreviations used herein are the same as those identified in my prior declaration.

## II. HISTORY OF ICE'S SEARCHES AND PRODUCTIONS

### A. Plaintiff Submits the FOIA Request and ICE Searches for Responsive Records

6. On or about August 7, 2017, plaintiff submitted a FOIA request to ICE, and on August 23, 2017, the ICE FOIA Office acknowledged receipt. After reviewing the FOIA request, the ICE FOIA office tasked OPLA and Policy to search for responsive records. OPLA then further directed OLPA component DPLA to search for responsive records.

7. Policy: After receipt of the FOIA request from the ICE FOIA Office, a FOIA POC in Policy reviewed the request and, based on her experience and knowledge of her office's practices and activities, tasked a Policy Analyst to search for potentially responsive documentation. The Policy Analyst conducted a search on the ICE Policy Manual Database, as well as her government computer (including personal and shared drives), using the following search terms: "speech," "beliefs," "determinations," "endorse," "espouse," "exclude," and "remove." The Policy Analyst also searched Outlook as well as the shared network drive using the search terms "speech," "beliefs," and "White House." The Policy Analyst did not locate any responsive records.

8. DPLA: While OPLA directed DPLA to search for responsive documents, DPLA did not do so until January 2018, as described below.

9. After conducting a review of the potentially responsive records, and applying appropriate FOIA exemptions, on September 29, 2017, ICE produced 1,666 pages of records to plaintiff.

### B. Plaintiff Files Suit and Dismisses ICE from the Action, and ICE Conducts Additional Searches

10. Instead of filing an administrative appeal challenging FOIA's response, plaintiff, on October 4, 2017, filed the instant complaint in the United States District Court for the Southern District of New York. ICE reviewed the agency's response as outlined above and determined that additional searches should be conducted.

11. Acknowledging that it had not exhausted its administrative remedies before filing suit, plaintiff, on January 5, 2018, administratively appealed ICE's response. On January 11, 2018, the parties filed a stipulation of voluntary dismissal without prejudice as to ICE, which was so-ordered on January 16, 2018. *See* Dkt. Nos. 30-31.

12. On February 6, 2018, ICE responded to plaintiff's appeal, explaining that it had concluded that the agency should conduct new or modified searches. *See* Dkt. No. [42 at ¶ 31].

13. Anticipating that it would conduct additional searches, ICE began conducting those additional searches in October 2017. Specifically, ICE conducted an additional search for responsive records in the following offices: ILPD, NSLS, EROLD, ERO, FLO, and the Office of the Director. ICE also re-tasked DPLA to search for responsive documents.

14. ILPD: Between October and November 2017, ILPD tasked the entire division to search for responsive records. Consistent with ICE's practice, and as was the case here, when a plaintiff does not suggest search terms, the ICE FOIA Office suggests search terms and individual employees then use their knowledge and experience to choose among the suggested terms and to determine if there are other search terms which would be helpful. ILPD attorneys and staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts, using the following electronic search terms: "endorse," "espouse," "espouses," "speech," "beliefs," and/or "association." Some of these searches located responsive records, which were provided to ICE FOIA in November 2017.

15. NSLS: In October 2017, NSLS tasked the entire division to search for responsive records. Consistent with ICE's practice, and as was the case here, when a plaintiff does not suggest search terms, the ICE FOIA Office suggests search terms and individual employees then use their knowledge and experience to choose among the suggested terms and to determine if there are other search terms which would be helpful. NSLS staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts, using the following electronic search terms: "endorse," "espouse," "foreign policy," "212(a)(3)(B)(i)(VII)," "212(a)(3)(C)," and/or "200715919." Some of these searches located responsive records, which were provided to ICE FOIA.

16. EROLD: In October 2017, two supervising attorneys for EROLD were also directed to search for responsive records by conducting similar searches to the other components. EROLD provides comprehensive legal advice and operational guidance to agency personnel. The supervising attorneys concluded that if EROLD were involved in the subjects requested by the

FOIA request, they would have been the individuals involved. They further determined that they had had no interaction with anything related to policies, procedures, or guidance related to the exclusion or removal of individuals based on their "beliefs, statements or associations." Therefore, the attorneys concluded that a search in their division would not be reasonably calculated to uncover any relevant documents.

