UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF STATE,<br><br>Defendants. | No. 1:17-cv-07572-ALC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUMMARY JUDGMENT**

Carrie DeCell (CD-0731)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Adi Kamdar (*pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

*Counsel for Plaintiff*

Megan Graham (*pro hac vice*)
Catherine Crump (CC-4067)
Samuelson Law, Technology & Public Policy
  Clinic
U.C. Berkeley School of Law
354 Boalt Hall
Berkeley, CA 94720-7200
mgraham@clinical.law.berkeley.edu
(510) 664-4381

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................. 1

    I.     The searches conducted by ICE and OLC were inadequate. ...................................... 1

           A.     ICE ....................................................................................................................... 2

           B.     OLC ..................................................................................................................... 5

    II.    DOS's withholdings from responsive records are unjustified. ................................... 6

           A.     DOS's withholdings under Exemption 5 are unjustified. ................................. 6

                1.     DOS has failed to establish that the records at issue do not constitute the agency's working law. ................................................... 7

                2.     DOS has failed to establish that the work product privilege applies to the "First Amendment Concerns" memo. ........................... 8

           B.     DOS's withholdings under FOIA Exemption 7(E) are unjustified. ................. 9

           C.     DOS's withholdings likely contain segregable information. ......................... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393 (S.D.N.Y. 2017) ......................................9

*Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012) ............................7

*Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) .................2

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987).......................................................10

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012)..................................................................................................1, 4

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)....................................................................7

*SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ..................................................4

*State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002) ...........................................8

*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002)........................................................................9

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ...............................................................8


**Statutes**

5 U.S.C. § 552 ..................................................................................................................4, 5, 9, 10

8 U.S.C. § 1182................................................................................................................................9

Plaintiff the Knight First Amendment Institute at Columbia University (the "Knight Institute" or "Institute") respectfully submits this reply memorandum of law in further support of its cross-motion for partial summary judgment against Defendants Immigration and Customs Enforcement ("ICE") and the Department of Justice's Office of Legal Counsel ("OLC"), and for summary judgment against Defendant the Department of State ("DOS"). *See* Pl.'s Cross-Mot. for Partial Summ. J. & Summ. J., ECF No. 100; Pl.'s Mem. in Supp. of Cross-Mot. for Partial Summ. J. & Summ. J. ("Pl.'s Cross-Mot. Br."), ECF No. 101.

## PRELIMINARY STATEMENT

The Knight Institute brought this Freedom of Information Act ("FOIA") lawsuit to ensure the timely release of records that relate to pressing national debates over the purpose and scope of the Trump Administration's "extreme vetting" policies, yet Defendants have failed to adequately search for and produce those records. Indeed, Defendants now reveal that they never intended to search for the bulk of the records requested in the first item of the Knight Institute's FOIA request (the "Request"), Am. Compl. Ex. B, ECF No. 42-2, relying on a purported misunderstanding of their own proposal to streamline the defendant agencies' searches. Meanwhile, ICE and DOS have submitted supplemental declarations in an effort to justify their search for and withholding of responsive records, respectively, but these declarations fail to carry the agencies' burdens.

## ARGUMENT

**I.    The searches conducted by ICE and OLC were inadequate.**

An agency must "show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (citation omitted).

1

Neither ICE's nor OLC's searches were adequate, as explained in the Knight Institute's opening brief, and the agencies' counterarguments are unavailing.

