**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, and U.S. DEPARTMENT OF STATE,

Defendants.

No. 1:17-cv-07572-ALC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Carrie DeCell (CD-0731)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Adi Kamdar (*pro hac vice*)
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

*Counsel for Plaintiff*

Megan Graham (*pro hac vice*)
Catherine Crump (CC-4067)
Samuelson Law, Technology & Public
Policy Clinic
U.C. Berkeley School of Law
354 Boalt Hall
Berkeley, CA 94720-7200
mgraham@clinical.law.berkeley.edu
(510) 664-4381

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. ICE's withholdings under Exemption 5 are unjustified .......... 1

A. Deliberative Process Privilege .......... 2

B. Attorney-Client Privilege .......... 4

C. Work Product Privilege .......... 5

II. ICE's and USCIS's withholdings under Exemption 7 are unjustified. .......... 6

A. ICE .......... 6

B. USCIS .......... 7

III. *In camera* review is warranted. .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393 (S.D.N.Y. 2017) ............................... 7, 8

*ACLU v. FBI*, 59 F. Supp. 3d 584 (S.D.N.Y. 2014) ................................................................ 9

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*,
626 F.3d 678 (2d Cir. 2010) ........................................................................................................ 6

*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) ..................................................................... 9, 10

*Am. Immig. Council v. U.S. Dep't of Homeland Sec.*,
905 F. Supp. 2d 206 (D.D.C. 2012) ............................................................................................ 9

*Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479 (S.D.N.Y. 2010) ............................................ 4

*Asian Law Caucus v. Dep't of Homeland Sec.*, No. 08-cv-00842-CW,
2008 WL 5047839 (N.D. Cal. Nov. 24, 2008) ............................................................................ 8

*Barouch v. U.S. Dep't of Justice*, 87 F. Supp. 3d 10 (D.D.C. 2015) ........................................... 7

*Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012) .................... 2, 3, 4

*Detroit Free Press v. U.S. Dep't of Justice*, 174 F. Supp. 2d 597 (E.D. Mich. 2001) .................... 9

*Iraqi Refugee Assistance Project v. U.S. Dep't of Homeland Sec.*, No. 12-cv-3461,
2017 WL 1155898 (S.D.N.Y. Mar. 27, 2017) ........................................................................... 10

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*,
811 F. Supp. 2d 713 (S.D.N.Y. 2011) ......................................................................................... 3

*Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978) .......................................................................... 8

*State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002) .......................................... 6

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) .......................................................... 2

*United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183 (D.D.C. 2014) ...................... 5

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) .......................................................... 5, 6

## Statutes

5 U.S.C. § 552 ........................................................................................................................... 6

**Other Authorities**

Letter from Coalition of 103 Civil Rights & Other Organizations to the Hon. Kevin K. McAleenan, Acting Secretary of Homeland Sec. (May 1, 2019), https://perma.cc/JX3U-7885 ......... 10

Letter from Coalition of 56 Civil Rights & Other Organizations to the Hon. Elaine C. Duke, Acting Secretary of Homeland Sec. (Nov. 16, 2017), https://perma.cc/3WHM-Z6DK ......... 10

Plaintiff the Knight First Amendment Institute at Columbia University (the "Knight Institute" or "Institute") respectfully submits this reply memorandum of law in further support of its cross-motion for summary judgment against Defendants ICE and USCIS.[1] *See* Pl.'s Cross-Mot. for Summ. J., ECF No. 104; Pl.'s Mem. in Supp. of Cross-Mot. for Summ. J. (Pl.'s Cross-Mot. Br."), ECF No. 108.

## PRELIMINARY STATEMENT

Defendants have failed to justify their withholdings of records relating to the Trump Administration's "extreme vetting" policies in response to the Knight Institute's FOIA request (the "Request"). *See* Am. Compl. Ex. B, ECF No. 42-2. Specifically, Defendants fail to rebut the Institute's challenges to their invocation of FOIA Exemptions 5 and 7(E) in withholding the records at issue. Moreover, confirming the inadequacy of their previous justifications, Defendants identify additional withheld records for the first time in supplemental declarations filed with their reply and opposition brief, calling into question the reliability of the agencies' declarations overall. *See* Defs.' Mem. in Further Supp. of ICE & USCIS Mot. for Summ. J. ("Defs.' Opp'n Br.") 9–11, ECF No. 118. In light of the numerous omissions and inconsistencies within ICE's declarations in particular, *in camera* review is necessary to determine the legitimacy of its withholding of records responsive to the Request.

