USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: *9-23-19*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**KNIGHT FIRST AMENDMENT INSTITUTE**  :
**AT COLUMBIA UNIVERSITY,**  :
            :
                           **Plaintiff.**  :  **1:17-cv-7572 (ALC)**
            :
            :  **<u>OPINION & ORDER</u>**
  **-v.-**  :
            :
            :
**U.S. DEPARTMENT OF HOMELAND**  :
**SECURITY, ET AL.,**  :
                    **Defendants.**  :
            :
            :

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge**

      Plaintiff the Knight First Amendment Institute at Columbia University (the "Knight

Institute" or "Institute") filed this action under the Freedom of Information Act, 5 U.S.C. § 552

("FOIA") against the United States Immigration and Customs Enforcement agency ("ICE"), the

Office of Legal Counsel ("OLC") within the Department of Justice ("DOJ"), the Department of

State ("DOS"), the United States Citizenship and Immigration Services ("USCIS"), Customs and

Border Protection ("CBP"), Department of Homeland Security ("DHS"), Department of Justice

Office of Public Affairs ("OPA"), and Office of Information Policy ("OIP") (collectively

"Defendants") seeking records relating to the government's authority to exclude or remove

individuals from the United States based on their speech, beliefs, or associations. ECF. No. 42.

Pending before the Court are USCIS and ICE motions for summary judgment and Plaintiff's

cross-motion for summary judgment. For the reasons set forth below, Defendants' motions are

granted in part and denied in part and Plaintiff's cross-motion is granted in part and denied in

part.

## BACKGROUND

The Court assumes familiarity with the previous summary judgment opinion (the "Opinion") in this matter, which provides a more complete background, and discusses here only those facts necessary for its disposition of the instant motions. *See* ECF No. 140. In short, Plaintiff seeks information relating to communications between government agencies and the White House concerning its authority to exclude or remove individuals from the United States based on certain beliefs and associations. Am. Compl. ¶ 4, ECF No. 42. The President addressed these concerns in Executive Order 13,780 ("E.O. 13,780"), which directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for visa applicants and refugees seeking entry into the United States. Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017).[1] In the Opinion, the Court addressed the parties' arguments regarding the adequacy of certain agencies' searches, as well as the lawfulness of certain withholdings and redactions. ECF No. 140.[2] Defendants and Plaintiff now cross-move for summary judgment regarding the following agency withholdings:

### 1. ICE

In response to Plaintiff's original FOIA request, ICE produced 2,574 pages of responsive records and withheld certain pages pursuant to Exemptions 5, 6, 7(C), and 7(E). March 15, 2019 Fuentes Declaration ¶ 11 & Exhibit A (*Vaughn* Index). Thereafter, ICE re-reviewed the collected documents to identify materials responsive to the Narrowed Request. *See* ECF. No. 64. Upon re-

---

[1] The Executive Order called for, among other things, the "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility or grounds for the denial of other immigration benefits." *Protecting the Nation From Foreign Terrorist Entry Into the United States*, 82 FR 13209.

[2] Specifically, the Opinion held that: 1) ICE's searches were inadequate; 2) OLC was not required to search the White House for responsive records; The DOS properly withheld documents pursuant to FOIA's exemption 5; and 3) ICE improperly withheld documents pursuant to FOIA's Exemption 7. *See* ECF No. 140

review, ICE determined that 99 pages of documents were responsive to the Narrowed Request and released 50 pages in whole or in part applying withholdings pursuant to Exemptions 5, 6, 7(C), and 7(E), and referred 49 pages to other agencies, which were released in whole or in part on August 3, 2018.[3] *See* ECF. No. 77; Fuentes Decl. ¶¶ 9-11.

### 2. USCIS

USCIS determined that documents responsive to the Narrowed Request would include "records related to [USCIS'] enforcement of the Immigration and Nationality Act (INA), particularly its provisions on terrorism-related inadmissibility grounds (TRIG), found in INA § 212, codified in 8 U.S.C. § 1182[.]" Declaration of Jill A. Eggleston, dated March 14, 2019 ("Eggleston Decl."), ¶ 9. USCIS initially compiled over 2,200 pages of potentially responsive documents and determined that 1,278 pages were responsive to the Narrowed Request. *Id.* ¶ at 11. On May 30, 2018, and June 29, 2018, USCIS produced 957 pages in their entirety, and withheld 357 pages in part. *Id.* Specifically, USCIS partially withheld 17 pages pursuant to FOIA Exemption 5, and 256 pages and 33 slides pursuant to FOIA Exemption 7(E). *Id.* ¶¶ at 11-41. USCIS did not withhold any document in full. *Id.*

### STANDARD OF REVIEW

A moving party is entitled to summary judgment when no material facts are in genuine dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). FOIA cases are generally resolved by cross motions for summary judgment. *See NRDC v. United States DOI*, 73 F. Supp. 3d 350, 355 (S.D.N.Y. 2014) (citation omitted); *Intellectual Prop. Watch v. United States Trade Representative*, 344 F. Supp. 3d 560, 567 (S.D.N.Y. 2018). To prevail on a

---

[3] Plaintiff does not challenge ICE's withholdings pursuant to Exemption 6.

motion for summary judgment in a FOIA case, the defending agency has the burden of showing

that any withheld documents fall within a FOIA exemption. *Carney v. DOJ*, 19 F.3d 807, 812

(2d Cir. 1994) (citations omitted). When a requestor challenges an agency decision to withhold

responsive records, a district court may review the agency's decision *de novo*. 5 U.S.C. §

552(a)(4)(B); *A.C.L.U. v. U.S. Dep't of Justice*, 229 F. Supp. 3d 259, 264 (S.D.N.Y. 2017).

"[A]ll doubts as to the applicability of the exemption must be resolved in favor of disclosure."

*N.Y. Times Co. v. DOJ*, 756 F.3d 100, 112 (2d Cir. 2014) (quoting *Wilner v. NSA*, 592 F.3d 60,

69 (2d Cir. 2009)).

