**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY,

      Plaintiff,

      v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. CUSTOMS AND BORDER PROTECTION, U.S.
IMMIGRATION AND CUSTOMS ENFORCEMENT,
U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, U.S. DEPARTMENT OF JUSTICE, and
U.S. DEPARTMENT OF STATE,

      Defendants.

17 Civ. 7572 (ALC)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF UNITED STATES DEPARTMENT OF STATE, IMMIGRATION AND CUSTOMS ENFORCEMENT AND UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES FOR CLARIFICATION AND PARTIAL RECONSIDERATION OF THE COURT'S OPINIONS AND ORDERS GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Telephone:  (212) 637-2743

ELLEN BLAIN
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................4

I.      Reconsideration Regarding the Adequacy of ICE's Search of Four Components is
        Warranted Because the Court Appears to Have Overlooked Facts in the Record..............5

II.     State and USCIS Request Clarification of the Court's Rulings Concerning FOIA
        Exemption 7(E)..............................................................................................................11

III.    State and USCIS Seek Reconsideration of the Court's Order, If Any, to Produce Material
        Withheld Pursuant to Exemption 7(E), and Request that Court Accept Supplemental
        Submissions or Review the Relevant Documents *In Camera* ..........................................12

CONCLUSION.....................................................................................................................16

## PRELIMINARY STATEMENT

Defendant Immigration and Customs Enforcement ("ICE"), the United States Department of State ("State"), and United States Customs and Immigration Services ("USCIS," and collectively, the "Government") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 6.3, for clarification and reconsideration in part of the Court's Opinion and Order issued on September 16, 2019 (Dkt. No. 140) (the "September 16 Order"), and for clarification and reconsideration in part of the Court's Opinion and Order issued on September 23, 2019 (the "September 23 Order").  Specifically, the Government requests that the Court:  (1) reconsider its determination in the September 16 Order that certain ICE components conducted an inadequate search; (2) clarify its rulings in the September 16 Order and the September 23 Order as to whether State and USCIS should produce materials withheld pursuant to FOIA Exemption 7(E) or provide supplemental submissions to the Court to further justify those withholdings; and (3) if the Court did order State and/or USCIS to produce materials withheld pursuant to FOIA Exemption 7(E), permit State and/or USCIS to provide supplemental submissions regarding the bases for those redactions or provide documents to the Court for *in camera* review.

Reconsideration of the Court's Order that certain ICE components – ILPD, NSLS, DLPA, and FLO[1] – conducted inadequate searches is warranted because the Court appears to have overlooked material facts in the record.[2]  The Supplemental Fuentes Declaration, dated May 3,

---

[1] The Government assumes the Court's familiarity with the procedural history of this matter, and this memorandum employs the abbreviations defined in the Government's Memorandum of Law dated February 26, 2019, Dkt. No. 90.

[2] As the Court has directed, ICE will meet and confer with plaintiff concerning the additional searches to be conducted by the other ICE components: EROLD, the Office of the Director, and ERO.

2019, Dkt. No. 113, which the Court cites only once and in connection with a separate point, provides precisely the information that the Court found was missing: "key details about the search terms used, how the agency handled the administrative remand, and how the agency narrowed its search results." September 16 Order at 15. Because this information appears directly relevant to the Court's conclusion that ICE did not conduct an adequate search, ICE respectfully requests that the Court reconsider its decision as to ICE components ILPD, NSLS, DLPA, and FLO.

Second, State and USCIS respectfully request clarification of the Court's orders regarding information the agencies withheld pursuant to FOIA Exemption 7(E). While the Court concluded that neither agency sufficiently justified the application of Exemption 7(E) to certain documents[3] and ordered State to "turn over" those documents, the Court (a) also requested supplemental submissions as to State; and (b) neither ordered USCIS to produce the withheld material nor directed supplemental submissions. Accordingly, State and USCIS respectfully seek clarification regarding whether the Court has directed the agencies to release all of the material withheld under Exemption 7(E) or directed the agencies to provide supplemental submissions to further explain the appropriateness of those withholdings.

