UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIGHT FIRST AMENDEMENT INSTITUTE AT COLUMBIA UNIVERSITY, | |
| | |
| **Plaintiffs,** | |
| | |
| -against- | |
| | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL. | |
| | |
| **Defendants.** | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  9/13/20 _____

1:17-cv-7572 (ALC)
**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants United States Immigration and Customs Enforcement ("ICE"), the Office of Legal Counsel ("OLC") with the Department of Justice ("DOJ"), the Department of State ("DOS"), United States Citizenship and Immigration Services ("USCIS"), United States Customs and Border Protection ("CBP"), the Department of Homeland Security ("DHS"), the Department of Justice Office of Public Affairs ("OPA"), and Office of Information Policy ("OIP") (collectively "Defendants) seek clarification and reconsideration of this Court's September 13, 2019 opinion and order, *Knight First Amendment Institute at Columbia University v. U.S. Department of Homeland Security, et al*, 407 F.Supp.3d 311 (S.D.N.Y. 2019), and September 23, 2019 opinion and order, *Knight First Amendment Institute at Columbia University v. Department of Homeland Security et al*, 407 F.Supp.3d 334 (S.D.N.Y. 2019). Specifically, Defendants ask the Court to reconsider its determination that ICE's search in response to Plaintiff's FOIA request was inadequate, and to clarify and reconsider its ruling that FOIA Exemption 7(E) was inapplicable to several records Defendants withheld.

For the reasons set forth below, Defendants' motion for reconsideration is hereby DENIED.

## BACKGROUND

Familiarity with the facts and procedural history of this case as set forth fully in this Court's September 13, 2019 opinion, is presumed here. *See* 407 F. Supp. 3d 311 (S.D.N.Y. 2019). However, I will summarize briefly the matters relevant to this decision.

Through Executive Order 13,780, President Trump directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for visa applicants and refugees seeking entry into the United States. Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017). The Executive Order called for, among other things, the "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility or grounds for the denial of other immigration benefits." *Id.*

After the President issued E.O. 13,780, Plaintiff filed FOIA requests with various government agencies, the Defendants, seeking information relating to the consideration of individuals' speech, beliefs, or associations in connection with immigration determinations such as decisions to exclude or remove individuals from the United States. ICE's production process particularly is relevant to the instant motion and is therefore outlined here in more detail.

One of Plaintiff's requests from ICE was the production of:

1. All directives, memoranda, guidance, emails, or other communications sent by the White House to any federal agency since January 19, 2017, regarding consideration of individuals' speech, beliefs, or associations in connection with immigration determinations, including decisions to exclude [sic ] or remove individuals from the United States…ICE released 1,666 pages of records

responsive to this request, but withheld 1,653 of those pages in full, invoking FOIA exemptions.

(ECF No. 106 at ¶ 7).

ICE initially responded to that request by searching its Office of Policy and DPLA only. (ECF No. 113 at ¶¶ 7-8; ECF No. 114 at 2-3). Instead of filing an appeal challenging this limited response, Plaintiff filed the instant complaint on October 4, 2017. "Anticipating that plaintiff would file…an administrative appeal challenging the sufficiency of ICE's initial search, and further anticipating that ICE would grant such an appeal, ICE proactively conducted another search between October 2017 and January 2018." (ECF 144 at 8-9 (citing ECF No. 113 at ¶¶ 13-20)). Plaintiff filed an administrative appeal seeking review of ICE's initial response on January 5, 2018. (ECF No. 113 at ¶ 11). "That is, ICE in effect *granted* plaintiff's administrative appeal before plaintiff even filed one." (ECF No. 144 at 9 (emphasis in original)). On January 11, 2018, the parties filed a stipulation of voluntary dismissal without prejudice as to ICE in this action. (ECF Nos. 30-31). On March 14, 2018, Plaintiff filed an amended complaint adding ICE back as a defendant. (ECF No. 42).

