

475 Riverside Drive, Suite 302
New York, NY 10115

(646) 745-8500

info@knightcolumbia.org

September 1, 2021

***Via ECF and Email***

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

    Re:    *Knight First Amendment Institute v. U.S. Department of Homeland Security, et al.,* Case No. 17-CV-7572 (ALC)

Dear Judge Carter:

    The Knight First Amendment Institute at Columbia University (the "Knight Institute" or "Institute") respectfully submits this letter brief regarding the rate at which defendant U.S. Immigration and Customs Enforcement ("ICE") will process records responsive to the Institute's Freedom of Information Act ("FOIA") request (the "Request"), ECF No. 42-2, underlying this action. As discussed in the parties' most recent joint status report ("Aug. 25 JSR"), ECF No. 188, the parties have engaged in extensive negotiations over the terms of ICE's new searches in an effort to reduce the volume of potentially responsive records, but they have not agreed on the rate at which ICE will process and produce those records to the Institute. The Institute requests that ICE process those records at a rate of 1,000 pages per month, while ICE proposes to process those records at a rate of 700 pages per month. Aug. 25 JSR ¶ 8.

    The Request has been outstanding for more than four years, and the public still urgently needs to know how the U.S. government understands its authority to "vet" non-citizens based on their statements or associations, especially as the Biden administration completes its review of Trump administration vetting policies. Furthermore, ICE agreed to process the Request on an expedited basis. Therefore, the Knight Institute believes that the processing rate proposed by ICE is unreasonable. The Institute respectfully requests that

the Court issue an order requiring ICE to process 1,000 pages of responsive records per month and to complete its first production by October 1, 2021.

## BACKGROUND

The Knight Institute submitted the Request to ICE, along with the other defendants named in this action, on August 7, 2017. The Request seeks, among other things, information about Trump administration policies for vetting individuals seeking to enter or remain in the United States, and about the government's broader understanding of its authority to base immigration decisions on individuals' speech, beliefs, or associations. The Knight Institute filed suit on October 4, 2017, to ensure the timely release of the requested records and to inform the public debate surrounding the Trump administration's vetting policies.

Former President Trump issued Executive Order No. 13,780 shortly after taking office, directing the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to develop a more robust vetting program for visa applicants and refugees seeking entry into the United States. The executive order called for, among other things, the "collection of all information necessary for a rigorous evaluation of all grounds of inadmissibility or grounds for the denial of other immigration benefits." Exec. Order No. 13,780, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017); *see also* Exec. Order No. 13,769, 82 Fed. Reg. 8977 (Jan. 27, 2017).

Pursuant to that executive order, ICE and other agencies proposed policies for examining visa applicants' and holders' beliefs and associations, including policies for monitoring their speech on social media. On January 28, 2019, for example, ICE awarded a multi-million-dollar contract to a defense company for services related to monitoring the social media and online activities of 10,000 visa applicants and visa holders in the United States per year.[1] On May 31, 2019, the Department of State updated its immigrant and nonimmigrant visa application forms to require an estimated 14.7 million applicants each year to register their social media identifiers with the government.[2] On September 4, 2019, the Department of Homeland Security

---

[1] *See* Amyx, Inc., B-416734.2, 2019 CPD ¶ 143 (Comp. Gen. Apr. 9, 2019); *see also* Contract Award No. 70CMSD19FC0000020, https://www.usaspending.gov/award/81011540 [https://perma.cc/DN9C-V8QC]; Fed. Procurement Data System, Contract No. 70CMSD19FC0000020, https://www.fpds.gov (search for "70CMSD19FC0000020"; then select contract dated May 30, 2019) [https://perma.cc/26TF-TPRS].

[2] U.S. Dep't of State, Collection of Social Media Identifiers from U.S. Visa Applicants (last updated June 4, 2019), https://travel.state.gov/content/travel/en/News/visas-news/20190604_collection-of-social-media-identifiers-from-U.-S.-visa-applicants.html [https://perma.cc/FC8Z-AJW6].

proposed to extend that social media registration requirement to millions more applicants for travel and immigration benefits each year.[3]

