

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

September 1, 2021

BY ECF
The Honorable Andrew L. Carter, Jr.
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2203
New York, NY 10007

      Re:   *Knight First Amendment Institute v. U.S. Dep't of Homeland Security et al.*,
            No. 17 Civ. 7572 (ALC)

Dear Judge Carter:

      I write respectfully on behalf of Defendant United States Immigration and Customs Enforcement ("ICE") to request that the Court set a schedule for rolling productions in response to Plaintiff's Freedom of Information Act ("FOIA") request requiring ICE to process 700 pages per month. District courts have adopted similar schedules, and it reflects a fair and reasonable interpretation of FOIA's requirements. The schedule Plaintiff proposed—to process 1,000 pages per month—is not practicable. To the contrary, it would add another 300 pages per month during a period marked by the constraints of COVID and a 240% surge in ICE FOIA requests.

**A.    Procedural History**

      As the parties have previously explained, and pursuant to the Court's September 13, 2020 Opinion and Order clarifying the Court's September 13 and 23, 2019 Orders and denying the Defendants' motion for partial reconsideration, ECF No. 158, ICE conducted new searches pursuant to agreed-upon search terms. *See* ECF No. 171 ¶ 8.[1]  On December 9, 2020, ICE completed those searches and informed the Knight Institute that, after de-duplicating, the searches returned at least 263,857 potentially responsive documents (not pages). ECF No. 171 ¶ 9. Since then, ICE has worked diligently with Plaintiff to continually refine the search parameters in order to narrow the universe of potentially responsive documents—providing, among other things, breakdowns of potentially responsive documents by custodian, year, and search string.

      As of April 2021, the parties agreed to narrow the potentially responsive documents by custodian and year; and ICE agreed to review and process 650 pages, produce to the Plaintiff any

---

[1] Defendants the United States Department of State, Customs and Immigrations Services, and ICE appealed portions of those orders not at issue here; that appeal remains pending. *See Knight First Amendment Institute v. USCIS et al.*, 20-3837 (2d Cir.)

responsive, non-exempt material, and propose criteria based on that review to narrow the universe of potentially responsive documents. *See* ECF No. 176 ¶ 9. Accordingly, on June 7, 2021, ICE reported it had reviewed 661 pages of potentially responsive records, determined that 399 pages were duplicative or non-responsive, referred another 204 pages other agencies for further review, and produced 58 pages to the Knight Institute, withholding information in part or in full pursuant to FOIA Exemptions 5, 6, and 7(C). ECF No. 178 ¶ 7. On June 21, 2021, based on the agency's review of that subset of documents, ICE proposed revised search terms to Plaintiff, and on July 12, 2021, the parties agreed to a revised set of search terms ("July Search Terms"). ECF No. 182. On August 12, 2021, ICE completed conducting a search pursuant to the July Search Terms, and informed Plaintiff that the search had returned approximately 3,000 documents (not pages) of potentially responsive documents. ECF No. 186 & 188. ICE's standard processing rate is approximately 500 pages per month; Plaintiff requested that ICE process 1,000 pages per month; and ICE responded that it would increase its rate to 700 pages per month.

**B.  The ICE FOIA Office Has Faced An Exponential Increase in FOIA Requests and a Substantial Surge in FOIA Litigation**

Beginning in fiscal year ("FY") 2018, the ICE FOIA Office experienced a substantial and dramatic increase in the number of FOIA requests received by ICE compared to previous years. Declaration of Fernando Pineiro, dated September 1, 2021 ("Pineiro Decl.") at ¶ 5. As ICE explains, the ICE FOIA Office received 44,748 FOIA requests in FY 2015; 63,385 FOIA requests in FY 2016; slightly fewer (47,893) in FY 2017; and then experienced an exponential increase— "a record high" of 70,267 FOIA requests in FY 2018, 123,370 FOIA requests in FY 2019, and 114,475 FOIA requests in FY 2020. *See id.* Accordingly, "between FY 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests." *Id.* at ¶ 6.