17. ERO: After receipt of the FOIA request from the ICE FOIA Office, an ERO FOIA POC received and reviewed the request and, based on the contact's knowledge of the program offices' activities within ERO, the POC determined that the searches for potentially responsive records should be conducted at ERO's Executive Associate Director's (EAD) level. ERO's Deputy EAD of ERO's practices and activities, determined that his correspondence was likely to contain responsive documents because, during the relevant time frame, he represented ERO leadership in correspondence with other agencies and components. The Deputy EAD's assistant searched the Deputy's government computer (including personal and shared network drive) and Outlook e-mail account on November 14, 2017, using the following search terms: "Removal policies," "Removal terrorist," "Executive Order," "13780," "WH.gov," "Removal speech," "Removal belief," and "Removal association." The assistant located responsive records, which were provided to ICE FOIA.

18. Office of the Director: After receipt of the FOIA request from the ICE FOIA Office, a Policy analyst was tasked to search for potentially responsive records. The analyst searched the ICE Director's government computer, including the Director's personal and shared drives, and Outlook e-mail account, using the following search terms: "Exclude," "Remove," "Speech," "Beliefs," "Associations," "Endorse Provision," "Espouse Provision," "Foreign Policy

Provision," "Waiver," and "Application." The documents found to be responsive were provided to ICE FOIA on November 30, 2017.

19. DPLA: Special Counsel to the DPLA conducted the searches on January 5, 2018, by searching the DPLA's government computer (including personal and shared drives) and Outlook e-mail account, using the following search terms: "endorse," espouse," and "eop.gov." The documents found to be responsive were provided to ICE FOIA on January 5, 2018.

20. .FLO: the Special Counsel conducted searches on November 13 and 14, 2017. The Special Counsel searched her government computer (including personal and shared drives) and Outlook e-mail account, using the following search terms: "Association," Foreign Affairs Manual," "Gang Association," "Foreign Policy Provision," "Beliefs," "Speech," "Memorandum," "waiver," "White House," and "ICE Policy." The documents found to be responsive were provided to ICE FOIA on December 6, 2017.

21. These searches conducted by ILPD, NSLS, EROLD, ERO, FLO, the Office of the Director, and DPLA resulted in the collection of approximately 14,000 pages of potentially responsive documents (including those documents previously located by Policy). On February 13, 2018, ICE offered to process and produce at least 500 pages per month, with a first production on March 7, 2018. *See* Dkt. No 54, Exhibit 9. Accordingly, on March 7, 2018, ICE responded to plaintiff, indicating that it had processed 560 pages of records, of which it referred 87 to other agencies and released 463 pages in part or in full. *See id.*, Exhibit 10. On April 30, 2018, ICE informed plaintiff that it had processed an additional 1,124 pages of records, of which it released 395 pages in full or in part and referred 728 pages to other agencies.

22. Nevertheless, plaintiff filed an Amended Complaint in this action, adding ICE as a defendant. *See* Dkt. No. 42.

### C. ICE Re-Reviews Collected Records Per Narrowed Request

23. After plaintiff filed the Amended Complaint, plaintiff agreed to narrow the FOIA Request, seeking only final policy guidance or memoranda while excluding all draft policies and memoranda, court filings and opinions, and email correspondence.

24. As a result, the Government Information Law Division ("GILD") manually reviewed the remaining pages that had been collected, looking for final policy memoranda or guidance, thus removing emails, the vast majority of the collected documents. This "narrowing" of records resulted in a corruption of the electronic files within the database containing the records; as a result, ICE requested plaintiff to provide CDs of the produced documents for comparison purposes when drafting the Vaughn indices. GILD determined that 99 pages were responsive to the narrowed request. On July 3, 2018, ICE produced in full or in part 50 pages, and referred 49 pages to DHS and USCIS. On August 3, 2018, DHS and USCIS responded to plaintiff, withholding those pages in full.

25. In total, ICE produced 1,666 pages of documents before plaintiff filed the instant suit, and produced or referred approximately 1,783 pages after suit was filed.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this ___3rd___ day of May, 2019.

_____
Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009