    **A.**    **ICE**

In its opening brief, the Knight Institute explained that ICE's search was inadequate for four reasons, including the lack of detail in ICE's declaration and the inadequacy of its search terms. *See* Pl.'s Cross-Motion Br. 11–13. Though ICE's supplemental declaration provides more detail about the agency's search, it does not establish that ICE's search was adequate, and it is inconsistent with ICE's previous positions.[1]

*First*, ICE still has not adequately explained the steps it took to conduct a new search upon remand from the Knight Institute's administrative appeal. In response to the Institute's opening brief, ICE concedes that it never ran a search after the February 2018 remand—instead arguing that it conducted additional searches beginning in October 2017 out of "[a]nticipat[ion]," and that these searches were adequate. Defs.' Mem. in Further Supp. of ICE & OLC Mot. for Partial Summ. J. & DOS Mot. for Summ. J. ("Defs.' Opp'n Br.") 2–5, ECF No. 90. ICE does not explain the discrepancy with its February 6, 2018 administrative appeal letter, which stated that, "upon review of the administrative record, ICE has determined that new search(s) or modifications to the existing search(s), could be made," and that ICE was "therefore remanding [the] appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents." Am. Compl. Ex. F, ECF No. 42-6; *see also id.* Ex. G, ECF No. 42-7 (Feb. 13, 2018

---

[1] In its December 2017 pre-motion to dismiss letter, *see* ICE Pre-Mot. Ltr., ECF No. 28, ICE contended that its September 29, 2017 letter was a final determination—signifying that all responsive records had been identified, gathered, and reviewed. *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Now, ICE admits that one component tasked with a search shortly after ICE acknowledged receipt of the Request did not conduct a search until January 2018, *see* Suppl. Decl. of Toni Fuentes ¶ 8, ECF No. 113, casting serious doubt on ICE's contention that the September 29, 2017 letter was a final determination.

2

response email). ICE cannot defend post-remand searches that it never conducted, particularly not on the basis of searches it conducted before the appeal was filed. *See id.* Ex. D, ECF No. 42-4 (Dec. 21, 2017 appeal); *id.* Ex. E, ECF No. 42-5 (Jan. 5, 2018 amended appeal).

*Second*, ICE's explanation of its re-review process raises serious questions about the adequacy of that process. ICE states that its "Government Information Law Division ('GILD') manually reviewed" more than twelve thousand responsive pages, "looking for final policy memoranda or guidance, thus removing emails, the vast majority of collected documents," and ultimately identified only ninety-nine pages responsive to the narrowed Request. Suppl. Decl. of Toni Fuentes ("Suppl. Fuentes Decl.") ¶¶ 21, 23–24, ECF No. 113. It strains credulity, however, that the thousands of pages of emails included no attachments that qualified as "final policy memoranda or guidance." *Id.* ¶ 23. In its manual review of the collected records, ICE should have reviewed email attachments independently for responsiveness, rather than discarding those records along with the no-longer-responsive emails. Because ICE provides no assurance that its re-review would have identified email attachments responsive to the narrowed Request, it has failed to establish that the re-review search process was adequate.

*Third*, as the Knight Institute explained in its opening brief, ICE has provided insufficient detail about the searches conducted by various ICE offices, including the refusal to conduct a search by the Enforcement and Removal Operations Law Division ("EROLD"). *See* Pl.'s Cross-Mot. Br. 11.[2] With respect to EROLD, ICE responds that two supervising attorneys "concluded that if EROLD were involved in the subjects requested by the FOIA requests, they would have been the individuals involved," and that "they had had no interaction with anything related to

---

[2] ICE has conceded the inadequacy of its description of the search conducted by the Immigration Law and Practice Division and National Security Law Section by providing more detail in its supplemental declaration. *See* Suppl. Fuentes Decl. ¶¶ 14–15.

3

policies, procedures, or guidance related to the exclusion or removal of individuals based on their 'beliefs, statements or associations.'" Suppl. Fuentes Decl. ¶ 16. But the Request seeks records dating back to 2005, *see* Am. Compl. Ex. B, at 3, and there is no indication that those attorneys are the only EROLD employees who would have handled relevant matters over the past fourteen years. Moreover, FOIA requires agencies to *search* for responsive records, not rely on memories. *See* 5 U.S.C. § 552(a)(3). ICE cites *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), but that case is inapposite. There, the D.C. Circuit concluded that a search was adequate where the agency actively looked for responsive records, investigated the accidental destruction of some records, and conducted an "unavailing room-to-room search for the box of missing documents" anyway. 926 F.2d at 1201. EROLD has done no such work, raising "serious doubts as to the completeness of the agency's search." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (citation omitted).