## ARGUMENT

### I. ICE's withholdings under Exemption 5 are unjustified.

ICE improperly invoked Exemption 5 to withhold records bearing on concerns at the heart of the Request—that the government is exercising immigration powers in ways that burden First Amendment rights. *See* Pl.'s Cross-Mot. Br. 8 n.7 (identifying records at issue). ICE failed to

[1] This memorandum uses abbreviations as defined in the Institute's opening brief. ECF No. 108.

justify these withholdings in the *Vaughn* index submitted with its opening brief. 2d Decl. of Toni Fuentes Ex. A, ECF No. 98-1. Conceding the inadequacy of that *Vaughn* index, ICE filed a supplemental declaration and *Vaughn* index with its reply and opposition brief.[2] Suppl. Decl. of Toni Fuentes ("2d Suppl. Fuentes Decl."), ECF No. 121. Yet ICE still fails to carry its burden.[3]

**A. Deliberative Process Privilege**

ICE has not established that records withheld under the deliberative process privilege are both deliberative and pre-decisional—i.e., that each record's contents "confirm that the document was originated to facilitate an identifiable final agency decision"—and do not constitute the "working law" of the agency. *See Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 202 (2d Cir. 2012) (citation omitted); *see also id.* at 195–96.

*First*, ICE's supplemental *Vaughn* index still does not adequately state an "identifiable final agency decision" for certain records at issue. ICE argues that it need only relate each document to a "specific issue," citing *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002). Defs.' Opp'n Br. 4. *Tigue* makes clear, however, that, "while the agency need not show *ex post* that a decision was made, it must be able to demonstrate that, *ex ante*, the document . . . related to a specific decision facing the agency." 312 F.3d at 80. ICE has not done so here. For instance, ICE states that the Foreign Policy Provision Memo addresses "whether Section 212(a)(3)(C) can be used by the Secretary of State as grounds for inadmissibility." 2d Suppl. Fuentes Decl. ¶ 25. But

[2] ICE has withdrawn its assertion of Exemption 5 as to the Taliban Memo and its assertion of attorney-client privilege as to the Foreign Policy Provision Memo. *See* Defs.' Opp'n Br. 2.

[3] In its opposition brief, ICE identified and attempted to justify the withholdings of three additional records in full for the first time, *see* Defs.' Opp'n Br. 9–11: (1) a memo containing updates on four Homeland Security Investigations programs (the "HSI Updates Memo"), 2d Suppl. Fuentes Decl. at 17–18; (2) a memo titled "Extreme Vetting – Visa Security Program (VSP) – Pre-Adjudication Threat Recognition and Intelligence Operations Team (PATRIOT)" (the "Extreme Vetting Memo"), *id.* at 18–19; and (3) a memo titled "ICE Implementation Plan for Executive Orders" (the "EO Implementation Memo"), *id.* at 19.

that just refers to ICE's understanding of the law, not an "identifiable final agency decision." *See Brennan Ctr.*, 697 F.3d at 202 (citation omitted). ICE's boilerplate description of the Extreme Vetting Memo also fails to relate the record to a final agency decision. 2d Suppl. Fuentes Decl. at 18–19.

*Second*, ICE fails to demonstrate that all versions of the First Amendment Concerns Memo are pre-decisional. ICE considered at least one version of the First Amendment Concerns Memo to be "final" for its own purposes. *See* Defs.' Opp'n Br. 3, 4 n.4; 2d Suppl. Fuentes Decl. ¶ 18. That final version should be released to the Knight Institute or at least reviewed by the Court *in camera* to determine whether it contains segregable, non-exempt portions appropriate for release. *See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 750 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) (indicating that *in camera* review is appropriate where a memo marked as "draft" is "in its final or close to final form" to assess whether portions "reflect final agency positions" and should be released).

Additionally, while ICE characterizes the HSI Updates Memo, the Extreme Vetting Memo, and the EO Implementation Memo as pre-decisional "drafts," the descriptions in the *Vaughn* index imply that at least some portions of the memos are final. *See* 2d Suppl. Fuentes Decl. at 17 (stating that the HSI Updates Memo contains "answers related to most recent updates for several [HSI] programs" from program staff); *id.* at 18 (stating that the Extreme Vetting Memo contains discussion of funding and current visa vetting policies); *id.* at 19 (stating that the EO Implementation Memo "proposes implementation plans for ICE" regarding two Executive Orders). Given these descriptions and ICE's failure to produce different, "final" versions of these records, the Court should review the records *in camera* to determine whether they are indeed privileged and to assess whether they contain any segregable information.