An agency can prevail on summary judgment by submitting affidavits that "describe the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" *Wilner*, 592 F.3d at 73 (quoting

*Larson v. Dep't of State*, 565 F.3d 857, 862, 385 U.S. App. D.C. 394 (D.C. Cir. 2009)). These

affidavits "are accorded a presumption of good faith, which cannot be rebutted by purely

speculative claims about the existence and discoverability of other documents." *Intellectual

Prop. Watch,* 344 F. Supp. 3d at 567 (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197,

1200, 288 U.S. App. D.C. 324 (D.C. Cir. 1991) (quotation marks omitted)).[4]

## DISCUSSION

In the September 13, 2019 Opinion, the Court discussed in detail the statutes relevant to

this dispute, including the relevant provisions of FOIA and the Immigration and Naturalization

---

[4] Second Circuit courts follow *Vaughn v. Rosen*, where the Court of Appeals for the D.C. Circuit held that to adequately justify an alleged exemption, the Government should provide "a relatively detailed analysis in manageable segments." 484 F.2d 820, 826, 157 U.S. App. D.C. 340 (D.C. Cir. 1973). Thus, agencies submit *Vaughn* indexes listing withheld documents and claimed exemptions, along with *Vaughn* affidavits that describe the withheld documents and the rationale for withholding them. *See ACLU v. DOJ*, No. 13 Civ. 7347, 2017 U.S. Dist. LEXIS 44597, 2016 WL 5394738, at *4 (S.D.N.Y. Sept. 27, 2016).

Act ("INA"), 8 U.S.C. § 1101 *et seq*. The Court assumes familiarity with the Opinion but will briefly outline prevailing law.

## I.      FOIA Exemption 5

### A. Deliberative Process Privilege

The deliberative process privilege under FOIA Exemption 5 protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001). To be protected by the deliberative process privilege, a document must be: 1) pre-decisional, that is, prepared to assist an agency decisionmaker in arriving at his decision; and 2) deliberative, that is, related to the process by which policies are formulated. *See Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991).

### B. Segregability

FOIA also provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Accordingly, the agency must provide a detailed justification for its decision that non-exempt material is not segregable. *Conti v. United States Dep't of Homeland Sec.*, 2014 U.S. Dist. LEXIS 42544, at *72 (S.D.N.Y. Mar. 24, 2014); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261, 184 U.S. App. D.C. 350 (D.C. Cir. 1977). Agencies are entitled to a presumption that it disclosed reasonably segregable material. *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117, 377 U.S. App. D.C. 460 (D.C. Cir. 2007). A district court "must make specific findings of segregability regarding the documents to be withheld" before ruling that an agency properly invoked a FOIA exemption. *Sussman*, 494 F.3d at 1116. An agency may only withhold a document's non-exempt portions if they are

"inextricably intertwined" with the exempt portions. *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239, 249 n.10 (2d Cir. 2006).

## II.    Defendants' Exemption 5 Withholdings

### A.  ICE

Plaintiff challenges ICE's withholdings of several sets of records; [5] arguing that ICE improperly invoked Exemption 5 to withhold records "bearing on concerns at the heart of the Request—that the government is exercising immigration powers in ways that burden First Amendment rights." *See* Pl.'s Cross-Mot. Br. 8 n.7. ICE claims that the Fuentes Declarations and accompanying *Vaughn* Indices justify their application of Exemption 5. ICE further argues that the deliberative process privilege applies to all the challenged records, but the attorney-client and work product privileges only apply to the INA § 235c and First Amendment Concerns Memos. *See* ECF. No. 118. The Court will address ICE's application of Exemption 5 to each document.

### 1.  Extreme Vetting Memo

ICE withheld portions of the Extreme Vetting Memo that included proposals for "initiatives to meet executive mandates concerning future capabilities of the VSP PATRIOT program," as well as "funding information and a recommended approach toward any expansion." *See* Suppl. *Vaughn* Index at 3. ICE argues this information is pre-decisional because the memo is a draft and

---

[5] Plaintiff Challenges ICE's withholdings of the following six records: (1) "Removal of National Security Threat Aliens" and accompanying emails ("INA § 235(c) Memo") (2018-ICAP-00118, at 298–306), *see* ICE *Vaughn* Index 26–28; (2) "Inadmissibility Based on Endorsing or Espousing Terrorist Activity: First Amendment Concerns" ("First Amendment Concerns Memo") (2018-ICAP-00118, at 307–19, 515–23, 698–706, 711–30, 736–54, 758–61), *see Id*. at 28–30, 32–34, 41–43; (3) "ICE Ability to Use 212(a)(3)(C) Foreign Policy Charge" ("Foreign Policy Provision Memo") (2018-ICAP-00118, at 870–73), *see Id*. at 45– 46; 1; (4) "Extreme Vetting – Visa Security Program (VSP) – Pre-Adjudication Threat Recognition and Intelligence Operations Team", *see Vaughn* index accompanying May 17 2019 Fuentes Declaration ("Suppl. *Vaughn* Index"), 4; (5) "ICE Implementation Plan for Executive Orders." (the "EO Implementation Memo"), *see Id*. at 4; and, (6) a memorandum regarding "several ICE Homeland Security Investigations (HSI) Programs, including the Counterterrorism and Criminal Exploitation Unit, the National Counterterrorism Center, the Visa Security Program, and the Biometric Identification Transnational Migration Alert program (collectively, the "HSI Updates Memo") *Id*. at 2. ICE also applied FOIA Exemption 7 to withhold the HSI Updates Memo. *See* discussion *infra* Part IV.A.

contains proposals for implementing the program, and deliberative because it contains proposals

that are "under consideration and may be changed as ICE offices and ICE employees deliberate."

*Id*. Plaintiff argues the memo should be disclosed in full because the relevant *Vaughn* Index

indicates the memo contains descriptions of existing visa vetting policies in addition to the

"proposals". *See* Suppl. *Vaughn* Index at 3. Ultimately, ICE presents a valid concern, but that

concern fails to outweigh the case law supporting disclosure. *See Brennan Ctr. for Justice at*

*New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 201 (2d Cir. 2012).