Relatedly, USCIS also seeks clarification regarding which material the Court has determined was appropriately withheld under Exemption 7(E), and which material the Court has found was not appropriately withheld under Exemption 7(E). The Court drew a distinction between information it termed "TRIG Questions," which the Court concluded was not properly withheld, and information it termed "TRIG Exemptions," which the Court concluded was properly

---

[3] In particular, the Court found that State did not sufficiently justify redactions to information in three versions of the Foreign Affairs Manual, containing information provided to visa consular officers investigating applicants for terrorism ties, *see* September 16 Order at 26-28; and that USCIS did not sufficiently justify redactions to information in TRIG training materials provided to immigration officers also investigating an applicant's possible terrorist ties, *see* September 23 Order at 17.

withheld.  However, USCIS did not distinguish information in the documents on this basis, and information that might be considered one category or the other is intertwined, as the withheld information concerns guidance provided to immigration officers to determine the existence, extent and nature of an applicant's terrorist ties, and whether a TRIG exemption applies to those circumstances.  Thus, as reflected in the withheld material, "TRIG Questions" and "TRIG Exemptions" are not readily distinguishable, and as a result, USCIS respectfully requests that the Court clarify which documents or portions of documents fall under which category.

Third, to the extent that the Court ordered State and/or USCIS to produce the material withheld under Exemption 7(E) to plaintiff, the Government respectfully seeks reconsideration of that order, consistent with FOIA litigation practice in this District and in light of the sensitive, national security-related information at issue.  Further, using the September 16 Order as a guide, State has now conducted a re-review of the withheld material and conducted a further segregability analysis; as a result, State is prepared to forthwith re-produce these documents with a substantially reduced number of redactions.  State thus respectfully requests that, after producing the re-processed documents to plaintiff, it be permitted to submit a supplemental declaration detailing the justifications for the remaining, narrowed withholdings.  Similarly, if the Court clarifies the September 23 Order regarding how the agency should distinguish "TRIG Questions" from "TRIG Exemptions," USCIS is also prepared to conduct a further segregability analysis and re-produced the processed documents to plaintiff.  Accordingly, State and USCIS respectfully request that they be permitted to provide supplemental submissions further justifying the withholdings, and/or provide these documents to the Court for *in camera* review.

## ARGUMENT

"The standards governing a motion for reconsideration under Local Rule 6.3 are the same as those under Federal Rule of Civil Procedure 59(e)." *Abrahamson v. Bd. of Educ.,* 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002); *see also Vlad-Berindan v. LifeWorx, Inc*., No. 13 CV 1562 (LB), 2014 WL 1682059, at *3 (E.D.N.Y. Apr. 28, 2014), *aff'd sub nom. Vlad-Berindan v. Life Worx Inc.*, 599 F. App'x 415 (2d Cir. 2015) (standards under Local Rule 6.3 also apply to motions under Federal Civil Procedure 60(b)).  Motions for reconsideration "should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citations omitted); *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (same standard applies under Local Rule 6.3).  The movant must "point to controlling decisions or data that the court overlooked – matters, in other words that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Human Rights Watch v. DOJ Fed. Bur. of Prisons*, No. 13 Civ. 7360 (JPO), 2016 WL 3541549, at * 1 (S.D.N.Y. June 23, 2016) (granting reconsideration in FOIA case).

Although typically "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court," *In re NASDAQ Market Makers Anti-Trust Litigation*, 184 F.R.D. 506, 510 (S.D.N.Y. 1999), or "new arguments that could have been previously advanced," *Associated Press v. DOD*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005), those limits are loosened where the issues to be reconsidered involve "important public interests," such as the release of documents under FOIA, *Nat'l Council of La*

*Raza v. Dep't of Justice*, 2004 WL 2314455, at *1 (S.D.N.Y. Oct. 14, 2004).  *See Dolin, Thomas & Solomon LLP v. U.S. Dep't of Labor*, 2010 WL 5342821, at *1 (W.D.N.Y. Nov. 5, 2010); *see also United States v. Samia*, 2017 WL 980333, at *3 (S.D.N.Y. Mar. 13, 2017); *United States v. Muse*, 2007 WL 1536704, at *2 (S.D.N.Y. May 29, 2007).  The documents at issue here, which include records that assist consular and immigration officers to identify potential terrorists and prevent their entry into the United States, present important public interests warranting reconsideration.