ICE's subsequent searches resulted in approximately 14,000 pages of potentially responsive documents (including those originally identified) based on Plaintiff's initial request. (ECF No. 106 at ¶ 11; ECF No. 42-7). On March 7, 2018, ICE informed Plaintiff that it had processed 560 pages for release. (ECF 42-8). ICE referred 87 of those pages to other agencies for processing and released the other 463 pages with redactions. (JSR at ¶ 25). On April 30, 2018, ICE reached out again, informing Plaintiff it had processed an addition 1,124 pages. It released 395 pages in full and referred 728 to other agencies. (ECF No. 106 at ¶¶ 14, 21).

3

To expedite the release of the remaining ICE documents, the parties agreed to narrow the request to only final policy guidance or memoranda, court filings and opinions, and email correspondence. (*Id.* at ¶ 15; ECF No. 113 at ¶ 23; ECF No. 42 at ¶ 23). ICE "identified only ninety-nine pages of records responsive to the provisionally narrowed Request. ICE referred forty-nine pages to other agencies for processing and released fifty pages to [Plaintiff][.]" (ECF No. 106 at ¶ 16).

Plaintiff claimed that the agencies had performed inadequate searches under FOIA and had improperly withheld certain documents in reliance on inapplicable FOIA exemptions. *See* (ECF No. 42).

On February 26, 2019, OLC, ICE, and DOS moved for partial summary judgment. (ECF No. 90). Specifically, OLC and ICE moved for summary judgment on Plaintiff's claims that they had performed inadequate searches, and DOS moved for summary judgment on Plaintiff's claim challenging its withholding determinations pursuant to FOIA Exemptions 5 and 7. (*Id.*) Plaintiff cross-moved for summary judgment on the same claims. (ECF No. 101). I resolved these motions in my September 13, 2019 opinion, holding that ICE's searches were inadequate, OLC's searches were adequate, and DOS was entitled to withhold documents pursuant to FOIA exemption 5, but not 7. *See Knight First Amendment Institute at Columbia U. v. Dep't of Homeland Security, et al*, 407 F. Supp. 3d. 311 (S.D.N.Y. 2019).

On March 15, 2019, ICE and USCIS moved for partial summary judgment on Plaintiff's claims challenging both agencies' decisions to withhold certain documents pursuant to FOIA exemptions 5 and 7(C), and/or 7(E). (ECF No. 96). Plaintiff cross moved for summary judgment. (ECF No. 105, corrected by ECF No. 108). I resolved

these motions in my September 23, 2019 opinion and order, holding that both ICE and USCIS had properly relied on exemptions to justify the withholding of portions of some documents, but improperly withheld portions of other documents citing inapplicable FOIA exemptions. *See Knight First Amendment Institute at Columbia U. v. Dep't of Homeland Security, et al*, 407 F. Supp. 3d 334 (S.D.N.Y. 2019).

On September 30, 2019, Defendants filed a motion for reconsideration and clarification. (ECF No. 144). Defendants specifically moved for (1) reconsideration of my September 13 determination that ICE's searches were inadequate; (2) clarification as to which material I determined USCIS to have improperly withheld in reliance on Exemption 7(E); and (3) clarification as to whether DOS and USCIS are required to turn over immediately to Plaintiff the documents I determined the agencies improperly to have withheld pursuant to Exemption 7(E), or alternatively, whether the September opinions and orders directed the agencies to provide supplemental submissions explaining further the appropriateness of the withholdings. (*Id.* at 2). Defendants do not ask that I reconsider my determination that DOS and USCIS failed to justify adequately their 7(E)-based withholdings. However, Defendants ask that if my September orders were intended to direct the agencies to produce the improperly withheld documents to Plaintiff right away, I reconsider this decision and allow DOS and USCIS to provide supplemental materials justifying further the withholdings and/or provide me with these documents for an in camera review. (*Id.* at 3).