President Biden revoked Executive Order 13,780 and the related "extreme vetting" orders and proclamations immediately after taking office. Proclamation No. 10,141, 86 Fed. Reg. 7005, 7005–06 (Jan. 25, 2021). He further ordered the Secretaries of State and Homeland Security, in consultation with the Director of National Intelligence, to complete a report containing a "review of the current use of social media identifiers in the screening and vetting process, including an assessment of whether this use has meaningfully improved screening and vetting, and recommendations in light of this assessment." *Id.* at 7006. The government recently represented that the administration expects to complete that report by mid-October 2021. *See* Joint Status Report, at 1, *Doc Society v. Blinken*, No. 19-cv-3632-TJK (D.D.C. Aug. 16, 2021), ECF No. 53. In the meantime, the administration has already demonstrated its willingness to abandon Trump-era vetting policy proposals. On April 2, 2021, the Office of Information and Regulatory Affairs rejected the Department of Homeland Security's proposal to extend the social media registration requirement. OIRA Conclusion: Generic Clearance for the Collection of Social Media Information on Immigration and Foreign Travel Forms, Ref. No. 202007-1601-001 (Apr. 2, 2021), https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202007-1601-001#.

Given the Biden administration's active review of the Trump administration's vetting policies—and the anticipated completion of that review in the coming weeks—the records sought in the Request are still urgently needed to inform current public debate.

## RELEVANT PROCEDURAL HISTORY

ICE granted the Knight Institute's request for expedited processing on September 26, 2017. Am. Compl. ¶ 25; Decl. of Carrie DeCell ("May 2018 DeCell Decl.") ¶ 8 (May 4, 2018), ECF No. 56.[4] Following a year and a half of negotiation and litigation over the terms and timing of ICE's searches for and processing of responsive records, the parties cross-moved for summary judgment on the adequacy of ICE's searches, among other issues, in the spring of 2018. *See* Defs.' Mot. for Summ. J., ECF No. 89; Pl.'s Opp'n & Cross-Mot. for Summ. J., ECF No. 100. In an opinion dated September 13, 2019, the Court concluded that certain ICE components had conducted inadequate searches

---

[3] Dep't of Homeland Sec., Agency Information Collection Activities: Generic Clearance for the Collection of Social Media Information on Immigration and Foreign Travel Forms (Sept. 4, 2019), 84 Fed. Reg. 46,557.

[4] The Knight Institute assumes the Court's familiarity with the facts and procedural history of the case and therefore briefly summarizes only those matters relevant to the present dispute.

and ordered them to conduct new searches. *See* 407 F. Supp. 3d 311 (S.D.N.Y. 2019). ICE subsequently filed a motion for clarification and/or partial reconsideration of that opinion, ECF Nos. 143, 144, which the Court denied on September 13, 2020, ECF No. 158.

The parties have since engaged in extensive negotiations over the terms of ICE's new searches. The Knight Institute has repeatedly revised its proposed search terms in an effort to narrow the volume of potentially responsive records for ICE to process. *See* Joint Status Report ¶ 16 (Oct. 20, 2020), ECF No. 161; Joint Status Report ¶¶ 8–10 (Dec. 11, 2020), ECF No. 171; Joint Status Report ¶¶ 7–9 (Apr. 14, 2021), ECF No. 176; Joint Status Report ¶¶ 4–10 (June 14, 2021), ECF No. 178; Joint Ltr. to the Court (July 12, 2021), ECF No. 182; Aug. 25 JSR ¶¶ 2–7. As explained in the parties' August 25, 2021 joint status report, the parties have now agreed on a set of search terms yielding approximately 3,000 potentially responsive records. Aug. 25 JSR ¶ 5.

Now that the parties have agreed on the terms of ICE's new search and arrived at a manageable volume of potentially responsive records, the Knight Institute requests that ICE process those records at a rate of 1,000 pages per month. ICE, however, insists on processing those records at a rate of only 700 pages per month. *See id.* ¶ 8.

## ARGUMENT

The Knight Institute requests that ICE process responsive records at an expedited rate, as ICE agreed, to ensure that the public has access to information necessary to evaluate any decisions by the Biden administration to change—or not to change—vetting policies adopted under the Trump administration. Given that the Request has been pending for over four years, and that the parties have been negotiating the terms of ICE's new searches for almost a year, the Institute believes it is reasonable for ICE to process responsive records at a rate of 1,000 pages per month with an initial production to be made by October 1, 2021. This processing rate is far slower than rates courts in this district have recently ordered in other FOIA cases, and no "exceptional circumstances" warrant granting ICE any additional time to produce the responsive records.