At the same time, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance, doubling the workload of the ICE FOIA Office as compared to the same date in 2017. *See id.* at ¶¶ 7-8. Moreover, ICE is currently processing 197 active FOIA litigations, including 67 cases with court-ordered deadlines with rolling productions. *See id.* at ¶ 12. Those 67 cases result in a monthly litigation review and processing page count of between 28,000-35,000 pages, with a total of 11,000-18,000 pages being released every month. *See id.* Furthermore, additional cases and deadlines are added each month which increase the resulting processing and production deadlines. *See id.* With the recent monthly additions, several full-time paralegals (one of whom is currently on extended leave) are currently required to process nearly 40,000 pages per month. *See id.* And those 40,000 pages per month do not take into account the more than 60 additional FOIA lawsuits that require a single production as opposed to a rolling production, and thus also demand time and resources. *See id.*

This substantial increase in workload, due to both the substantial increase in both the volume and complexity of FOIA requests, has unfortunately coincided with a staffing shortage due to ICE's restricted ability to fill open positions during the COVID pandemic. Pineiro at ¶ 10.

### C.      Plaintiffs' Proposed Schedule Is Not Practicable

Although ICE granted Plaintiff's request for expedited processing, Dkt. No. 47 ¶ 48, Plaintiff's request that ICE process 1000 pages per month is not practicable in light of the current workload of the ICE FOIA Office.

FOIA provides that agencies will "process" expedited requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).  When considering whether a proposed schedule is "practicable," courts examine whether an agency has presented "credible evidence" regarding such considerations as the number of "expedited FOIA requests the agency is already processing," the "volume of classified material at issue," "the need for agency staff to review the material," and the "competing . . . obligations to which the same agency staffers who are responsible for gathering and reviewing documents responsive to the FOIA Request must attend." *EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 42 (D.D.C. 2014) (internal quotation marks omitted); *cf. Brennan Ctr. for Justice v. U.S. Dep't of Justice*, No. 17 Civ. 6335 (KBF), 2018 WL 637424, at *3 (S.D.N.Y. Jan. 31, 2018) (denying request for preliminary injunction in part due to "the administrative challenges inherent in processing a large number of FOIA requests and the time constraints that competing requests and/or court orders can present").

ICE has presented credible evidence that attempting to comply with Plaintiffs' proposed schedule would interfere with the ability of the agencies' FOIA staff to meet their competing obligations.  As an initial matter, ICE has continually worked diligently and collaboratively with Plaintiff in this case to try to narrow the search parameters, devoting resources to this matter in order to provide Plaintiff with the most responsive documents possible.  ICE has also offered to increase its typical processing rate from 500 pages per month to 700 pages per month, despite the crushing caseload the ICE FOIA Office is currently handling.  Plaintiff's request to increase the production rate even further to 1,000 pages per month would require ICE to increase its entire FOIA monthly production during a time when FOIA requests have grown by 240%, and would necessarily hinder ICE's ability to respond to meet its many other court ordered processing obligations, which currently require ICE to process approximately 28,000-35,000 pages per month. Pineiro at ¶ 6, 12, 17.  Accordingly, Plaintiff's proposal to impose an additional 300 pages per month obligation on ICE is simply not practicable.

### D.      The Court Should Grant ICE Additional Time to Process

The Court should "allow the agenc[ies] additional time to complete [their] review of the records," because ICE faces "exceptional circumstances." 5 U.S.C. § 552(a)(6)(C)(i); *see also Citizens for Responsibility & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013).  The "exceptional circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs)." *Id.* Courts have found exceptional circumstances where agencies show (1) a "dramatic one-year increase" in the number of FOIA requests, (2) that they are "presently engaged in extensive litigation," (3) that the "ongoing litigation has . . . strained . . . FOIA-related resources," and (4) that the agency "is taking steps to reduce the present backlog." *Daily Caller v. State*, 152 F. Supp. 3d 1, 12 (D.D.C. 2015).  An agency's need for "more time to respond to a particularly burdensome request" is precisely the

type of situation that the exceptional circumstances provisions are meant to address. *CREW*, 711 F.3d at 189.