*Fourth*, as the Knight Institute previously explained, the searches of the Offices of the Director and of Enforcement and Removal Operations ("ERO") were inadequate because they were unduly restrictive. *See* Pl.'s Cross-Motion Br. 12–13. ICE responds merely by re-asserting that the terms used in its searches are reasonable. Defs.' Opp'n Br. 8. Without explaining whether the terms used by the Director's Office and ERO were entered with quotation marks (signifying that the terms must appear as a phrase in records) or with Boolean connectors (e.g., requiring that each word in a particular search term appear in a record), the agency cannot establish that its search was adequate. *See Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 107 ("[T]o determine adequacy, it is not enough to know the search terms. The method in which they are combined and deployed is central to the inquiry." (citation omitted)). As the Knight Institute explained in its

opening brief, these restrictive terms—especially if entered with quotation marks, excluding other relevant permutations—stand in stark contrast with other agencies' search terms and descriptions.

### B.   OLC

The Knight Institute's objection to OLC's search is straightforward: OLC failed to perform the search Defendants proposed it conduct on their collective behalf in response to Item 1 of the Request, and that failure renders the search inadequate. While the Institute cannot compel OLC to search other entities' systems in the first instance, it surely can hold Defendants to their own proposal to do so in lieu of conducting a more time-consuming search of their own records.

As an initial matter, Item 1 seeks agency records to which the Knight Institute is entitled under FOIA. *See* 5 U.S.C. § 552(a)(3)(A). Specifically, Item 1 seeks "[a]ll directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude or remove individuals from the United States." Am. Compl. Ex. B, at 3–4 (footnote omitted). The Institute sought those records from the *recipient agencies*, which are unquestionably subject to FOIA. *See id.*

During negotiations to narrow the scope of the Request, however, *Defendants* proposed to search the White House's systems as a more efficient means of gathering records responsive to Item 1. *See* Decl. of Carrie DeCell ("May 4 DeCell Decl.") ¶ 9, ECF No. 56 (describing negotiations). The Knight Institute conditionally agreed to minimize Defendants' burden in this way, as detailed in the April 9, 2018 Joint Status Report—which Defendants' counsel reviewed, edited, and approved before filing. Joint Status Report ¶ 2(a), ECF No. 48. The Joint Status Report is unambiguous: the parties agreed that Defendants would "[s]earch only White House systems for the records sought as Counsel for Defendants indicated that searching each recipient agency would

5

be a slower and duplicative process," and that Defendants would "provide an explanation of the White House record retention policy so the Knight Institute can assess the comprehensiveness of the response to this Item of the Request." *Id.* Moreover, the Knight Institute stated its understanding of the agreement in subsequent filings, so OLC cannot claim ignorance of the Institute's view. *See* May 4 DeCell Decl. ¶ 9 ("Defendants' counsel asked whether Defendants could search for responsive records in White House systems alone, rather than searching each Defendants' systems for communications received from the White House.").[3]

If OLC is unable to perform the search that Defendants proposed, then the parties' agreement is effectively void. The proper resolution would then be for all Defendants to conduct searches for records responsive to Item 1, as initially requested.

## II. DOS's withholdings from responsive records are unjustified.

DOS failed to justify its Exemption 5 and Exemption 7(E) withholdings in the *Vaughn* index submitted with its opening brief. Decl. of Eric F. Stein Ex. 1 ("*Vaughn* Index"), ECF No. 93-1. Conceding the inadequacy of its *Vaughn* index, DOS has provided more detail in a supplemental declaration filed with its reply and opposition brief. Decl. of Eric R. Stein ("Suppl. Stein Decl.") ¶¶ 5–8, ECF No. 112. Yet DOS still fails to carry its burden.