*Third*, ICE fails to establish that records at issue do not contain "working law." *See Brennan Ctr.*, 697 F.3d at 202. For example, ICE states that the INA § 235(c) Memo was drafted around 2010 and recirculated in 2017 as the agency's "interpretation and implementation of Section 235(c)," including "recommendations on whether to use the provision for removals." 2d Suppl. Fuentes Decl. ¶ 7. Thus, it appears that the agency relied on the memo for at least seven years when considering removals pursuant to INA § 235(c). ICE describes the Foreign Policy Provision Memo as containing analysis of "whether Section 212(a)(3)(C) can be used by the Secretary of State as grounds for inadmissibility," *id.* ¶ 25, likely reflecting ICE's understanding of the State Department's authority to make immigration decisions based on the Foreign Policy Provision. Additionally, ICE indicates that the Extreme Vetting Memo contains descriptions of existing visa vetting policies. *Id.* at 18. These memos thus "reflect[] [the agency's] formal or informal policy on how it carries out its responsibilities," which "fit comfortably within the working law framework." *Brennan Ctr.*, 697 F.3d at 201 (citation omitted).

**B. Attorney-Client Privilege**

ICE has also failed to justify its invocation of the attorney-client privilege with respect to either the INA § 235(c) Memo or the First Amendment Concerns Memo. To establish that attorney-client privilege applies to withheld records, an agency must generally submit a *Vaughn* index—"[m]uch like . . . a privilege log in civil litigation"—that states, among other things, "the subject matter, number of pages, author, date created, and the identities of all persons to whom the original or any copies of the document were shown or provided." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 519 (S.D.N.Y. 2010) (cleaned up). ICE has still failed to provide this information for the INA § 235(c) Memo or the First Amendment Concerns Memo. Furthermore, assertions by ICE's declarant that the records were "intended to be kept confidential" based on their watermarks

and headers, 2d Suppl. Fuentes Decl. ¶¶ 10, 23, and that "to the best of [her] knowledge" they were kept confidential, *id.* ¶¶ 13, 20, are inadequate. *See, e.g.*, *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 191 n.25 (D.D.C. 2014) (explaining that "boilerplate labeling [of record as privileged and confidential], without any more detailed instruction about the scope of the confidentiality" is "not . . . controlling"). Without the details commonly included in a privilege log, ICE cannot establish that the INA § 235(c) Memo or the First Amendment Concerns Memo are covered by attorney-client privilege.

**C. Work Product Privilege**

To justify its invocation of the work product privilege, ICE must establish that, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted). ICE has failed to do so for the INA § 235(c) Memo and the First Amendment Concerns Memo. ICE characterizes the INA § 235(c) Memo as discussing, among other things, "ICE's interpretation and implementation of Section 235(c)" and "whether to use the provision for removals." 2d Suppl. Fuentes Decl. ¶ 7. ICE characterizes the First Amendment Concerns Memo as "discuss[ing] First Amendment concerns that may arise in applying the security-related ground of inadmissibility under Section 212(a)(3)(B)(i)(VII)" of the Immigration and Nationality Act. *Id.* ¶ 16. ICE argues that because the previous and current administrations faced "challenges to [their] immigration policies," the memos were "prepared in anticipation of litigation." *Id.* ¶¶ 15, 22. ICE does not connect the memos to any particular case, however, merely referring to a general increase in litigation. Nor does ICE establish that the memos would not "have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202. Agency statements that fail to "make the [requisite]

correlation between [the] withheld document and the litigation for which the document was created" do not carry the agency's burden. *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 69 (1st Cir. 2002) (internal quotation marks omitted). Based on ICE's own characterization of these memos, it is clear they were not prepared *because* of litigation. *Adlman*, 134 F.3d at 1202.

## II. ICE's and USCIS's withholdings under Exemption 7 are unjustified.

### A. ICE

ICE revealed for the first time in its reply and opposition brief that it withheld the Extreme Vetting Memo under Exemption 7(E). ICE's justification for doing so falls short of the legal standard for withholding information pursuant to this exemption. *See* Pl.'s Cross-Mot. Br. 17–18. In pertinent part, Exemption 7(E) protects two specific categories of information: "techniques and procedures," and "guidelines," the disclosure of which would risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E); *see Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010) (defining categories). ICE's justification for withholding information in the Extreme Vetting Memo sidesteps these defined terms.