Indeed, the purported "proposals" and "recommendations" describing how to meet mandates

appear to be deliberative material. However, the portions of the memo that describe existing

policy undoubtedly "reflect [the agency's] formal or informal policy on how it carries out its

responsibilities," which "fit comfortably within the working law framework." *Brennan Ctr.*, 697

F.3d at 201 (citation omitted). Documents explaining precedent are not protected by Exemption

5. *See Id*; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 199 U.S. App. D.C. 272

(D.C. Cir. 1980); *Tax Analysts v. IRS*, 294 F.3d 71, 352 U.S. App. D.C. 273 (D.C. Cir. 2002)

(holding that documents "explaining whether certain tax exemptions applied to specific

taxpayers" constituted "working law" because their "tone . . . indicate[d] that they simply

explain[ed] and appl[ied] established policy"); *Public Citizen, Inc. v. Office of Management and*

*Budget*, 598 F.3d 865, 389 U.S. App. D.C. 356 (D.C. Cir. 2010) (documents that "summariz[ed]"

an agency's policy understandings were not protected by Exemption 5).

ICE also argues that the memo is protected by Exemption 5 because it was a draft yet to

reach final, authoritative, "working law" status. However, "working law" documents do not have

to "reflect the final programmatic decisions of the program officers who request them. It is

enough that they represent [the agency's] final legal position". *Brennan Ctr.*, 697 F.3d at 201

(quoting *Tax Analysts*, 294 F.3d at 80-81). Therefore, ICE failed to prove that the entire document "more closely resemble[s] the type of internal deliberative and predecisional document[] that Exemption 5 allows to be withheld, or the type[] of document[] that section 552(a)(2) requires be disclosed." *Brennan Ctr.*, 697 F.3d at 202. Accordingly, any reasonably segregable sections of the record reflecting that working law must be released. *Id.*

## 2. The First Amendment Concerns Memo

ICE claims the First Amendment Concerns Memo is pre-decisional because it contains recommendations concerning a potential decision "about expanding any reliance on [Section 212(a)(3)(B)(i)(VII) as a ground of] inadmissibility," and deliberative because it was related to the process by which the government evaluated "concerns that may arise when applying the security-related ground of inadmissibility under Section 212(a)(3)(B)(i)(VII) of the INA." Def.'s Rep. Br. 3. Plaintiff contends that ICE fails to demonstrate that all versions of the First Amendment Concerns Memo are pre-decisional since ICE considered at least one version "final". *See Id.* at 3, 4 n.4; May 17 Fuentes Decl. ¶ 18. The Court disagrees.

ICE released an email referencing a "final version" of the memorandum sent back to DHS. Apr. 16 DeCell Decl. Ex. B, at 10 (2018-ICAP-00118, at 693), ECF No.109. Plaintiff argues this "final version" represents a "final agency decision" and therefore is not pre-decisional. However, the fact that there is a "final version" of the First Amendment Concerns memo does not necessarily remove it from the deliberative process. According to the declarations, all versions of the memo reflect "advisory opinions, recommendations and deliberations" that potentially assisted the governmental decision-making process. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8. A "final version" of a recommendation is no more binding than its preceding incarnations. Therefore, ICE proved Exemption 5 applies to the First Amendment Concerns

Memo.

### 3. Foreign Policy Provision Memo

ICE contends the Foreign Policy Provision Memo (withheld in part) is pre-decisional because it was prepared to assist the Secretary of State in determining whether Section 212(a)(3)(C) of the INA can be used to render an alien inadmissible, and deliberative because it provides factors for the Secretary's consideration and "the employee's opinion." May 17 2019 Fuentes Decl. ¶¶ 25-27; *Vaughn* Index at 45. Plaintiff argues the memo should be released in full because it "likely reflect[s] ICE's understanding of the State Department's authority to make immigration decisions based on the Foreign Policy Provision" and its *Vaughn* entry fails to establish the record was deliberative. The Court agrees. *See* ICE *Vaughn* Index 45–46.

ICE failed to demonstrate the Foreign Policy Provision Memo was pre-decisional. The record does not indicate that the memo "formed an essential link in a specific consultative process, reflects the personal opinions of the writer *rather than* the policy of the agency, [or] if released, would inaccurately reflect or prematurely disclose the views of the agency." *Brennan Ctr.*, 697 F.3d at 202 (emphasis added). ICE's description of the memo suggests the withheld portions are more akin to opinions regarding how to *interpret* policy rather than recommendations as to how to *make* policy. Indeed, the withheld portions of the memo do not seem to contain the "personal opinions" or deliberative material the law seeks to keep out of the public eye. *See Sears*, 421 U.S. at 152–53, 161 (ruling that the deliberative process privilege does not apply to documents that embody law and policy). Furthermore, the relevant *Vaughn* entry does not detail the record's deliberative nature beyond boilerplate justifications. *See* ICE *Vaughn* Index 46. Thus, ICE failed to demonstrate that the withheld portions of the memo reflect "pre-decisional" advice as opposed to "post-decisional explanation". *See Civil Liberties Union v. Nat'l Sec. Agency*, 925 F.3d 576,

9

593 (2d Cir. 2019) ("*ACLU v. NSA*"). Accordingly, ICE is ordered to disclose reasonably segregable portions of the Foreign Policy Provision Memo that reflect current immigration policy.

### 4. EO Implementation Memo

ICE also claims it withheld in part, pursuant to the deliberative process privilege, a ten-page draft memorandum with the subject heading, "ICE Implementation Plan for Executive Orders." Suppl. *Vaughn* Index at 4. Plaintiff contends ICE failed to demonstrate it properly applied Exemption 5 to this record since the *Vaughn* Index implies that at least some portions of the memo are final. The Court disagrees.