**I.   Reconsideration Regarding the Adequacy of ICE's Search of Four Components Warranted Because the Court Appears to Have Overlooked Facts in the Record**

The Government respectfully requests that the Court reconsider its determination that four ICE components – ILPD, NSLS, DLPA, and FLO – conducted inadequate searches, because the Court appears to have overlooked facts in the record that provide what the Court indicated was missing: "key details about the search terms used, how the agency handled the administrative remand, and how the agency narrowed its search results."  September 16 Order at 15.  This information was provided in the Supplemental Fuentes Declaration, Dkt. No. 113, which the Court cites only once in the September 16 Order and only in connection with ERO's search, *see* September 16 Order at 11-16.  The Government respectfully submits that these facts "might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257.

First, the Court noted that "ICE used the following search terms: 'Association,' ['] Foreign Affairs Manual,' 'Gang Association,' 'Foreign Policy Provision,' 'Beliefs,' 'Speech,' 'Memorandum,' '[W]aiver,' 'White House,' and 'ICE Policy,'" and that Special Counsel to the Deputy Principal Legal Advisor used the terms "endorse," "[e]spouse," and "eop.gov."  September 16 Order at 11 n.11.  However, the Court appears to have overlooked numerous other search terms used by other offices or components that conducted searches.  *See* Dkt. No. 113 at ¶ 7 (describing

Policy's search, which included the terms "speech," "beliefs," "determinations," "endorse," "espouse," "exclude," "remove," and "White House"), *id.* at ¶ 14 (describing ILPD's search, which included the terms "endorse," "espouse," "espouses," "speech," "beliefs," and/or "association"); *id.* at ¶ 15 (describing NSLS's search, which included the terms "endorse," "espouse," "foreign policy," "212(a)(3)(B)(i)(VII)," "212(a)(3)(C)," and/or "200715919"); *id.* at ¶ 20 (describing FLO's search, which included the terms "Association," "Foreign Affairs Manual," "Gang Association," "Foreign Policy Provision," "Beliefs," "Speech," "Memorandum," "waiver," "White House," and "ICE Policy").[4]

Second, finding that "ICE's affidavits provide an inadequate amount of detail," the Court stated that "ICE provided no description of the search terms used by custodians in the ILPD and NSLS," citing paragraphs 20 and 22 of the First Fuentes Declaration, dated February 29, 2019, Dkt. No. 91.  September 16 Order at 13.  But to the contrary, as explained in the Supplemental Fuentes Declaration, ILPD explained that it conducted the following search:

> Between October and November 2017, ILPD tasked the entire division to search for responsive records.  Consistent with ICE's practice, and as was the case here, when a plaintiff does not suggest search terms, the ICE FOIA Office suggests search terms and individual employees then use their knowledge and experience to choose among the suggested terms and to determine if there are other search terms which would be helpful.  ILPD attorneys and staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts, using the following electronic search terms: "endorse," "espouse," "espouses," "speech," "beliefs," and/or "association."

---

[4] Although the Court later addressed the search terms used by ERO and the Office of the Director, the Court did not list those terms on page 11.  *See* Dkt. No. 133, Choe Declaration, dated August 7, 2019, at ¶ 5 (describing the Office of the Director's search, which included the terms "Exclude," "Remove," "Speech," "Beliefs," "Associations," "Endorse Provision," "Espouse Provision," "Foreign Policy Provision," "Waiver," and "Application"); Dkt. No. 134, Solorzano Declaration, dated August 7, 2019, at ¶ 5 (describing ERO's search, which included the terms "removal polices," "removal" and "policies," "removal terrorist," "removal" and "terrorist," "Executive Order," "13780," "WH.gov," "removal speech," "removal" and "speech," "removal belief," "removal" and "belief," "removal association," "removal" and "association").

Dkt. No. 113 at ¶ 14.  As also explained in the Supplemental Fuentes Declaration, NSLS conducted

the following search:

> In October 2017, NSLS tasked the entire division to search for responsive records. Consistent with ICE's practice, and as was the case here, when a plaintiff does not suggest search terms, the ICE FOIA Office suggests search terms and individual employees then use their knowledge and experience to choose among the suggested terms and to determine if there are other search terms which would be helpful. NSLS staff searched their government computers (including personal and shared drives) and Outlook e-mail accounts, using the following electronic search terms: "endorse," "espouse," "foreign policy," "212(a)(3)(B)(i)(VII)," "212(a)(3)(C)," and/or "200715919."