## ANALYSIS

### I. Legal Standard

Local Rule 6.3 provides the standard for a motion for reconsideration, "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sigmon v. Goldman Sachs Mortgage Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (internal citations omitted). "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).

Where a movant seeks only to present "the case under new theories" or take "a second bit at the apple," a motion for reconsideration should be denied. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

### II. ICE Search

The agency served with a FOIA request bears the burden of "show[ing] beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (internal citation omitted); *see Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018). "[T]he defending agency [also] has the burden of showing that its search was adequate…" *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).

ICE was required to "establish the adequacy of its searches by showing that [it] made a good faith effort to search for the requested documents, using methods reasonably calculated to produce documents responsive to the FOIA request." *Adamowicz v. I.R.S.*, 672 F.Supp.2d 454, 461-62 (S.D.N.Y. 2009) (internal quotation marks omitted). "Reasonableness must be evaluated in the context of each particular request," *Amnesty Int'l USA v. C.I.A.*, 728 F.Supp.2d 479, 497 (S.D.N.Y. 2010), and demands consideration of the search terms and the type of search performed, the nature of the records system or database searched, and whether the search was "logically organized." *See Schwartz v. DOD*, No. 15-CV-7077, 2017 WL 78482, at *6 (E.D.N.Y. Jan. 6, 2017). "Although an agency is not required to search every record system, the agency must set forth in an affidavit why a search of other some record systems, but not others, would lead to the discovery of responsive documents." *Amnesty Int'l USA*, 728 F.Supp.2d at 497.

Toni Fuentes, the Deputy Officer of ICE's FOIA Office submitted three declarations explaining ICE's response to Plaintiff's FOIA request. *See* (ECF Nos. 91, 98, and 113). Fuentes provided that four of ICE's offices were identified as those reasonably likely to have responsive records, the Office of Principal Legal Advisor ("OPLA"), Office of Policy, Enforcement and Removal Operations ("ERO"), and Office of the Director. (ECF No. 91 at ¶ 17). Five additional divisions within OPLA were directed to perform searches including the Immigration Law and Practice Division ("OLPD"), National Security Law Section ("NSLS"), Enforcement and Removal Operations Law Division ("EROLD"), Field Legal Operations ("FLO"), and Deputy Principal Legal Advisor ("DPLA"). (*Id.* at ¶¶ 17, 19).

Based on these affidavits, I concluded that ICE had not demonstrated the adequacy of its searches. In particular, I expressed concern with respect to four major issues. First, ICE failed to provide an adequate explanation as to why its EROLD component was not searched, raising "'serious doubts as to the completeness of the agency's search' as a whole." 407 F. Supp. 3d at 324 (quoting Nat'l Day Laborer Org. Network, 877 F. Supp. 2d at 96) (citation omitted). Second, ICE's affidavits lacked sufficient detail regarding the scope of the searches, the search terms and methods employed, how the agency handled an administrative remand, and how the agency narrowed its search results. *Id.* at 325-26. In particular, ICE provided no description of the search terms used by custodians in the ILPD and NSLS. *Id.* at 325.Third, the searches run by the Officer of the Director and ERO were too narrow and failed to use critical keywords. *Id.* at 325-26.

In their motion for reconsideration, Defendants challenge only the second basis for finding the search inadequate. (ECF No. 144). Specifically, they argue that I overlooked the third, supplemental declaration submitted by Fuentes, which demonstrates that ICE provided the factual details I found lacking. In particular, Defendants note that the supplemental Fuentes declaration explains the search process and terms both ILPD and NSLS underwent and used, how ICE handled the administrative remand, and how ICE narrowed its search after collecting documents responsive to the original FOIA request. (*Id.* at 6-10). Defendants are right that the September 13 opinion overlooks the descriptions of ILPD's and NSLS's searches provided in the supplemental declaration. However, those descriptions do not alter the conclusion that ICE's overall search was patently inadequate. The September 13 opinion did not overlook the supplemental

declaration with respect to its conclusion that ICE failed to provide sufficient detail

regarding how the agency handled the administrative remand and narrowed its search

results.