### I. ICE Must Process the Requested Records "as Soon as Practicable."

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 212, 242 (1978); 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i). The prompt release of records in response to a FOIA request is key to accomplishing that purpose. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("As to actual production, FOIA requires that the agency make the records 'promptly available,' which

depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years."). As Congress recognized in amending FOIA, "information is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial." H.R. Rep. No. 93–876, at 6267 (1974).

When an agency grants a request for expedited processing, the statute requires that the agency process responsive records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). While Congress has not imposed specific deadlines for processing expedited requests, the "legislative history of the amendments to FOIA makes clear that . . . its intent was to 'give the request priority for processing *more quickly than otherwise would occur.*'" *Brennan Ctr. for Justice v. U.S. Dep't of State*, No. 17-cv-7520-PGG, 2018 WL 369783, at *6 (S.D.N.Y. Jan. 10, 2018) (emphasis in original) (quoting *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006)). In this context, courts have indicated that "the phrase 'as soon as practicable,' . . . cannot be interpreted to impose a lower burden on the agency than the twenty day statutory period that would otherwise be required for standard FOIA requests." *Id.* at *6 (quotation marks omitted). Where an agency fails to process an expedited request within the statutorily defined time limit, the burden is on the agency to establish, by "credible evidence[,] that disclosure within such time period is truly not practicable." *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 39.

As noted above, ICE granted the Knight Institute's request for expedited processing. Am. Compl. ¶ 25; May 2018 DeCell Decl. ¶ 8. ICE is therefore bound to process and produce responsive records as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii). Additionally, in granting expedited review, ICE conceded that the records sought by the Knight Institute were urgently needed to inform the public about actual or alleged government activity—at that time, the Trump administration's policies for excluding or removing individuals from the United States based on their speech, beliefs, or associations. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); ECF No. 42-2, at 6. As explained above, these policies are once again the subject of government deliberation and public debate. ICE should therefore be required to produce the responsive records at a rate that reflects the continued urgency of the need for these records, consistent with the expedited processing ICE granted shortly after it received the Request.

## II. The Knight Institute's Proposed Processing Rate Is Reasonable.

The Knight Institute's requested processing rate of 1,000 pages per month is more than reasonable. Indeed, the processing rate the Knight Institute requests is far below rates courts have imposed on other agencies in recent cases.

In *Open Society Justice Initiative v. CIA*, for example, the court ordered the Departments of State and Defense to process records relating to the disappearance of journalist Jamal Khashoggi at a rate of 5,000 pages per month. 399 F. Supp. 3d 161 (S.D.N.Y. 2019). The agencies moved for reconsideration, arguing that a processing rate of 5,000 pages per month was not practicable given the competing constraints on their resources. In denying the motion, the court explained "the term 'practicable' must be read in the context of FOIA's aims to provide timely information on government activities to the public," and it concluded that a "5,000-page per-month processing rate, which still contemplates a protracted period of review and production, appropriately balances agency constraints against that aim." *Id.* at 168.

In *Open Society Justice Initiative v. Department of Defense*, the court ordered twelve different agencies to process records relating to the federal government's response to the COVID-19 pandemic at rates ramping up to 2,000 pages per month. Order, at 3, No. 20-cv-5098-JMF (S.D.N.Y. Dec. 15, 2020), ECF No. 69. There, the court considered the agencies' arguments that a rate of 2,000 pages per month was not practicable given not only the ongoing COVID-19 pandemic, but also a "dramatic rise in the number of FOIA requests over the last few years and [the agencies'] insufficient resources to meet those demands." *Id.* at 3–4. As the court explained, "to the extent that the agencies lack the resources needed to satisfy the mandate that Congress has imposed on them, the answer is not for courts to roll over and deny plaintiffs the relief they seek under the law; instead, it is for the agencies to seek, and Congress to provide, the resources needed to actually comply with the law." *Id.* at 4.

Courts in this and other districts have similarly ordered agencies to process records responsive to FOIA requests at rates exceeding 1,000 pages per month in recent years. *See, e.g., Leopold v. DOJ*, No. 15-cv-2117 (D.D.C. Oct. 3, 2016), ECF No. 26 (ordering DOS to process 1,850 pages per month); *Nat'l Immigration Project v. Dep't of Homeland Sec.*, No. 18-cv-659-RA (S.D.N.Y. Apr. 6, 2018), ECF No. 55 (ordering DOS and DHS to process 1,500 pages per month); *Seavey v. DOJ*, 266 F. Supp. 3d 241 (D.D.C. 2017) (ordering FBI to process 2,850 pages per month); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 37 (D.D.C. 2016) (summarizing initial order requiring DHS to process at least 2,000 pages per month); *Clemente v. FBI*, 71 F. Supp. 3d 262, 264 (D.D.C. 2014) (ordering FBI to process 5,000 pages per month); *cf. Elec. Privacy Info. Ctr. v. FBI*, 933 F. Supp. 2d 42, 48 (D.D.C. 2013) (concluding that order requiring FBI to process "approximately 5,000 pages per month in another case demonstrates that the FBI is not facing such exceptional circumstances that it can only review 1,500 pages per month in response to EPIC's request").