Here, ICE has shown each factor that led to a finding of "exceptional circumstances" in *Daily Caller*. First, since the start of this litigation, ICE has experienced at 240% increase in FOIA requests, and over the past year while the parties were negotiating search terms, ICE also received 114,475 FOIA requests – on pace with 2019 and approximately 44,000 more than 2018. Pineiro Decl. at ¶¶ 4-6. Second, ICE engaged in extensive litigation, as ICE is currently a defendant in approximately 197 litigations. Pineiro Decl. at ¶ 4. Third, such increased litigation has strained the agencies' resources, and Plaintiff's proposed schedule would compound that strain. Pineiro Decl. at ¶¶ 16-17. These facts demonstrate exceptional circumstances.

Moreover, when assessing "exceptional circumstances," the Court must consider the Plaintiff's "[r]efusal . . . to reasonably modify the scope of [their] request or arrange an alternative time frame for processing . . . after being given an opportunity to do so by the agency." 5 U.S.C. § 552(a)(6)(C)(iii). As noted above, after working diligently with Plaintiff to continually refine the search terms, ICE also offered to attempt to increase its production rate from its standard rate of 500 pages per month to a higher rate of 700 pages per month, and Plaintiff rejected that offer.

### E.   Defendants' Request Is Consistent with Courts' Practices

ICE's proposal that it process 700 pages per month is consistent with courts' prevailing practice in FOIA cases. Courts have adopted similar schedules in multiple recent cases. *See, e.g., NYCLU v. Admin. for Children & Families*, No. 20 Civ. 183 (MKV), Dkt. No. 30 (S.D.N.Y. May 5, 2020) (400 pages per month); *Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (500 pages per month); *Blakeney v. Fed. Bureau of Investigations*, No. 17-cv-2288 (BAH), 2019 WL 450678, at *2 (D.D.C. Feb. 5, 2019) (500 pages per month); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, No. 17 Civ. 767 (RCL) (GMH), 2018 WL 1178022, at *3-4 (D.D.C. Mar. 5, 2018) ("On this record, 500 pages per month is an appropriate rate of production."); *id.* at *3 n.3 (noting that, "[i]n a number of recent cases in this District, a production rate of 500 pages per month has been approved," and collecting cases); *Republican Nat'l Comm. v. U.S. Dep't of State*, No. 16 Civ. 486 (JEB), 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month); *Energy & Env't Legal Inst. v. U.S. Dep't of State*, No. 17 Civ. 340 (D.D.C.), Minute Order of August 22, 2017 (300 pages per month); *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 17 Civ. 205 (D.D.C.), Minute Order of June 30, 2017 (300 pages every four weeks); *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, No. 16 Civ. 2516 (D.D.C.), Minute Order of June 27, 2017 (process 400 pages per month); *Citizens United v. U.S. Dep't of State*, No. 16 Civ. 67 (D.D.C.), Dkt. No. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page commitment"); *Freedom Watch v. Bureau of Land Mgmt.*, No. 16 Civ. 2320 (D.D.C.), Minute Order of June 13, 2017 (500 pages every 30 days); *Citizens United v. U.S. Dep't of State*, No. 15 Civ. 1720 (D.D.C.), Dkt. No 11 ¶ 10 (500 pages every four weeks); *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 15 Civ. 687 (D.D.C.), Minute Order of April 4, 2017 (500 pages per month); *Leopold v. U.S. Dep't of State*, No. 14 Civ. 1770 (D.D.C.), Dkt. No. 33 at 1 (review 400 pages per month); *Davis v. United States Dep't of Homeland Sec.*, No. 11-cv-203 (ARR) (VMS), 2013 WL 3288418, at *1 (E.D.N.Y. June 27, 2013) (500 pages per month).