### A. DOS's withholdings under Exemption 5 are unjustified.

DOS improperly invoked Exemption 5 in withholding records that bear on a key concern underlying the Request—that the government seeks to wield immigration law in a way that burdens First Amendment rights. *See* Pl.'s Cross-Mot. Br. 15 n.11 (identifying records at issue). DOS fails to prove that these records do not constitute working law, and it fails to substantiate its

---

[3] The Joint Status Report and the May 4 DeCell Declaration are based on attorneys' notes taken during the parties' January 2018 call to negotiate the provisional narrowing of the Request. The Knight Institute would be willing to submit those notes to the Court, if necessary.

6

invocation of work product privilege with respect to the "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns" memorandum ("First Amendment Concerns memo") (C06534021), *see* Suppl. Stein Decl. ¶ 5.

### 1. DOS has failed to establish that the records at issue do not constitute the agency's working law.

Exemption 5 does not apply to records that constitute the "working law of the agency," given the public's "vital[] concern[] with the reasons which did supply the basis for an agency policy actually adopted." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975). "[I]t is the government's burden to prove" that the privileges covered by Exemption 5 apply, "and not the plaintiff's to demonstrate that the documents sought" constitute "working law." *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 201–02 (2d Cir. 2012). On behalf of DOS, Eric Stein attempts to carry this burden by repeating effectively the same language for each record at issue: "To the best of my knowledge, the analysis has not been publicly adopted formally or informally. The document offers legal analysis of a range of possible policy options, and this analysis was not binding on the Department or the President, and therefore is not working law." Suppl. Stein Decl. ¶ 5; *see id.* ¶¶ 6–8. But these statements do not answer the question of whether DOS or the President adopted the reasoning provided in these records as their own, or whether DOS treats the records as having the force and effect of law. Because "Exemption 5, properly construed, calls for disclosure of all 'opinions and interpretations' which embody the agency's *effective* law and policy"—not just those opinions and interpretations it has *publicly* adopted or *formally* designated as "binding"—DOS has failed to prove that Exemption 5 applies to the records at issue. *Sears*, 421 U.S. at 153 (emphasis added) (internal quotation marks and citation omitted); *see Brennan Ctr.*, 697 F.3d at 201 ("[D]ocuments reflecting [an agency's] formal or informal

policy on how it carries out its responsibilities fit comfortably within the working law framework." (quoting *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010)).

### 2. DOS has failed to establish that the work product privilege applies to the "First Amendment Concerns" memo.

To justify its invocation of the work product privilege, DOS must establish that, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted). It has not done so with respect to the First Amendment Concerns memo. Rather, DOS characterizes the memo as addressing "visa policies considered by the President regarding the 'endorse or espouse' provisions," offering "a range of possible policy options." Suppl. Stein Decl. ¶ 5. DOS notes that "civil litigation has frequently challenged aspects of this administration's policy" before stating that the memo "assesses the litigation risk of policy decisions in this area of immigration law." Suppl. Stein Decl. ¶ 5. But it does not connect that litigation risk assessment to the decisions it cites, nor does it assert that the memorandum would not "have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202. "[M]ere relation of documents to litigation does not automatically endow those documents with privileged status," and statements that fail to "make the [requisite] correlation between [the] withheld document and the litigation for which the document was created" do not carry the agency's burden. *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 69 (1st Cir. 2002) (internal quotation marks omitted). Based on DOS's own characterization and the title of the memo, it is clear that the memo was prepared in the process of policymaking, not "*because of* the prospect of litigation." *Adlman*, 134 F.3d at 1202.

### B.     DOS's withholdings under FOIA Exemption 7(E) are unjustified.

DOS fails to justify the withholding of several sections of the Foreign Affairs Manual ("FAM") under Exemption 7(E). As a threshold matter, DOS concedes not only that it is a mixed-function agency, but also that the FAM includes "recitations of statutes and background" unrelated to law enforcement. Defs.' Opp'n Br. 24. Therefore, the Court should "scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) (citation omitted).