ICE states that the Extreme Vetting Memo contains "detailed requirements for worldwide expansion of the VSP [Visa Security Program], . . . funding needs to sustain and expand the program, and descriptions of other programs (e.g., social media expansion) working in conjunction with VSP to help identify visa applicants with some nexus to terrorism or criminal activity." Defs.' Opp'n Br. 11; *see also* 2d Suppl. Fuentes Decl. 18–19. It is not clear how discussing program funding and expansion reveals a technique (a "technical method of accomplishing a desired aim") or a procedure (a "particular way of doing or going about the accomplishment of something"). *Allard K. Lowenstein*, 626 F.3d at 682. Furthermore, "guidelines" relate to the allocation of law enforcement resources for investigations or prosecutions. *Id.* And ICE still has not shown that

revealing the program funding and expansion information withheld here would risk circumvention of the law.

**B. USCIS**

USCIS improperly invoked Exemption 7(E) to withhold questions for immigration benefit applicants, which likely implicate the First Amendment concerns underlying the Request. Exemption 7(E) "requires that the material being withheld truly embody a specialized, calculated technique or procedure and that it not be apparent to the public." *ACLU v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393, 404 (S.D.N.Y. 2017) ("*ACLU v. DHS*"). USCIS did not make this showing in its initial declaration, and it now recites these magic words without providing any additional support. *See* Defs.' Opp'n Br. 15 (stating that "[t]hese questions reflect specialized methods" and that the methods "reflect calculated techniques"). At best, USCIS claims that the "particular information the questions and follow-ups were designed to elicit includes information that would shed light on terrorist organizations' activities and help determine whether the applicant had any ties to such terrorist organizations and activities." *Id.* But this is unsurprising: the information is found in training documents addressing visa applicants' possible terrorist ties. *See, e.g.*, Apr. 16 DeCell Decl. Ex. C, at 18, ECF No. 109-3. Without clarifying how the questions at issue embody a specialized, calculated technique or procedure, USCIS still fails to justify its withholdings.

USCIS's other arguments are unavailing. For one, the agency relies on a footnote in *Barouch v. U.S. Department of Justice*, where the district court found the withholding of information relating to law enforcement questions proper pursuant to Exemption 7(E). 87 F. Supp. 3d 10, 30 n.13 (D.D.C. 2015). The court highlighted, however, "plaintiff's failure to object to" the government's offered justifications. *Id.* In contrast, the Knight Institute has challenged USCIS's invocation of Exemption 7(E). USCIS further relies on *Asian Law Caucus v. Department of*

*Homeland Security*, but fails to mention that the court reviewed the documents at issue *in camera* before determining that the government had met its burden. No. 08-cv-00842-CW, 2008 WL 5047839, at *5 (N.D. Cal. Nov. 24, 2008); *see also ACLU v. DHS*, 243 F. Supp. 3d at 403 (noting "fact-specific nature" of *Asian Law Caucus* decision). Lastly, USCIS unpersuasively attempts to distinguish *ACLU v. DHS*, where the district court rejected the government's withholding of questions asked by immigration agents. 243 F. Supp. 3d at 405. There, the government failed to establish that the questions were technical in nature, that any special method or skills were used, or that those subject to questioning would not inevitably learn the techniques. *See id.* at 403. The same is true here, where USCIS asserts that it withheld "model," "sample," or "suggested" questions without explaining how they reflect any specific techniques. Defs.' Opp'n Br. 14–15.

## III. *In camera* review is warranted.

As noted above, the inadequacy of both ICE's and USCIS's declarations support the Court's *in camera* review of the withheld records at issue. *In camera* review is particularly appropriate for the records withheld by ICE. ICE relies on the presumption of good faith accorded agency declarations in support of withholding determinations, Defs.' Opp'n Br. 6, and points to the multiple declarations it has filed in arguing against *in camera* review, *id.* at 25. But numerous inconsistencies and omissions in ICE's declarations call into question the agency's good faith efforts to justify its searches and withholding of responsive records. "A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Especially "if there is evidence of agency bad faith—for example, if information contained in agency affidavits is contradicted by other evidence in the record—then, *in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-

exempt information." *ACLU v. FBI*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014) (citation omitted).; *see also, e.g.*, *Detroit Free Press v. U.S. Dep't of Justice*, 174 F. Supp. 2d 597, 600 (E.D. Mich. 2001) (ordering *in camera* review based on inconsistency).