First, the memo is pre-decisional because it "proposes implementation plans for ICE regarding Executive Orders entitled 'Border Security and Immigration Enforcement Improvements' and 'Enhancing Public Safety in the Interior of the United States' issued by the President on January 25, 2017," and deliberative because the proposed "plans and edits [] were under review and being changed as ICE offices and ICE employees provided edits, comments, and recommendations on the proposed draft." May 17 2019 Fuentes Decl. at ¶¶ 39-40. Furthermore, not only is the document "watermarked 'DRAFT'…[it also] contains comment bubbles, red-lines, track changes, [and] newly proposed language." *Id.* This evidence implies the withheld documents were far from final, and Plaintiff offers no additional evidence suggesting otherwise. *See Tigue*, 312 F.3d at 76 (opinions, recommendations, and deliberations satisfy Exemption 5); *Coastal States Gas Corp.*, 617 F.2d at 866 ("recommendations, draft documents, proposals, [and] suggestions" subject to the deliberative process privilege); *Grand Central Partnership*, 166 F.3d 473, 482 (2d Cir. 1999). Accordingly, ICE demonstrated it properly applied the deliberative process privilege to the EO Implementation Memo.

5. **The INA § 235c Memo**

a. **Deliberative Process Privilege**

According to ICE, the INA § 235c Memo (withheld in part) is pre-decisional because it discusses proposed revisions to Section 235(c), and deliberative because it contains opinions and analyses by OPLA attorneys recommending certain courses of action. *See* ECF No. 121, Fuentes Decl. at ¶¶ 7-11. However, the record suggests otherwise.

ICE states that the INA § 235(c) Memo was drafted around 2010 and recirculated in 2017 as the agency's "interpretation and implementation of Section 235(c)," including "recommendations on whether to use the provision for removals." May 17 2019 Fuentes Decl. ¶ 7. Thus, apparently, the agency relied on the memo for at least seven years when considering removals pursuant to INA § 235(c). *See Coastal States Gas Corp.*, 617 F.2d at 869 (an agency's legal department's memoranda constituted working law because the memoranda "were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent"). Furthermore, this memo's reoccurring appearance over seven years constitutes "contrary evidence in the record" to ICE's claim it is not post-decisional working law. *See Wilner*, 592 F.3d at 73. Accordingly, ICE failed to establish that portions of the INA § 235(c) are protected by the deliberative process doctrine.

b. **Attorney Client Privilege**

However, the deliberative process privilege is not the only shield an agency may wield in the face of disclosure. ICE also asserts the attorney client privilege to partially withhold the INA § 235(c) Memo. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d

Cir. 2011); *see also Brennan Ctr.*, 697 F.3d at 207–08. An agency invoking the attorney-client privilege bears "[t]he burden . . . to demonstrate that confidentiality was expected in the handling of these communications and that it was reasonably careful to keep this confidential information protected from general disclosure." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 519 (S.D.N.Y. 2010).

Plaintiff criticizes ICE's *Vaughn* index and declarations as insufficient to justify attorney-client privilege because they "fail to list the identities of all those who received the records" and do not assert that the memo was intended to be or remained confidential. The Court disagrees.

Though the *Vaugh* Index is not as detailed as Plaintiff would like, it is sufficiently detailed for the Second Circuit. *See ACLU v. NSA*, 925 F.3d at 589. First, the Section 235(c) memo was drafted by an attorney (the Acting Deputy Chief of the ICE National Security Law Section of the Office of the Principal Legal Advisor) for a client (the Chief of the National Security Law Section). May 17 2019 Fuentes Decl. at ¶ 10. Thus, the communication is between attorney and client.

Second, the memorandum was explicitly marked as "privileged" and "attorney-client communication," and Toni Fuentes declared that the memo was, to the best of her knowledge, intended to be and was kept confidential. May 17 2019 Fuentes Decl. at ¶ 10. The Court cannot identify, and Plaintiff fails to provide, any additional information ICE would need to provide to establish the memo's confidentiality. Third, the memo apparently "advised" Executive Branch personnel about the potential impact changes to Section 235(c) would have on the agency. Essentially, the memo "provide[d]…legal advice as to what a department or agency is permitted to do." *ACLU v. NSA*, 925 F.3d at 589. Thus, the memo provided legal assistance. Thus, ICE demonstrated that "the communications between client and attorney were made in confidence

and have been maintained in confidence." *Brennan Ctr.*, 697 F.3d at 207 (internal quotation marks and citation omitted).

Therefore, ICE justified its application of Exemption 5 to the 235(c) Memo.

### 6. HSI Updates Memo

ICE claims this document is pre-decisional because it is a draft detailing "options being considered to expand the[] implementation" of several HSI programs, and deliberative because it formed part of the agency's process of deciding the continuance of pilot programs. *Id.* Plaintiff claims the "draft" designation does not make it pre-decisional, and the *Vaughn* Index descriptions imply that at least some portions of the memo are final. The Court agrees.

Along with the opinions and analysis from HSI components, ICE declares the withheld information contains "statistics, success stories, and the most recent status of the projects". May 17 2019 Fuentes Decl. ¶ 17. This information reflects the factual, segregable information Exemption 5 does not protect. Watermarking the memorandum as a "Draft" does not change the finality of the facts within it. Indeed, Exemption 5 "does not . . . cover 'purely factual' material." *Grand Cent. P'ship.*, 166 F.3d at 482.[6]

Here, ICE did not establish that the withheld factual information—namely the statistics and status of the projects—demonstrate ICE's deliberative process. Based on the declarations, certain facts do not appear to be interwoven with the proposals and policy judgments within the draft. The dividing line between factual and deliberative can be thin. "[T]he key question . . . [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's

---

[6]"Where . . . disclosure of even purely factual material would reveal an agency's decision-making process Exemption (b)(5) applies." *Russell v. Dep't of Air Force*, 221 U.S. App. D.C. 96, 682 F.2d 1045, 1048 (1982).

ability to perform its functions." *Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 455 (S.D.N.Y. 2018) (quoting *Dudman Communications Corp. v. Department of Air Force*, 815 F.2d 1565, 1568, 259 U.S. App. D.C. 364 (D.C. Cir. 1987). Nothing in the record indicates that revealing the factual information would also reveal the author's protected judgments. *See Mapother v. Dep't of Justice*, 303 U.S. App. D.C. 249, 3 F.3d 1533, 1539 (1993) (denying privilege to section of report that was "in substance an inventory, presented in chronological order"); *Leopold v. CIA*, 89 F. Supp. 3d 12, 22 (D.D.C. 2015) ("[s]traightforward, mechanical recitations of fact . . . will generally fall outside of the privilege.") ICE was obligated to establish that it reviewed the withheld material and disclosed all non-exempt information that reasonably could be segregated and disclosed. However, its failure to provide an adequate segregability analysis for the HSI Updates Memo weighs in favor of disclosure. *See Schwartz v. United States DEA*, No. 13-CV-5004 (CBA) (ST), 2019 U.S. Dist. LEXIS 34165, at *19 (E.D.N.Y. Mar. 1, 2019) (quoting *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 51 (D.D.C. 2012)).