*Id.* at ¶ 15.  Thus, the Supplemental Fuentes Declaration demonstrates that both ILPD and NSLS

directed their entire divisions to search for responsive records and described the search terms used.

*See id.* at ¶¶ 14-15.  And both sets of terms were reasonably calculated to return responsive records:

both offices looked for terms that appear in the sections of the INA identified by plaintiff, and

NSLS also used particular statutory citations from the INA.  Indeed, these terms largely mirror

those used by OLC and State, which the Court cited with approval.  *See* September 16 Order at 15

(citing Dkt. No. 93, Stein Declaration at ¶¶ 19, 22-23 (using search terms "endorse and espouse,"

"endorse or espouse,"  "espouse and endorse," "espouse or endorse," "1st Amendment," "First

Amendment," "would have potentially serious adverse foreign policy consequences," "freedom of

speech," "freedom of belief," "freedom of association," "freedom of expression," or "protected

speech"); and Dkt. No. 92, Colborn Declaration at ¶ 10 (using search terms: endorse w/3 espouse;

"potentially serious adverse foreign policy"; (beliefs OR statements OR associations) w/5 "would

be lawful"; 8 w/3 1182; 8 w/3 1158; 8 w/3 1225; ("first amendment" OR speech OR belief OR

association) w/10 (immigrat* OR exclu* OR remov*)).  ICE reasonably relied on ICE employees'

knowledge of their units and subject matter focus to determine which search terms were applicable.

*See Immigrant Def. Project v. USCIS*, 208 F. Supp. 3d 520, 527-28 (S.D.N.Y. 2016) ("When

evaluating the sufficiency of an agency's search, courts – mindful of the agency's superior knowledge of its recordkeeping system and the presumption of good faith owed to the declarations describing the request – look to whether the search appears designed to return all relevant records.") (citing *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *15 (S.D.N.Y. June 19, 2008) (citing *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

Third, while the Court states that ICE failed to explain "how the agency handled the administrative remand," September 16 Order at 15, the Supplemental Fuentes Declaration again provides precisely that information. Specifically, Ms. Fuentes explains the following:

1. On August 7, 2017, plaintiff submitted the FOIA request and ICE directed OPLA and Policy to search for records; on September 29, 2017, ICE produced 1,666 pages of records to plaintiff. *See* Dkt. No. 113 at ¶¶ 6-9.

2. On October 4, 2017, plaintiff filed suit; immediately upon receiving notice of the lawsuit, ICE reviewed its initial search and concluded that it should conduct a more comprehensive search. *Id.* at ¶ 10.

3. ICE also determined that plaintiff had failed to exhaust administrative remedies concerning the sufficiency of the agency's search before filing suit, and communicated that view to plaintiff; as a result, plaintiff filed an administrative appeal challenging the sufficiency of ICE's search, *see* Dkt. No. 28 (Letter from AUSA Blain, dated December 28, 2017, explaining that plaintiff had failed to exhaust administrative remedies before filing suit and that plaintiff, on December 22, 2017, had filed such an appeal), and dismissed ICE from this action, *see* Dkt. No. 31 (Stipulation of Voluntary Dismissal as to ICE).

4. Anticipating that plaintiff would file such an administrative appeal challenging the sufficiency of ICE's initial search, and further anticipating that ICE would grant such an

appeal, ICE proactively conducted another search between October 2017 and January 2018. *See* Dkt. No. 113 at ¶¶ 13-20. That is, ICE in effect *granted* plaintiff's administrative appeal before plaintiff even filed one.

5. In this second search, ICE directed the following offices to search for responsive documents: ILPD, NSLS, EROLD, ERO, FLO, and the Office of the Director. *Id.* at ¶ 13. ICE also re-tasked DPLA to search for responsive documents. *Id.* Those searches are described in detail in the Supplemental Fuentes Declaration, *see id.* at ¶¶ 14-20 (describing the searches conducted by ILPD, NSLS, EROLD, ERO, the Office of the Director, DPLA and FLO), as well as the Declarations of Alexander Choe, Dkt. No. 133 (describing the search conducted in the Office of the Director), and Eliman Jussara Solorzano, Dkt. No. 134 (describing the search conducted in ERO).