In stating that ICE failed to provide a description of the search terms used by

custodians in ILPD and NSLS, the September 13 opinion did not account for paragraphs

14 and 15 of the supplemental Fuentes declaration providing that ILPD conducted the

following search:

> Between October and November 2017, ILPD tasked the entire division to search
> for responsive records. Consistent with ICE's practice, and as was the case here,
> when a plaintiff does not suggest search terms, the ICE FOIA Office suggests
> search terms and individual employees then use their knowledge and experience
> to choose among the suggested terms and to determine if there are other search
> terms which would be helpful. ILPD attorneys and staff searched their
> government computers (including personal and shared drives) and Outlook e-mail
> accounts, using the following electronic search terms: "endorse," "espouse,"
> "espouses," "speech," "beliefs," and/or "association."

(ECF No. 113 at ¶ 14). It also omitted consideration of paragraph 15, which explains:

> In October 2017, NSLS tasked the entire division to search for responsive records.
> Consistent with ICE's practice, and as was the case here, when a plaintiff does not
> suggest search terms, the ICE FOIA Office suggests search terms and individual
> employees then use their knowledge and experience to choose among the
> suggested terms and to determine if there are other search terms which would be
> helpful. NSLS staff searched their government computers (including personal and
> shared drives) and Outlook e-mail accounts, using the following electronic search
> terms: "endorse," "espouse," "foreign policy," "212(a)(3)(B)(i)(VII),"
> "212(a)(3)(C)," and/or "200715919."

(*Id.* at ¶ 15).

Defendants argue that both sets of terms were reasonably calculated to return

responsive records, which suggests that ICE's search was adequate. Defendants are

correct that ICE's provision of these descriptions indicates that ICE's overall search was

more adequate than the Court recognized in its September 13 opinion. However, this new

information is not enough to tip the scale. ICE's overall search, considered in full, is inadequate still.

For one, although these search terms are better than none, they do not, as Defendants erroneously argue, mirror the terms used by OLC and DOS, which I cited with approval. *See* (ECF No. 144 at 7 (citing 407 F. Supp. at 325–26)). OLC used the terms "endorse and espouse," "endorse or espouse," "espouse and endorse," "espouse or endorse," "1st Amendment," "First Amendment," "would have potentially serious adverse foreign policy consequences," "freedom of speech," "freedom of belief," "freedom of association," "freedom of expression," or "protected speech," "potentially serious adverse," "serious adverse foreign," "speech," "express," "belief," "member," "association," "waiver," "Visa Inadmissibilities," and "Visa Sanctions,"  (ECF No. 93 at ¶¶ 19-23). DOS used the terms "endorse w/3 espouse," "potentially serious adverse foreign policy," "(beliefs OR statements OR associations) w/5 'would be lawful,'" "8 w/3 1182," "8 w/3 1158," "8 w/3 1225," "('first amendment' OR speech OR belief OR association) w/10 (immigrat* OR exclu* OR remov*)." (ECF No. 92 at ¶ 10).

In addition to including more terms, OLC's and DOS's searches also permitted for variations of key words to turn up results by searching, for example, the singular of the word "belief" and adding asterisks to the roots of important terms.

But even if ILPD's and NSLS's terms had been as comprehensive as OLC's and DOS's, they still would not have remedied the other problems I identified with ICE's overall search. They would not remedy, for instance, the discussed deficiencies with the Office of the Director's and ERO's search terms, or the fact that EROLD failed to justify its decision not to conduct a search.