Given the years that have passed since the Knight Institute first submitted the Request, the months over which the Institute refined search terms to

yield a manageable volume of records for ICE to review, and the weeks within which the Biden administration anticipates completing its review of the Trump administration's social media vetting policies, the Institute's requested processing rate of 1,000 pages per month is more than justified. *Cf. Clemente*, 71 F. Supp. 3d at 269 (concluding that plaintiff's "proposed processing rate" of 5,000 pages per month "is reasonable in light of the importance of her work and the possibility that she may have only a limited time in which to do it").

### III. No "Exceptional Circumstances" Warrant Additional Time.

If ICE contends that it faces "exceptional circumstances" warranting additional time to process the Request, that contention falls flat. The Court may afford an agency additional time to process a FOIA request where it is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of [FOIA], and when the agency can show that it is 'exercising due diligence' in processing the requests." *Elec. Privacy Info. Ctr. v. FBI* (*EPIC v. FBI*), 933 F. Supp. 2d 42, 46 (D.D.C. 2013) (quoting *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). Courts also consider several other factors, including "an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency," *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007), and a requester's refusal to "reasonably modify the scope of a request or arrange an alternative time frame for processing," 5 U.S.C. § 552(a)(6)(C)(iii). Congress has made clear, however, that "exceptional circumstances" do not include delays "result[ing] from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii); *see* H.R. Rep. 104-795, at 24 (1996) ("clarify[ing] that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances").

ICE cannot meet its burden to show "exceptional circumstances" here, especially since the workload associated with processing the records at issue could not have been more predictable. ICE received the Request over four years ago, in August 2017. ICE granted the Knight Institute's request for expedited processing shortly after that, in September 2017. The Institute significantly narrowed the scope of the Request over the course of subsequent negotiations. The Court then ordered ICE to conduct new searches in September 2019, and it confirmed that order in September 2020. At every step of the way, and particularly over the course of the past year, the Knight Institute has worked to reduce the volume of potentially responsive records for ICE to review. Thus, ICE should have predicted an even heavier workload related to the Request for nearly a year, if not two, if not four. ICE cannot now claim

that any delays in processing the Request qualify as "exceptional circumstances." See Order, at 4, Open Society Justice Initiative v. Dep't of Defense; Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017) (holding ICE and other agency defendants to their burden to justify "exceptional circumstances"); Bloomberg, L.P. v. U.S. Food & Drug Admin., 500 F. Supp. 2d 371, 376 (S.D.N.Y. 2007).

\* \* \*

In granting the Knight Institute's request for expedited processing, ICE acknowledged the "compelling need" for the records the Institute seeks. That need remains compelling even four years later, given that the policies to which the records relate remain the subject of continued review and debate.

## CONCLUSION

For the foregoing reasons, the Knight Institute respectfully requests that the Court order ICE to process responsive records at a rate of 1,000 pages per month and to complete its first production of responsive records by October 1, 2021.

Respectfully submitted,

| /s/ [Carrie DeCell] | /s/ [Megan Graham] |
|---|---|
| Carrie DeCell (CD-0731) | Megan Graham (5400460) |
| Jameel Jaffer (JJ-4653) | Catherine Crump (CC-4067) |
| Alex Abdo (AA-0527) | Samuelson Law, Technology & Public Policy Clinic |
| Knight First Amendment Institute at Columbia University | 353 Law Building |
| 475 Riverside Drive, Suite 302 | U.C. Berkeley School of Law |
| New York, NY 10115 | Berkeley, CA 94720-7200 |
| carrie.decell@knightcolumbia.org | mgraham@clinical.law.berkeley.edu |
| (646) 745-8500 | (510) 664-4381 |
| Counsel for Plaintiff | Counsel for Plaintiff |

cc: Ellen Blain, Esq. (via email)