In previous submissions regarding processing rates in this matter, Plaintiff noted that courts have "expressed concern" over certain processing rates, ECF No. 48 at 11 (citing *Brennan Ctr. for Justice v. U.S. Dep't of State*, No. 17 Civ. 7520 (PGG), 2018 WL 369783, at *3 (S.D.N.Y. Jan. 10, 2018), and *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004)), but those cases are inapt. In *Brennan Center*, for example, there were only six documents in dispute, *id.* at *7, resulting in the court ordering the agency to produce those documents within 30 days. Similarly, in *ACLU*, despite 11 months having passed since plaintiff filed its FOIA request, "no documents ha[d] been produced by defendant; [and] no documents ha[d] been identified." 339 F. Supp. 2d at 502-03. Here, by contrast, ICE has located potentially responsive documents; those documents total more than 3,000 documents (and unknown number of pages); ICE has proposed a processing rate that is higher than its standard processing rate; and ICE has already produced documents throughout the history of this matter.

Plaintiff also previously pointed to *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017), where the court ordered the FBI to process 2,850 pages per month (*see* ECF No. 48). However, in that case, the FBI identified more than 100,000 pages of responsive documents and offered to process 500 pages per month, which would have resulted in completing production in 201 months—approximately 13 years longer than the FBI's internal policy of completing FOIA productions within 3 years. Accordingly, the court noted, "Given that there are roughly 102,000 pages awaiting processing, the FBI could meet the three year goal by processing 2,850 pages per month." *Id.* Here, by contrast, while it is not yet clear how many pages the approximately 3000 documents of potentially responsive documents total, a production rate of 700 per month is unlikely to result in a 13-year timeframe. Moreover, the difference between a production rate of 700 pages per month versus 1000 pages per month is also unlikely to dramatically change that timeframe.

ICE is mindful that in a recent case, *National Immigration Project v. U.S. Dep't of Homeland Security*, 18 Civ. 659 (RA) (S.D.N.Y. Apr. 6, 2018), the court ordered State to process 1,500 pages per month. *See* Dkt. No. 55. However, in that case, the plaintiff had requested that State process 3000 pages *per week*, *see id.*, and thus the court reached a compromise closer to the agency's proposal than the plaintiff's request. Similarly, in *Open Society Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (2019), while the court ordered the agencies to process 5,000 pages per month, the court did so because of "the urgency of the request"—information "regarding a subject of considerable public importance: the disappearance of Jamal Khashoggi, a U.S. resident, Saudi national, and *Washington Post* columnist who was not seen alive again after entering the Saudi consulate in Istanbul on October 2, 2018." *See also id.* at 163 ("recogni[zing] the public importance and time-sensitivity of the Khashoggi FOIA request"). Here, by contrast, the documents Plaintiff seeks are not time-sensitive: they concern immigration policies and procedures adopted by the prior administration, *see* ECF No. 188 ¶ 4(a) (describing June Search Terms) & ECF No. 1 ¶¶ 2-7 (citing then-President Trump's statements regarding immigration and related Executive Orders, and stating "The public has an urgent need to know about these and other new vetting policies" and "[t]oward that end, the Knight Institute submitted identical FOIA requests"), and now reversed by the current administration, *see, e.g.*, https://www.nytimes.com/2021/01/20/us/politics/biden-executive-action.html. Finally, *Open Society v. DOD*, 20 Civ. 5096, ECF No. 69 (S.D.N.Y. Dec. 15, 2020), is inapt, as the court, in

5

December 2020, ordered the agencies to steadily increase processing rates because, "for various reasons (including the fact that at least one vaccine has now been approved for emergency use authorization), the burdens imposed by the pandemic are likely to decline over time." As noted by the Pineiro Declaration, those burdens, unfortunately, remain.

  For the reasons set forth above, ICE respectfully requests that the Court enter a schedule that requires ICE to process 700 pages per month. We thank the Court for considering this request.

          Respectfully,

          AUDREY STRAUSS
          United States Attorney

     By: */s/ Ellen Blain*
        ELLEN BLAIN
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, NY 10007
        Tel: (212) 637-2743
        Email: ellen.blain@usdoj.gov

Encl.