The Knight Institute is primarily concerned about several withheld sections of the FAM that appear to contain definitions and broad statements of law, which fall outside of the techniques, procedures, and guidelines subject to Exemption 7(E). *See* 5 U.S.C. § 552(b)(7)(E); *see also ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393, 403–04 (S.D.N.Y. 2017). DOS argues that the Institute's claim that several withheld portions of the FAM "appear[] to contain merely 'definitions'" is "pure speculation." Defs.' Opp'n Br. 25. To the contrary, the withholdings in question appear within a section of the FAM titled "Definitions." Decl. of Carrie DeCell Ex. B, at 7, ECF No. 102-2 (9 FAM 302.6-2(B)(3)). Furthermore, other portions of the FAM appear to contain "recitations of statutes and background" that are not subject to Exemption 7(E). For example, 9 FAM 302.6-2(B)(3)d. references a list of nine examples of material support, including a "safe house," "[t]ransportation," and "[c]ommunications." This list is taken directly from the Immigration and Nationality Act ("INA") definition for "engage in terrorist activity," which includes "to commit an act that the actor knows, or reasonably should know, affords material support." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). Yet DOS completely withholds the context for these nine examples in the FAM, claiming that this paragraph "identif[ies] the situations that trigger the process of checking for terrorism-related ineligibilities and reveal[s] the techniques used during

9

that process." *Vaughn* Index 1. The similarity between the information withheld here and the text of the INA, however, suggests that Exemption 7(E) does not apply.

### C. DOS's withholdings likely contain segregable information.

DOS still has not provided any meaningful information regarding the segregability of factual information contained in its withholdings. Rather, DOS provides new boilerplate language for its Exemption 5 withholdings: "Any limited factual information is inextricably intertwined with the deliberative and legal privileges." Suppl. Stein Decl. ¶ 5; *see id.* ¶¶ 6–8. Similarly, for its Exemption 7(E) withholdings, DOS states: "The Department reviewed the documents line by line, and released information wherever possible." *Id.* ¶ 10. Because DOS withheld extensive sections of responsive records and provided insufficient information to evaluate these withholdings, it is difficult to determine whether the records contain segregable, non-exempt information. The Court should therefore review these records *in camera* to further the objectives of FOIA and correct the "asymmetrical distribution of knowledge that characterizes FOIA litigation." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987); *see* 5 U.S.C. § 552(a)(4)(B).

## CONCLUSION

This Court should grant partial summary judgment with respect to ICE and OLC, and summary judgment with respect to DOS, in favor of the Knight Institute. The Knight Institute respectfully asks the Court to order ICE to conduct a new search for records responsive to the provisionally narrowed Request, and to order all Defendants to conduct new searches for records responsive to Item 1 of the Request, on agreed-upon terms. The Institute further requests that the Court order DOS to release records it has improperly withheld under FOIA Exemptions 5 and 7(E), or that the Court review those records *in camera* to determine the propriety of DOS's withholdings and identify any segregable sections for prompt production.

| | |
|---|---|
| Dated: May 17, 2019 | Respectfully submitted, |
| */s/ Carrie DeCell* | */s/ Megan Graham* |
| Carrie DeCell (CD-0731) | Megan Graham (*pro hac vice*) |
| Jameel Jaffer (JJ-4653) | Catherine Crump (CC-4067) |
| Alex Abdo (AA-0527) | Samuelson Law, Technology & Public |
| Adi Kamdar (*pro hac vice*) |   Policy Clinic |
| Knight First Amendment Institute | U.C. Berkeley School of Law |
|   at Columbia University | 354 Boalt Hall |
| 475 Riverside Drive, Suite 302 | Berkeley, CA 94720-7200 |
| New York, NY 10115 | mgraham@clinical.law.berkeley.edu |
| (646) 745-8500 | (510) 664-4381 |
| carrie.decell@knightcolumbia.org | |
| | *Counsel for the Plaintiff* |
| *Counsel for the Plaintiff* | |