While ICE's supplemental declarations belatedly provide additional information, they also cast doubt on the reliability of ICE's justifications for the searches it conducted and the records it withheld. As the Knight Institute has explained, the supplemental declaration ICE filed on May 3, 2019, contradicts previous representations ICE made to the Institute and the Court. Pl.'s 1st Reply Br. 2–3, ECF No. 117. Acknowledging that its initial *Vaughn* index omitted explanations for three significant records relating to ICE's implementation of President Trump's extreme vetting orders, ICE has now addressed those records in a supplemental *Vaughn* index. But that index contains further inconsistencies. For instance, under the "Exemption(s) Applied" column, ICE identifies only Exemption 5 as a justification for withholding the HSI Updates Memo, but provides an Exemption 7(E) explanation in the "Description" column. 2d Suppl. Fuentes Decl. 17–18. ICE also states that the Extreme Vetting Memo and the EO Implementation Memo were only partially withheld, when they were withheld in full. *Id.* at 18–19; *see also* Apr. 16 DeCell Decl. Ex. A, at 1–19, ECF No. 109-1. The courts reasonably "expect agencies to ensure that their submissions in FOIA cases are absolutely accurate." *Am. Immig. Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 217 (D.D.C. 2012) (citation omitted) (conducting *in camera* review).

Furthermore, considerations of judicial economy, the conclusory nature of ICE's declarations, and the strong public interest in disclosure of the withheld records support *in camera* review here. *See Allen v. CIA*, 636 F.2d 1287, 1298–99 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828, 830–31 (D.C. Cir. 1983). First, review of the records at issue would not be overly burdensome for the

Court. *See id.* Second, the conclusory justifications ICE provides for withholding these records, discussed above, call for a more searching examination by the Court. *See Iraqi Refugee Assistance Project v. U.S. Dep't of Homeland Sec.*, No. 12-cv-3461, 2017 WL 1155898, at *3 (S.D.N.Y. Mar. 27, 2017) ("Absent *in camera* review, the Court would be unable to make adequate findings as to the . . . claimed FOIA exemptions and whether the discussions contain segregable factual content."). Finally, the strong public interest in the disclosure of these records—records which directly relate to serious First Amendment concerns about this Administration's extreme vetting policies—creates "a greater call for in camera inspection." *Allen*, 636 F.2d at 1299. For example, in addition to the First Amendment Concerns Memo and the EO Implementation Memo, ICE has withheld two memoranda addressing, among other things, "methods for accessing certain social media platforms" and plans for "social media expansion" under the Visa Security Program. Defs.' Opp'n Br. 10–11. ICE's social media surveillance practices and proposals have raised significant constitutional concerns.[4] The public has an urgent need—and right—to know whether ICE is wielding its enforcement authority in a manner that harms core First Amendment values.

## CONCLUSION

The Court should grant summary judgment with respect to ICE and USCIS in favor of the Knight Institute. The Institute respectfully requests that the Court order ICE and USCIS to release records they have improperly withheld under FOIA Exemptions 5 and 7(E), or to review those records *in camera* to determine the propriety of the agencies' withholdings and identify any segregable sections for prompt production to the Institute.

---

[4] *See, e.g.*, Letter from Coalition of 103 Civil Rights & Other Organizations to the Hon. Kevin K. McAleenan, Acting Secretary of Homeland Sec. (May 1, 2019), https://perma.cc/JX3U-7885; Letter from Coalition of 56 Civil Rights & Other Organizations to the Hon. Elaine C. Duke, Acting Secretary of Homeland Sec. (Nov. 16, 2017), https://perma.cc/3WHM-Z6DK.

Dated: May 31, 2019

Respectfully submitted,

*/s/ Carrie DeCell*

Carrie DeCell (CD-0731)
Jameel Jaffer (JJ-4653)
Alex Abdo (AA-0527)
Adi Kamdar (*pro hac vice*)
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

*Counsel for the Plaintiff*

*/s/ Megan Graham*

Megan Graham (*pro hac vice*)
Catherine Crump (CC-4067)
Samuelson Law, Technology &
Public Policy Clinic
U.C. Berkeley School of Law
354 Boalt Hall
Berkeley, CA 94720-7200
mgraham@clinical.law.berkeley.edu
(510) 664-4381

*Counsel for the Plaintiff*