Accordingly, ICE is ordered to conduct a segregability review of the HSI Updates Memo for segregable disclosable content. *See ACLU v. NSA*, 2017 U.S. Dist. LEXIS 44597, at *52 (S.D.N.Y. Mar. 27, 2017).

**B. USCIS**

USCIS partially withheld three records pursuant to the deliberative process privilege: (1) "Briefing Memo for the Acting Director: Recommendations to Eliminate the USCIS Terrorism-Related Inadmissibility Grounds (TRIG)" ("Acting Director Memo"), *see* Eggleston Decl. ¶ 23; Apr. 16 DeCell Decl. Ex. C, at 1–5; (2) "Senior Policy Council—Briefing Paper: TRIG Exemptions & INA § 318" ("Senior Policy Council Paper"), *see* Eggleston Decl. ¶ 24; Apr. 16

DeCell Decl. Ex. C, at 6–10; and (3) "Options Paper: Exercise of Authority Relating to the Terrorism-Related Inadmissibility Grounds" ("TRIG Options Paper"), *see* Eggleston Decl. ¶ 25. The Court will address USCIS' Exemption 5 application to each document.

### 1. Acting Director Memo and Senior Policy Council Paper

USCIS argues that the Acting Director Memo is pre-decisional because it contains "discussions and recommendations from USCIS staff to senior agency management regarding a proposed revision to the USCIS TRIG implementation policy," and deliberative because it provides information "regarding cases currently being held by USCIS pursuant to the existing USCIS TRIG hold policy and a review of relevant considerations for determining whether these cases should continue to be held or released for adjudication." May 2019 Eggleston Decl. ¶ 5. The agency further explains that the "withheld portions do not reflect binding positions on the agency, but rather, contain recommendations and analyses concerning revisions to TRIG exceptions and the possible application of such revisions to certain asylum applications." *Id.* Similarly, USCIS claims the Senior Policy Council Paper is pre-decisional because it is an "internal agency briefing paper…prepared by agency personnel for senior agency management and discusses specific TRIG exemptions and how they could be interpreted and applied to specific types of applicants who seek immigration benefits from USCIS," and deliberative because it "contains a recommendation for senior agency management concerning agency policy." *Id.* at ¶ 6. Plaintiff argues the declarations suggest that some withheld portions of each document reflect current policy and thus constitute disclosable "working law". The Court agrees.

According to the record, USCIS appears to be withholding information that "is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy" and thus constitutes the agency's "working law." *Brennan Ctr.*, 697 F.3d at 195. For the

Acting Director Memo, the *Vaughn* entry indicates that the memo "contain[s] discussions and recommendations from USCIS staff to senior agency management regarding the *current* and future posture of the USCIS TRIG Hold Policy." *See* Eggleston Decl. ¶ 23 (emphasis added). Likewise, the Senior Policy Council Paper is described as "discuss[ing] specific TRIG exemptions and how they could be interpreted and applied to specific types of applicants who seek immigration benefits from USCIS." Eggleston Decl. ¶ 24. If the records contain explanations of USCIS's current policies and approaches to immigration decisions, the records contain "working law". *See Brennan Ctr.*, 697 F.3d at 202; *Tax Analysts*, 294 F.3d at 80–81. USCIS failed to establish that the policy explanations were nevertheless undisclosable. USCIS did not, for example, demonstrate that the policy discussions were so intertwined with the policy judgments and suggestions that revealing them may simultaneously "expose [USCIS'] decision making process" or the authors' judgment in "cull[ing] the relevant documents, extract[ing] pertinent facts, [and] organiz[ing] them to suit a specific purpose." *See Color of Change*, 325 F. Supp. 3d at 455 (quoting *Nat'l Sec. Archive v. CIA*, 410 U.S. App. D.C. 8, 13, 752 F.3d 460, 465 (2014)). Accordingly, USCIS must release the reasonably segregable sections of these records reflecting USCIS current immigration policy.

### 2. TRIG Options Paper

USCIS argues the TRIG Options Paper is pre-decisional because it is an "internal agency memorandum [] prepared by agency personnel for senior agency management [regarding] implementing an Executive Order that directed the Secretaries of State and DHS to consider rescinding the TRIG exemptions permitted by Section 212 of the INA," and deliberative because it discusses three options for such implementation. May 2019 Eggleston Decl. ¶ 7. Plaintiff speculates that USCIS failed to disclose reasonably segregable material because it nearly entirely

withheld the paper's lengthy "Background" and "Methodology" sections. *See* Apr. 16 DeCell

Decl. Ex. C, at 11–14. Despite Plaintiff's reservations, USCIS met its burden on this record.

Unlike its justifications for the Acting Director Memo and Senior Policy Council Paper,

USCIS established that the disclosable material in the TRIG Options Paper "is inextricably

intertwined with deliberative material and analysis such that it cannot reasonably be segregated

and released." May 2019 Eggleston Decl. at ¶ 7. The Eggleston Declaration points out that, "in

the 'Background' and 'Methodology' sections of the [TRIG] Options Paper, the drafters discuss

specific asylum applications and the agency's various methods for analyzing those applications,

thus intertwining the facts of specific cases with the agency's deliberations and analyses." *Id.*

This demonstrates that an attempt to segregate and release any disclosable material would "result

in incomplete, unintelligible and fragmented sentences," *id.*, and therefore disclosure is not

required under FOIA. *See Inner City Press/Community on the Move v. Fed. Reserve*, 463 F.3d

239, 249 n.10 (2d Cir. 2006); *Carney*, 19 F.3d at 812; *ACLU v. United States DOJ*, 252 F. Supp.