Thus, the Supplemental Fuentes Declaration explains exactly "how the agency handled the administrative remand," September 16 Order at 15: ICE anticipated plaintiff's appeal, proactively granted it, determined that the agency did not conduct a sufficient initial search, and conducted another more comprehensive search in seven separate offices over the course of four months, looking for records responsive to the original, non-narrowed FOIA request. *See* Dkt. No. 113.

Finally, also contrary to the Court's statement, ICE did explain "how it narrowed its search" after collecting documents responsive to the original FOIA request. September 16 Order at 15. Specifically, as explained in the Supplemental Fuentes Declaration, plaintiff, after filing suit, agreed "to narrow the FOIA Request, seeking only final policy guidance or memoranda while excluding all draft policies and memoranda, court filings and opinions, and email correspondence." *Id.* at ¶ 23. Thereafter, ICE's "Government Information Law Division ('GILD') manually reviewed the remaining pages that had been collected for final policy memoranda or guidance,

thus removing emails, the vast majority of the collected documents." *Id.* ¶ 24.  Ms. Fuentes further explained:

> This "narrowing" of records resulted in a corruption of the electronic files within the database containing the records; as a result, ICE requested plaintiff to provide CDs of the produced documents for comparison purposes when drafting the Vaughn indices.  GILD determined that 99 pages were responsive to the narrowed request.  On July 3, 2018, ICE produced in full or in part 50 pages, and referred 49 pages to DHS and USCIS.  On August 3, 2018, DHS and USCIS responded to plaintiff, withholding those pages in full.

*Id.*

Accordingly, the record shows that ICE did, in fact, provide details about search terms; explain how the agency handled administrative appeal; and explain how ICE narrowed its search. Because the Court appears to have overlooked these material facts in the record, and the Court appears to have relied on the absence of these facts to reach its conclusion, ICE respectfully submits that the conclusion warrants reconsideration.  *See, e.g., Shrader*, 70 F.3d at 257 (district court properly ruled on a motion for consideration where defendant "present[ed] the district court with data that the court had not previously considered," including "numerous statements in the [statute's] legislative history, which the district court had not discussed in its original ruling"); *Human Rights Watch*, 2016 WL 3541549, at *2 (granting motion for reconsideration in a FOIA case, finding that "the Court overlooked" an argument made by the Government); *Nat'l Council of La Raza*, 2004 WL 2314455, at *1 (granting motion for reconsideration in a FOIA case even where the agency did not provide information before moving for reconsideration, because "the deliberative process privilege, and FOIA Exemption 5, serve important public interests").  On the basis of this record, therefore, ICE respectfully requests that the Court reconsider its determination that four components, ILPD, NSLS, DLPA, and FLO, conducted inadequate searches.

## II.     State and USCIS Request Clarification of the Court's Rulings Concerning FOIA Exemption 7(E)

State and USCIS respectfully request clarification of the Court's orders regarding information the agencies withheld pursuant to FOIA Exemption 7(E).

Regarding State, while the Court determined that State did not adequately justify its withholdings of certain information in the Foreign Affairs Manuals under Exemption 7(E) and ordered the agency "to turnover these categories of documents," September 16 Order at 28, the Court also ordered "the Government to supplement its submissions in accordance with this Opinion," *id.* at 29.  State seeks clarification of these seemingly contradictory directives.  USCIS seeks a similar clarification.  On the one hand, the September 23 Order concludes that "USCIS fails to justify its application of Exemption 7(E) to the TRIG Questions," September 23 Order at 24, but the Court does not direct USCIS either (a) to produce the TRIG Questions or (b) to provide supplemental submissions to the Court.  Indeed, in the Conclusion paragraph of the Order, the Court recites its findings as to all documents in dispute, but does not mention the TRIG Questions. *See id.* at 26.  As a result, and particularly because courts typically allow the Government to make supplemental submissions regarding exemption determinations that are found to be insufficiently detailed, rather than ordering disclosure, *see infra* Point III, State and USCIS respectfully seek clarification regarding whether the Court has directed the agencies to release all of the material withheld under Exemption 7(E) or to provide supplemental submissions to the Court to further explain the appropriateness of those withholdings.