Defendants argue that the September 13 opinion's finding that ICE "omit[ted] key details about…how the agency handled the administrative remand, and how the agency narrowed its search results" is erroneous because it failed to consider relevant sections of the supplemental Fuentes declaration. (ECF No. 144 at 5). With respect to remand, Defendants' position is fundamentally flawed. By Defendants' own admission, ICE conducted all searches by January 2018, before the administrative remand was requested let alone granted. Accordingly, the information provided in the supplemental declaration does not address ICE's response to the remand.

Defendants additionally take issue with the September 13 opinion's finding that ICE "omit[ed] key details about…how the agency narrowed its search results." Defendants contend that the supplemental Fuentes declaration explained how ICE's "Government Information Law Division ('GILD') manually reviewed" documents searching for "final policy memoranda or guidance, thus removing emails, the vast majority of collected documents," and ultimately identified only ninety-nine pages responsive to the narrowed Request." (ECF No. 113 at ¶¶ 21, 23-24). Defendants point out that the supplemental declaration further provides:

> This "narrowing" of records resulted in a corruption of the electronic files within the database containing the records; as a result, ICE requested plaintiff to provide CDs of the produced documents for comparison purposes when drafting the Vaughn indices. GILD determined that 99 pages were responsive to the narrowed request. On July 3, 2018, ICE produced in full or in part 50 pages, and referred 49 pages to DHS and USCIS. On August 3, 2018, DHS and USCIS responded to plaintiff, withholding those pages in full.

(ECF No. 144 at 10 (quoting *Id.* at ¶ 24)).

Defendants' reconsideration argument here is that the information provided by Fuentes is a detailed enough description of how ICE narrowed its search and was

overlooked by the Court. The parties briefed this issue in their summary judgment memos. Plaintiff argued that ICE did not explain adequately why it did not review email attachments in its narrowed search, which Plaintiff argues could have contained documents responsive to the narrowed requests. (ECF 117 at 3). I agree with Plaintiff that ICE's search description was inadequate. Although the supplemental Fuentes declaration explains the physical processes ICE took to locate responsive documents, it does not explain how choices were made regarding where to look for those documents. A more detailed description was needed.

Defendants' motion for reconsideration as to the inadequacy of ICE's searches is DENIED.

## III. DOS and USCIS Withholdings

Defendants seek clarification regarding my findings that DOS and USCIS failed to justify adequately their withholding of documents pursuant to FOIA exemption 7(E). Defendants inquire as to whether the September 13 and September 23 opinions directed them to turnover immediately the improperly withheld materials, or alternatively, to submit supplemental submissions to the Court further explaining why withholding is appropriate. (ECF No. 144 at 11). In the event the decisions ordered the first directive, Defendants ask that I reconsider this ruling and permit DOS and USCIS to supplement the record with additional declarations or review the relevant documents in camera. (*Id.* at 12). With respect to USCIS, Defendants also seek clarification regarding which documents and information the September 23 order concluded constitute improperly withheld "TRIG questions." (*Id.* at 11).

**A. DOS 7(E) Exemptions**

DOS invoked Exemption 7(E) to withhold sections of its Foreign Affairs Manual. The September 13 opinion denied Defendants' motion for summary judgment as to these withheld documents, granted Plaintiffs cross motion and stated: "Defendants are Ordered to turnover these categories of documents." 407 F.Supp.3d at 332. Defendants argue that this clear directive was confused by later language in the opinion addressing Plaintiff's request for an in camera review of Defendants' withheld and redacted documents. (ECF No. 144 at 11). In denying this request, the opinion found "that *in camera* review is unnecessary and [o]rder[ed] the Government to supplement its submissions in accordance with [the] Opinion." 407 F. Supp. 3d at 333–34. Defendants argue this sentence is at odds with the Court's previous directive to State to turn over the withheld documents. (ECF No. 144 at 11). It is not. As explained, the latter directive appears in a completely different section of the opinion than the first and simply orders the Defendants to comply with all submission directives provided in the above opinion, including the order for DOS to turn over the improperly withheld documents.