3d 217, 229 (S.D.N.Y. 2017). Therefore, unlike the Acting Director Memo and Senior Policy

Council Paper, USCIS justified withholding information in the TRIG Options Paper pursuant to

Exemption 5 and established that all reasonably segregable factual material was released.

Accordingly, USCIS' motion for summary judgment as to the TRIG Options Paper is granted.

### III.     FOIA Exemption 7

FOIA Exemption 7(E) shields from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information . . . would disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552

(b)(7)(E); *see also Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

## IV.   Defendants' Exemption 7 Withholdings

### A.  ICE: HSI Updates Memo

ICE withheld a draft memorandum containing four questions and corresponding answers regarding recent updates of several HSI Programs. May 17 2019 Fuentes Decl. ¶ 17.  Under the *Vaugn* Index's "Exemption(s) Applied" column, ICE identifies Exemption 5 as a justification for withholding the HSI Updates Memo but provides an Exemption 7(E) explanation in the "Description" column. Suppl. *Vaughn* Index. Nevertheless, ICE fails to carry its burden regarding either exemption.

#### 1.  Exemption 7 Does Not Apply to the HSI Updates Memo

ICE failed to demonstrate it properly applied Exemption 7(E) to the HSI Updates Memo. ICE claims the document was compiled for law enforcement purposes. To show certain records qualify as "'information compiled for law enforcement purposes,' an agency must establish a rational nexus between the agency's activity in compiling the documents and its law enforcement duties." *Brennan Ctr.*, 331 F. Supp. 3d at 97(internal citation omitted). Under Exemption 7, the term "law enforcement" is broad and "includes . . . proactive steps designed to prevent criminal activity and maintain security." *Milner v. Dep't of the Navy*, 562 U.S. 562, 582, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011) (Alito, J., concurring)); *see also N.Y. Times Co. v. United States DOJ*, No. 1:18-cv-02095 (SDA), 2019 U.S. Dist. LEXIS 121522, at *19-20 (S.D.N.Y. July 22, 2019) ("[law enforcement] requires only 'that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption'") (quoting *Schwartz v. Dep't of Def.*, No. 15-CV-07077 (ARR) (RLM), 2017 U.S. Dist. LEXIS 2316, 2017

WL 78482, at *12 (E.D.N.Y. Jan. 6, 2017) (quoting *PEER*, 740 F.3d at 203).

ICE contends the withheld memo was compiled for law enforcement purposes because it contains "sensitive information about several HSI programs," including "information regarding evaluating and/or methods for accessing certain social media platforms," while also "informing such parties the current limitations of the programs." Supp. *Vaughn* Index, 2; *see also* May 17 2019 Fuentes Decl. ¶ 40. ICE also points out its status as "the largest investigative arm of DHS" further demonstrates the memo was withheld to enforce the law. *Id.* Despite ICE's status, the agency fails to carry its burden.

ICE's law enforcement authority is not in dispute. However, just because ICE is the Executive Branch's designated immigration enforcement arm does not mean ICE compiles *all* its documents for law enforcement purposes. *N.Y. Times Co*, 2019 U.S. Dist. LEXIS 121522, at *21. (citing *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 397 (S.D.N.Y. 2011) ("While ICE is unquestionably a federal law enforcement agency, not every document produced by ICE personnel has been 'compiled for law enforcement purposes' under FOIA.") *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173, 395 U.S. App. D.C. 340 (D.C. Cir. 2011) ("FBI records are not law enforcement records under FOIA simply by virtue of the function that the FBI serves") (internal quotations and brackets omitted). Indeed, "[c]ourts have generally interpreted Exemption 7 as applying to records that pertain to specific investigations conducted by agencies, whether internal or external, and whether created or collected by the agency—in other words, investigatory files." *Families for Freedom*, 797 F. Supp. 2d at 397 (citing cases).

ICE fails to establish the HSI Updates Memo constitutes the "investigatory files" protected by Exemption 7(e). Specifically, the Court is unaware of the rational nexus ICE attempts to make

between a memo regarding social media practices and the perceived threats of immigration. *See Brennan Ctr.*, 331 F. Supp. 3d at 97. ICE cites *Long v. ICE*, 149 F. Supp. 3d 39, 50 (D.D.C. 2015) for support, but to no avail. In *Long*, plaintiffs challenged defendant ICE's withholdings of certain responsive records pursuant to Exemption 7(e). *Id.* The D.C. District Court found that ICE established both 1) a rational "nexus" between the records withheld under Exemption 7(E) and the agency's law enforcement duties; and, 2) a connection between the subject of the record and a possible security risk or violation of federal law. *Id.* at 49 (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982)). The agency satisfied the second prong by showing it more "than merely engag[ed] in a general monitoring of individuals' activities,'" and demonstrated a "clear connection between the records and possible security risks or violations of the law." *Long,* 149 F. Supp. 3d at 50. *Long* emphasized the fact that the records were not "compiled for generalized snooping of individuals' lives." *Id.*

Here, the connection between the targeted "social media platforms" and "possible security risks" is unclear. Neither the declarations nor the relevant *Vaughn* Index indicate how releasing the withheld information may lead an individual to circumvent the INA or law enforcement practices. Essentially, ICE's descriptions suggest the withheld information was compiled less for law enforcement purposes and more to facilitate the "generalized snooping of individuals' lives." Therefore, ICE failed to demonstrate that the withheld information is protected by Exemption 7. Furthermore, Second Circuit cases where an agency properly applied Exemption 7 involve more detailed, clear declarations and *Vaughn* Indices that justified the withholdings. *See, e.g. Brennan Ctr.*, 331 F. Supp. 3d at 98 ("Sepeta Declaration similarly clarifies that the information withheld by I&A pursuant to Exemption 7 is related to law enforcement purposes because it concerns a source that 'provided information on social media use to assist counterterrorism and law

enforcement officials in understanding the threat posed by Syria-based foreign fighters and US-based extremists'"); *N.Y. Times Co. v. United States DOJ*, 2016 U.S. Dist. LEXIS 139885, at *22 (S.D.N.Y. Aug. 18, 2016) (report regarding ongoing counter-terrorism investigation had rational nexus to the agency's law-enforcement duties and was, therefore, compiled for law enforcement purposes); *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 387 (S.D.N.Y. 2014) (Customs and Border Patrol documents regarding agency's attempts to control the borders and identify potential criminal activity or illegal immigration satisfied "law enforcement purposes" requirement).