Moreover, it is also not clear which documents and information the Court has concluded constitute "TRIG Questions," which the Court found are not subject to Exemption 7(E), versus "TRIG Exemptions," which the Court found are subject to Exemption 7(E).  *See id.* at 24-25. USCIS did not differentiate the material it withheld pursuant to Exemption 7(E) in this way, as the

11

withheld information consists of training materials providing techniques and guidance for immigration officers to use when screening an applicant for terrorist ties, and if terrorist ties are found, how to evaluate whether an exemption under the INA applies.  *See, e.g.,* Dkt. No. 97, Declaration of Jill Eggleston, dated March 14, 2019, at ¶ 34 (describing that the stated objective of a power point slide was to "assist USCIS immigration officers, when making immigration adjudications, . . . on how to 'identify the terrorist-related grounds of inadmissibility, determine the applications barred, and identify the exceptions to the bars'").  Immigration officers must ask questions to elicit an applicant's terrorist ties in order to determine whether an exemption to the terrorist bar applies.  While the agency can isolate "questions" in the materials, it is not always clear how questions designed to determine the existence, extent, and nature of an applicant's terrorist ties can be neatly categorized as reflecting "TRIG Questions" as opposed to "TRIG Exemptions."  USCIS therefore respectfully seeks clarification regarding which materials the Court defined as "TRIG Questions" versus "TRIG Exemptions."

### III.   State and USCIS Seek Reconsideration of the Court's Order, If Any, to Produce Material Withheld Pursuant to Exemption 7(E), and Request that Court Accept Supplemental Submissions or Review the Relevant Documents *In Camera*

In the event that the Court ordered the State Department and/or USCIS to produce the material withheld pursuant to Exemption 7(E), the Government respectfully requests that the Court reconsider this ruling and permit the agencies to supplement the record with additional declarations or review the relevant documents *in camera*.

District courts typically allow the Government to make supplemental submissions, rather than ordering disclosure, where they find an agency's submissions insufficiently detailed to justify application of a FOIA exemption.  *See, e.g.*, *N.Y. Legal Assistance Grp. v. U.S. Dep't of Educ.*, No. 15 Civ. 3818 (LGS), 2017 WL 2973976, at *7-8, 10 (S.D.N.Y. July 12, 2017) (denying

summary judgment as to certain documents, but allowing the agency to make supplemental submissions and then renew its motion); *ACLU v. U.S. DOJ*, 210 F. Supp. 3d 467, 485-86 (S.D.N.Y. 2016) (same); *Intellectual Prop. Watch v. U.S. Trade Representative*, 134 F. Supp. 3d 726, 746-47 (S.D.N.Y. 2015) (directing the agency to supplement "purely . . . conclusory statements" so that the Court could "make itemized findings, ideally with respect to specific documents or redactions, but at least at such a level of detail as to permit effective *de novo* review, if required, in the future") (quotation marks and citation omitted); *N.Y. Times Co. v. U.S. DOJ*, 915 F. Supp. 2d 508, 545-46 (S.D.N.Y. 2013) (directing government to submit supplemental declaration where court found initial declaration "wholly conclusory"), *supplemented by* 2013 WL 238928 (S.D.N.Y. Jan. 22, 2013) (upholding deliberative process assertion based on supplemental declaration), *aff'd in relevant part, rev'd in part on other grounds*, 756 F.3d 100 (2d Cir. 2014); *ACLU v. DOD*, 04 Civ. 4151 (AKH), Dkt. No. 513 at 20 (Order dated Aug. 27, 2014) (ordering supplemental submissions) and Dkt. No. 543 at 3 (Order dated Feb. 18, 2015) (same). "[T]he goal of the supplemental submissions is to . . . forc[e] the government to analyze carefully any material withheld" and "enabl[e] the trial court to fulfill its duty of ruling on the applicability of the exemption." *Am. Civil Liberties Union v. Office of the Dir. of Nat. Intelligence*, No. 10 CIV. 4419 (RJS), 2011 WL 5563520, at *13 (S.D.N.Y. Nov. 15, 2011) (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