In short, the September 13 opinion ordered DOS to turn over the disputed sections of the Foreign Affairs Manual promptly because, based on the information Defendants provided, application of Rule 7(E) was not appropriate.

USCIS withheld 256 pages of records and 33 PowerPoint slides pursuant to FOIA Exemption 7(E). (ECF No. 97 at ¶ 11-41). Plaintiff challenged Defendants' application of Exemption 7(E) to many of these documents, including the various versions of the USCIS BASIC Instructor Guide on TRIG, USCIS BASIC Participant Guide on TRIG, USCIS TRIG Training PowerPoint Course 234, USCIS TRIG Instructor Guide, USCIS

TRIG Participant Guide, the officer training manual entitled TRIG EXEMPTIONS—

Group-Based Exemptions/Situations Exemptions; and the manual entitled USCIS RAIO

Officer Training –Combined Training Manual on National Security.[1] (ECF 108 at 17 n.

11). Specifically, Plaintiff challenged the withholding of two categories of information

contained in these records: (1) questions that should be asked in immigration interviews

to assess whether applicants had TRIG bars to admission; and (2) information related to

determining whether applicants qualify for exemptions to TRIG bars. (*Id.* at 17-21).

    The September 23 opinion concluded that USCIS was not entitled to rely on

Exemption 7(E) to withhold the TRIG questions, but that the agency had properly

withheld information related to the TRIG exemption qualifications in reliance on the

same. 407 F. Supp. 3d at 353-54.

    In their motion for clarification and reconsideration, Defendants assert that they

are unclear how to differentiate between improperly withheld information concerning

TRIG Questions and properly withheld information concerning TRIG exemptions.

Defendants contend that, often, the two sets of information overlap because

"[i]mmigration officers ask questions to elicit an applicant's terrorist ties in order to

determine whether an exemption to the terrorist bar applies. While the agency can isolate

'questions' in the materials, it is not always clear how questions designed to determine

---

[1]USCIS BASIC Instructor Guide on TRIG, versions dated Nov. 2015, 2012, and 2010, see Eggleston Decl. ¶¶ 22, 32, 36; USCIS BASIC Participant Guide on TRIG, versions dated 2012 and 2010, see Eggleston Decl. ¶¶ 33, 37; USCIS TRIG Training PowerPoint, Course 234, versions dated Mar. 21, 2017, Nov. 2015, May 9, 2012, and May 2010, see Eggleston Decl. ¶¶ 30–31, 34–35, 38; USCIS TRIG Instructor Guide, versions dated May 2017 and Mar. 2017, see Eggleston Decl. ¶¶ 28, 39; USCIS TRIG Participant Guide, versions dated May 2017 and Mar. 2017, see Eggleston Decl. ¶¶ 29, 40; TRIG Exemptions – Group-Based Exemptions / Situational Exemptions (officer training manual), see Eggleston Decl. ¶ 26; USCIS RAIO Office Training – Combined Training Manual on National Security, versions dated Jan. 24, 2013 and Oct. 26, 2015, see Eggleston Decl. ¶¶ 27, 41.

the existence, extent, and nature of an applicant's terrorist ties can be neatly categorized as reflecting 'TRIG questions' as opposed to 'TRIG Exemptions.'" (ECF 144 at 12). Thus, Defendants ask the court to clarify which materials the court defines as "TRIG Questions" as opposed to "TRIG Exemptions."

I understand TRIG Questions to be "the questions and follow-ups" "designed to *elicit*" information from applicants "that would shed light on…whether the applicant[s] ha[ve] any ties to terrorist organizations and activities." (ECF No. 118 at 15) (emphasis added)). TRIG Exemptions, by contrast, are the criteria USCIS uses to *evaluate* applicants' answers. The latter material is internal to the agency and protectable, whereas the former material is, by definition shared, specifically with applicants. *See* 407 F. Supp. 3d at 353-54.