Accordingly, ICE is ordered to re-assess its Exemption 7(E) application to the HSI Updates Memo, using this Opinion as guidance, and to disclose all responsive non-exempt materials that can reasonably be segregated from exempt materials.

## B. **USCIS 7(E) Withholdings**

USCIS claims the withheld information—various manuals, guides, and presentations regarding TRIG under the INA and training manuals from the Refugee, Asylum and International Operations Directorate ("RAIO") used to screen immigrant applicants—are the "techniques and procedures" or "guidelines" protected by Exemption 7(E). Defs.' Opp'n Br. 14. [7] Plaintiff claims this information contains lists of questions ("TRIG Questions") to be asked of applicants for immigration benefits improperly withheld under Exemption 7(E).

In addition to records compiled for law enforcement purposes, Exemption 7(E) also covers

---

[7] Specifically, Plaintiff challenges the applicability of Exemption 7(E) to the following records: USCIS BASIC Instructor Guide on TRIG, versions dated Nov. 2015, 2012, and 2010, *see* Eggleston Decl. ¶¶ 22, 32, 36; USCIS BASIC Participant Guide on TRIG, versions dated 2012 and 2010, *see Id.* at ¶¶ 33, 37; USCIS TRIG Training PowerPoint, Course 234, versions dated Mar. 21, 2017, Nov. 2015, May 9, 2012, and May 2010, *see Id.* at ¶¶ 30–31, 34–35, 38; USCIS TRIG Instructor Guide, versions dated May 2017 and Mar. 2017, *see Id.* at ¶¶ 28, 39; USCIS TRIG Participant Guide, versions dated May 2017 and Mar. 2017, *see Id.* at ¶¶ 29, 40; TRIG Exemptions – Group-Based Exemptions / Situational Exemptions (officer training manual or "TRIG Exemptions"), *see Id.* at ¶ 26; USCIS RAIO Office Training – Combined Training Manual on National Security, versions dated Jan. 24, 2013 and Oct. 26, 2015, *see Id.* at ¶¶ 27, 41.

"investigatory records that disclose investigative techniques and procedures not generally known to the public," *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 n.4 (2d Cir. 1985), and "requires that the material being withheld truly embody a specialized, calculated technique or procedure…" *ACLU Found. v. Dep't of Homeland Sec.*, 243 F. Supp. 3d 393, 404 (S.D.N.Y. 2017) ("*ACLUF*"). Thus, USCIS must prove that disclosing its immigrant screening practice materials would show a "technique" or "procedure" unknown to the public.

### 1. TRIG Questions

USCIS acknowledges that the practice of questioning applicants for "possible terrorist ties" is well known, but argues the specific questions and techniques used during the screening are not. May 2019 Eggleston Decl. ¶ 12. Specifically, USCIS claims that the "particular information the questions and follow-ups were designed to elicit includes information that would shed light on terrorist organizations' activities and help determine whether the applicant had any ties to such terrorist organizations and activities." Def.'s Rep. Br. 15. Despite its claims, USCIS failed to establish these are the investigatory "techniques" and "procedures" protected by Exemption 7. *See*, e.g., Apr. 16 DeCell Decl. Ex. C, at 18, ECF No. 109-3.

As a threshold matter, the cases cited by USCIS are inapposite. The agency mistakenly relies on *Barouch v. U.S. Department of Justice*, where the district court found the withholding of information relating to law enforcement questions proper pursuant to Exemption 7(E). 87 F. Supp. 3d 10, 30 n.13 (D.D.C. 2015). The court highlighted, however, the "plaintiff's failure to object to" the government's offered justifications. *Id*. In contrast, Plaintiff challenges USCIS' application of Exemption 7(E). USCIS also relies on *Asian Law Caucus v. Department of Homeland Security*, No. 08-cv-00842-CW, 2008 WL 5047839, at *5 (N.D. Cal. Nov. 24, 2008). However, USCIS fails to observe that the *Asian Law Caucus* court significantly relied on its *in*

*camera* review of the withheld documents to determine the government met its burden.

Furthermore, USCIS does not demonstrate its methods are necessarily special or technical, and *ACLUF* is more relevant than USCIS would lead the Court to believe. 243 F. Supp. 3d at 403. In *ACLUF*, the government failed to establish that withheld questions asked by immigration agents were technical in nature, that any special method or skills were used, or that those subject to questioning would not inevitably learn the withheld techniques. *Id*. Here, USCIS falls short of the same bar. The agency asserts that it withheld "model," "sample," or "suggested" questions without explaining how they reflect any specific techniques. *See* Def.'s Rep. Br. 14–15.

Moreover, additional case law suggests the Exemption 7 bar is even further out of USCIS' reach. *See Chivers v. United States Dep't of Homeland Sec.*, 45 F. Supp. 3d 380 (S.D.N.Y. 2014) (the government properly applied Exemption 7 to shield records relating to questioning techniques used during airport passenger screenings from disclosure); *Am. Immigration Lawyers Ass'n v. DHS*, 852 F. Supp. 2d 66, 77 (D.D.C. 2012) (Agency met their burden of demonstrating that the disclosure of fraud indicators reasonably could lead to circumvention of laws or regulations). In *Chivers*, the CBP withheld "databases [it] considers in its targeting process" and how such information can "trigger[] additional security screening." *Chivers*, 45 F. Supp. 3d 391. *Chivers* allowed the agency to withhold certain internally applied techniques when, even after the agency used those techniques, the interviewee did not know how the technique worked.[8]

---

[8] Moreover, *Chivers* involved a challenge to the redaction of different types of information. First, it involved redacted data fields, a complex system to query multiple databases and track individuals. *Chivers*, 45 F. Supp. 3d at 388-92. Second, it involved secondary inspection and "Automated Targeting System" database records, the revelation of which would not only show how law enforcement database bases worked, but also how CBP uses this technology to determine which of the many travelers in airports should be subject to additional screening. *Id*. at 390-91, 93. USCIS does not contend it withheld similar information.