The State Department has stated in two sworn declarations that release of the withheld information in the Foreign Affairs Manuals would compromise national security.   In his declaration dated February 26, 2019, the Director of IPS stated, "The release of information about the techniques at issue in this case could enable terrorists and other bad actors to avoid detection or develop countermeasures to circumvent the ability of the Department to effectively use these

important law enforcement techniques, thereby allowing circumvention of the law." Dkt. No. 93 at ¶ 54. Similarly, in the Stein Declaration dated May 3, 2019, the Director reiterated, "The withheld information details investigation techniques used to assess the core national security concerns that arise in processing visa applications." Dkt. No. 112 at ¶ 9; *see also* Dkt. No. 93, Exhibit 1, Vaughn Index at 2 (describing that 9 FAM 302.6-2(B)(5)f "provides information about how to assess whether to exempt an applicant associated with the Kosovo Liberation Army); *id.* at 4 (describing that 9 FAM 302.14-7(B)(3)(1) provides "guidelines for evaluating/investigating coursework and intent to return to Iran"); *id.* (stating that "[d]isclosure of [FAM materials] could reasonably be excepted to risk circumvention of the law because terrorists and other bad actors could use it to conceal derogatory information, provide fraudulent information, or otherwise circumvent the security checks put in place to ensure that terrorists and other bad actors cannot gain visas into the United States").

Similarly, USCIS affirmed that the withheld materials "are used to train USCIS immigration officers how to screen for possible terrorism ties and terrorism-related inadmissibility grounds pursuant to the INA when interviewing applicants[.]" Dkt. No. 97 at ¶ 20; *see also id.* at ¶ 22 (information contains "guidelines as well as techniques and procedures . . . used by USCIS immigration officers to identify terrorist organizations, determine if an individual applicant provided material support to a terrorist organization, carried out a TRIG activity, [and] whether he or she is exempt from TRIG inadmissibility"). Indeed, the agency further attested that the "withheld information . . . could be used by future applicants to tailor their testimony and applications when seeking immigration benefits so they could hide possible terrorism ties, avoid government detection, and gain admission to the U.S., illegally obtain immigration benefits, and illegally remain in the U.S., thus posing a risk to national security." *Id.* at ¶ 32.

In light of the particularly sensitive nature of the withheld information, and consistent with FOIA litigation practice in this District, State and USCIS respectfully request the opportunity to provide the Court with supplemental submissions concerning this sensitive, national security-related material.  Using the September 16 Order as a guide, State has now conducted a re-review of the withheld material and conducted a further segregability analysis; as a result, State is prepared to forthwith re-produce these documents with a substantially reduced number of redactions.  The remaining redactions, however, are necessary to protect sensitive law enforcement techniques and guidelines the release of which would pose a significant risk of circumvention of law intended to keep the United States safe.  State thus respectfully requests that, after producing the re-processed documents to plaintiff, it be permitted to submit a supplemental declaration detailing the justifications for the remaining, narrowed withholdings.  With any clarification from the Court regarding the distinction between "TRIG Questions" and "TRIG Exemptions," USCIS is similarly prepared to conduct a re-review and segregability analysis consistent with the September 23 Order, and provide a supplemental declaration.

Alternatively, State and USCIS respectfully request the opportunity to provide the withheld materials to the Court *in camera*, along with supplemental submissions providing additional information about the bases for the withholdings.[5]  *See La Raza*, 2004 WL 2314455, at *1 (granting motion for reconsideration seeking *in camera* review of document at issue, and permitting the government to withhold certain privileged information from the document following *in camera* review).

---

[5] The relevant materials total 108 pages for State, and 256 pages and 33 power point slides for USCIS.

**CONCLUSION**

For the foregoing reasons, the Court should reconsider its September 16 Order insofar as it ordered ICE to conduct another search across all components; clarify its September 16 and 23 Orders regarding whether State and USCIS are directed to produce material that the Court found was not properly withheld under FOIA Exemption 7(E) or instead submit supplemental declarations further justifying the withholdings under Exemption 7(E); and, to the extent the Court ordered State and/or USCIS to produce the material withheld under Exemption 7(E), permit the agencies to provide supplemental declarations further justifying the withholdings and/or conduct an *in camera* review.

Dated: New York, New York
      September 30, 2019

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

                            /s/ *Ellen Blain*
                By:    ELLEN BLAIN
                        Assistant U.S. Attorney
                        U.S. Attorney's Office
                        Southern District of New York
                        86 Chambers Street, 3rd Floor
                        New York, New York 10007
                        Telephone:  (212) 637-2743
                        Ellen.Blain@usdoj.gov