Although the September 23 opinion did not order as clearly as the September 13 opinion Defendants to turn over the improperly withheld records, it also did not provide for supplemental submissions and was intended to order USCIS to turnover these records, the TRIG Questions, to Plaintiff.

Defendants cite no intervening changes in controlling law, newly available evidence, or clear error warranting reversal of my decisions to order production of improperly withheld FOIA materials as opposed to permitting supplemental agency submissions attempting to further support withholding. Instead, Defendants cite several cases to support their argument that "[d]istrict courts typically allow the Government to make supplemental submissions, rather than ordering disclosure, where they find an agency's submissions insufficiently detailed to justify application of a FOIA exemption." (ECF No. 144 at 12-13) (citing *N.Y. Legal Assistance Grp. v. U.S. Dep't of Educ.*, No. 15

Civ. 3818, 2017 WL 2973976, at *7-8, 10 (S.D.N.Y. July 12, 2017); *ACLU v. U.S. DOJ*, 210 F. Supp. 3d 467, 485-86 (S.D.N.Y. 2016); *Intellectual Prop. Watch v. U.S. Trade Representative*, 134 F. Supp. 3d 726, 746-47 (S.D.N.Y. 2015); *N.Y. Times Co. v. U.S. DOJ*, 915 F. Supp. 2d 508, 545-46 (S.D.N.Y. 2013), *supplemented by* 2013 WL 238928 (S.D.N.Y. Jan 22, 2013); *Adm. Civil Liberties Union v. Office of the Dir. of Nat. Intelligence*, No. 10 CIV. 4419, 2011 WL 5563520, at *13 (S.D.N.Y. Nov. 15, 2011).

Defendants misunderstand the grounds upon which I found the agencies' 7(E) withholdings to be justified inadequately. DOS and USCIS submitted sufficiently detailed justifications for withholding the FAM sections and TRIG questions respectively. I understood the agencies' arguments and was not persuaded. In the majority of cases cited by Defendants, supplemental submissions were requested where courts determined that they did not have enough information to decide whether an exemption applied. *See, e.g. American Civil Liberties Union v. United States Dep't of Justice*, 210 F. Supp. 3d 467, 483, 485-86 (S.D.N.Y. 2016) (where section of DOJ asserted deliberative process privilege and attorney work product privilege to justify withholding document but failed to "provide the Court with sufficient information to determine whether work product protection applies" the court granted DOJ opportunity to enhance its submissions regarding work product privilege and deferred ruling on the applicability of the deliberative process exception); *Intellectual Property Watch v. U.S. Trade Representative*, 134 F. Supp. 3d 726, 745-47 (S.D.N.Y. 2015) (to justify exemption, agency provided conclusory statements that were not document-specific so court asked for supplemental submissions "in order to provide 'a sufficient degree of detail' as to withholdings and redactions"); *N.Y. Times Co. v. U.S. DOJ*, 915 F. Supp. 2d

508, 545-46 (S.D.N.Y. 2013) (requiring additional submissions from agency where court did not have enough information to reach a conclusion about the duplicative process privilege); *Am. Civil Liberties Union v. Office of the Dir. of Nat. Intelligence*, No. 10 CIV. 4419, 2011 WL 5563520, at *13 (S.D.N.Y. Nov. 15, 2011) (ordering supplemental submissions where "faced with conclusory or otherwise insufficient agency affidavits").

I had enough information from DOS's and USCIS's affidavits to conduct the required *de novo* review of the agencies' withholdings. I determined that the 7(E) exemption did not apply to certain sections of the FAM and the TRIG questions. No supplemental submissions or in camera review is necessary. Defendants have not met the burden to warrant reconsideration of these determinations.

## CONCLUSION

Defendants' motion for reconsideration is DENIED in full.

SO ORDERED.
Dated:  September 13,
2020    New York, New York

_____
        **ANDREW L. CARTER, JR.**
        **United States District Judge**

17