Here, other than stating so, USCIS failed to demonstrate that its screening methods are comparably protectable. USCIS claims the withheld questions are calculated techniques because they "reflect specialized methods" it "refined" over "decades of enforcing United States immigration laws" in search of terrorist ties. May 2019 Eggleston Decl. ¶ 11. However, unlike the methods in *Chivers,* this only suggests USCIS' screening questions are susceptible to widespread dissemination. USCIS submits no evidence suggesting its methods are so special that the interviewees cannot parrot them to whomever they choose. Indeed, like the "smuggling" related questions asked to children in *ACLUF,* it is safe to assume immigration applicants will remember and report questions related to terrorism to other people.

In sum, it remains unclear as to how the questions at issue embody a specialized, calculated technique or procedure. Therefore, USCIS fails to justify its application of Exemption 7(E) to the TRIG Questions.

### 2. TRIG Exemption Qualifications

Unlike the TRIG Questions**,** USCIS properly withheld information related to the TRIG Exemption Qualifications. *See* Eggleston Decl. ¶¶ 26, 36. USCIS claims that if an applicant reviewed the criteria the agency considers in granting exemptions, "applicants could tailor their testimony to meet [the] requirements." May 14 2019 Eggleston Decl. ¶ 13. Plaintiff argues the listed criteria mirror the TRIG statute and merely reflect knowledge of the law. Pl.'s Mot. 21. However, the declarations indicate "the criteria provide guidance for how to interpret the statute in various factual circumstances." May 14 2019 Eggleston Decl. ¶ 13. For example, USCIS withheld a "non-exhaustive list of appropriate factors" to evaluate in such a "discretionary analysis," ECF. No. 109-3 at 68, noting that the factors are not "requirements" but rather "factors to be considered." Therefore, these criteria appear to be applied on a discretionary basis and thus

reflect more than mere "knowledge of the law". As USCIS contends, "[r]eleasing those factors would enable applicants to tailor their answers to meet such criteria – criteria which is not otherwise available and known to the public." May 14 2019 Eggleston Decl. at ¶ 13. Furthermore, USCIS contends the withheld information contains "examples of factual scenarios where an applicant has demonstrated that he or she reasonably did not know that a certain organization was a terrorist organization," and "is not definitional or a legal interpretation, and its release would provide applicants with guidance as to how to tailor their testimony." *Id.* at ¶ 14. These detailed and cautionary statements constitute a plausible and logical justification for withholding information related to TRIG exemptions qualifications. Accordingly, USCIS properly applied Exemption 7(E) to this information.

### V.    Parties' Remaining Arguments

### A.  Defendants' Unchallenged Withheld Documents

Defendants' submitted arguments supporting decisions to withhold several responsive documents that Plaintiff failed to challenge.[9] Furthermore, Defendants carried their burden of proof to justify withholding these records. Therefore, Defendants' motions for summary judgment as to these records are granted. *See Estate of AbdulJaami v. U.S. Dep't of State*, No. 14 Civ. 7902, 2016 U.S. Dist. LEXIS 1835, 2016 WL 94140, at *7 (S.D.N.Y. Jan. 7, 2016) (collecting cases granting summary judgment for the government when the plaintiff failed to "challenge [the] agency's justifications for withholding certain information" (citing, *inter alia*, *Augustus v. McHugh*, 870 F. Supp. 2d 167, 171-73 (D.D.C. 2012)).

### B.  Plaintiff's *In Camera* Request

---

[9]  These include: 1) Immigration Systems History Report, dated July 17, 2016, prepared by a Branch Chief with the USCIS Fraud Detection and National Security Directorate (FDNS) Intelligence Division, *see* Viker Decl. ¶¶ 21-22; and, 2) A twelve-page law enforcement memorandum prepared by FDNS. *See Id.* at ¶ 22.

Plaintiff also requests the Court to review the withheld documents *in camera* as permitted by 5 U.S.C. § 552(a)(4)(B). However, the Court does not believe such a review is warranted. Though *in camera* review "is appropriate when agency affidavits are not sufficiently detailed to permit meaningful assessment of the exemption claims," it is "generally disfavored." *PHE, Inc. v. DOJ*, 983 F.2d 248, 252-53 (D.C. Cir. 1993); *Sorin v. U.S. Dep't of Justice*, 280 F. Supp. 3d 550, 567 (S.D.N.Y. 2017), aff'd sub nom. *Sorin v. United States Dep't of Justice*, 758 F. App'x 28 (2d Cir. 2018), cert. denied sub nom. *Sorin v. Dep't of Justice*, 139 S. Ct. 2674 (2019). "[A] district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*." *Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 630 (S.D.N.Y. 2018) (quoting *Spirko v. U.S. Postal Service*, 147 F.3d 992, 997, 331 U.S. App. D.C. 178 (D.C. Cir. 1998).

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED in part and DENIED in part, and Plaintiff's Cross-Motion for Summary Judgment is GRANTED in part and DENIED in part as follows:

(1) ICE's Motion is granted and Plaintiff's Cross-Motion is denied with respect to its application of Exemption 5 to the First Amendment Concerns Memo, the 235(c) Memo, the EO Implementation Memo.

(2) Plaintiff's Cross-Motion is granted and ICE's Motion is denied with respect to the Extreme Vetting Memo, the Foreign Policy Provisions Memo, and the HSI Updates Memo. ICE must re-assess its applied exemptions to these records, using this Opinion as guidance, and disclose all responsive non-exempt materials that can reasonably be segregated from exempt materials.

(3) USCIS' Motion is granted and Plaintiff's Cross-Motion denied with respect to the TRIG Options Paper and TRIG Exemptions.

(4) Plaintiff's Cross-Motion is granted and USCIS' motion is denied with respect to the Acting Director Memo and Senior Policy Council Paper. USCIS must release the reasonably segregable information in these records.

(5) The government's motions for summary judgment regarding the unchallenged documents

are granted.

**SO ORDERED.**

**Dated:**  September 23, 2019

       **New York, New York**

ANDREW L. CARTER, JR.
United States District Judge